Rosemary M. Rivas (SBN 209147)
rmr@classlawgroup.com
David Stein (SBN 257465)
ds@classlawgroup.com
Rosanne L. Mah (SBN 242628)
rlm@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone:(510) 350-9700
Facsimile: (510) 350-9701

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ADAM PLUSKOWSKI, RICKY BARBER, LUCILLE JACOB, CARLA WARD, PEPPER MILLER, and CINDY BRADY, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>HYUNDAI MOTOR AMERICA, HYUNDAI MOTOR COMPANY, KIA AMERICA, INC., and KIA CORPORATION,<br><br>                    Defendants. | Case No. 8:22-cv-00824<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.   SUMMARY OF CASE ................................................................................ 1

II.   PARTIES ........................................................................................................ 5

III.   JURISDICTION AND VENUE ................................................................. 7

IV.   SUBSTANTIVE ALLEGATIONS .......................................................... 8

   A.   The ABS Module Defect ...................................................................... 8

   B.   Consumer Complaints Reveal the Magnitude of the Defect .......... 10

   C.   Defendants' Knowledge of the ABS Module Defect ....................... 34

   D.   Defendants' Inadequate and Incomplete Recalls in 2016, 2018, 2020,
       2021, and 2022 .................................................................................... 42

      1.   Incomplete and Inadequate Recall in 2016 ............................ 42

      2.   Incomplete and Inadequate Recall in 2018 ............................ 44

      3.   Incomplete and Inadequate Recalls of 2020 .......................... 47

   E.   Defendants Marketed the Class Vehicles as Safe, Reliable, and Durable,
       Despite Knowledge of the ABS Module Defect .............................. 63

   F.   Defendants Breached their Warranty Obligations ........................... 64

   G.   Defendants' Concealment of the ABS Module Defect and Its Refusal to
       Warn .................................................................................................... 65

   H.   Fraudulent Omission/Concealment Allegations .............................. 66

V.   PLAINTIFFS' EXPERIENCES ............................................................. 69

   A.   Adam Pluskowski ............................................................................... 69

   B.   Ricky Barber ....................................................................................... 69

   C.   Lucille Jacob ....................................................................................... 70

i

D.    Carla Ward.................................................................................71

E.    Pepper Miller.............................................................................71

F.    Cindy Brady................................................................................72

**VI.    CLASS ACTION ALLEGATIONS**.....................................73

**VII.   CHOICE OF LAW ALLEGATIONS**....................................76

**VIII.  TOLLING OF STATUTES OF LIMITATIONS**.....................77

**IX.    CAUSES OF ACTION**.........................................................79

**FIRST CAUSE OF ACTION**

Violation of Unlawful, Unfair, and Fraudulent Business Practices

(Cal. Bus. & Prof. Code § 17200, *et seq.*) ......................................79

**SECOND CAUSE OF ACTION**

Violation of the Consumers Legal Remedies Act

(Cal. Civ. Code § 1750, *et seq.*)......................................................81

**THIRD CAUSE OF ACTION**

Violation of the California False Advertising Law

(Cal. Civ. Code § 17500, *et seq.*)....................................................83

**FOURTH CAUSE OF ACTION**

Breach of Express Warranty

(Cal. Com. Code §§ 2313 and 10210) ..............................................86

**FIFTH CAUSE OF ACTION**

Violations of Song-Beverly Consumer Warranty Act For Breach of Express

Warranties

(Cal. Civ. Code § 1790, *et seq.*)......................................................89

**SIXTH CAUSE OF ACTION**

Breach of Implied Warranty of Merchantability

(Cal. Com. Code §§ 2314 and 10212) ........................................................92

**SEVENTH CAUSE OF ACTION**

Violations of Song-Beverly Consumer Warranty Act For Breach of Implied Warranty of Merchantability

(Cal. Civ. Code § 1790, *et seq.*)................................................................94

**EIGHTH CAUSE OF ACTION**

Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act

(815 ILCS 505/1, *et seq.*)........................................................................97

**NINTH CAUSE OF ACTION**

Violation of the Illinois Uniform Deceptive Trade Practices Act

(815 ILCS 510/1, *et seq.*)......................................................................101

**TENTH CAUSE OF ACTION**

Breach of Express Warranty

(810 Ill. Comp. Stat. 5/2-313 and 5/2A-210) ............................................104

**ELEVENTH CAUSE OF ACTION**

Breach of Implied Warranty of Merchantability

(810 Ill.Comp. Stat. §§ 5/2-314 and 5/2A-212) ........................................1077

**TWELTH CAUSE OF ACTION**

Violation of the New Jersey Consumer Fraud Act

(N.J. Stat. Ann. § 56:8-1 *et seq.*)...........................................................110

**THIRTEENTH CAUSE OF ACTION**

Breach of Express Warranty

(N.J.S. 12A:2-313 and 12A:2A-210).........................................................113

iii

**FOURTEENTH CAUSE OF ACTION**

Breach of Implied Warranty of Merchantability

(N.J.S. 12A:2-314 and 12A:2A-212)..........................................................................116

**FIFTEENTH CAUSE OF ACTION**

Violation of the Deceptive Trade Practices Act-Consumer Protection Act

(Tex. Bus. & Com. Code § 17.41 *et seq*.)..............................................................118

**SIXTEENTH CAUSE OF ACTION**

Breach of Express Warranty

(Tex. Bus. & Com. Code §§ 2.313 and 2A.210)..................................................122

**SEVENTEENTH CAUSE OF ACTION**

Breach of Implied Warranty of Merchantability

(Tex. Bus. & Com. Code §§ 2.314 and 2A.212)..................................................124

**EIGHTEENTH CAUSE OF ACTION**

Unjust Enrichment ........................................................................................................127

**PRAYER FOR RELIEF**........................................................................................128

**JURY DEMAND** ......................................................................................................128

Plaintiffs Adam Pluskowski, Ricky Barber, Lucille Jacob, Carla Ward, Pepper Miller, and Cindy Brady, on behalf of themselves and all others similarly situated, allege the following against Defendants Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC," and with HMA, "Hyundai"), Kia America, Inc. ("KA"), and Kia Corporation ("KC," and with KA, "Kia") (Kia and Hyundai are collectively referred to as "Defendants"):

# I.    <u>SUMMARY OF CASE</u>

1.    This case arises from a dangerous defect in hundreds of thousands of passenger vehicles distributed, marketed, and sold by Hyundai and Kia[1] over the last several years that as a result, are susceptible to spontaneously catching fire while being driven or parked. The defect is in the Class Vehicles' Anti-Lock Braking System ("ABS") module installed in the engine compartment. The ABS module is a key safety feature because during an emergency, it prevents wheels from locking and helps steer a car by restoring traction to tires. The ABS module (also called a Hydraulic Electronic Control Unit ("HECU")) that Hyundai and Kia installed in the Class Vehicles is defective because it can short circuit and catch fire due to moisture that can become trapped within the module, which has an electrical charge even when the car is not being driven (hereinafter, referred to as the "ABS Module Defect").

---

[1] The affected vehicles include the following models: Kia Sportage (model years 2008-2009, 2014-2021); Hyundai Azera (model years 2006-2011); Hyundai Sonata (model year 2006); Hyundai Elantra (model years 2007-2010); Hyundai Elantra Touring (model years 2009-2011); Hyundai Entourage (model years 2007-2008); Hyundai Santa Fe (model year 2007; 2016-2018); Kia Sedona (model years 2006-2010); Kia Sorento (model years 2007-2009, 2014-2015); Kia Optima (model years 2013-2015); Kia Stinger (model year 2018-2021); Hyundai Santa Fe Sport (model years 2013-2015, 2017-2018); Hyundai Tucson (2014-2021); Kia Cadenza (model years 2017-2019); Hyundai Genesis (model years 2015-2016); Hyundai Genesis G80 (model years 2017-2020); Hyundai Santa Fe XL (model year 2019); and Kia K900 (model years 2016-2018) (referred to herein as the "Class Vehicles"). Plaintiffs bring claims only on behalf of themselves and consumers who bought or leased the following models: 2015 and 2021 Kia Sportage, 2019 Kia Sportage, 2017 Hyundai Santa Fe Sport, 2020 Hyundai Tucson, and 2018 Hyundai Genesis G80.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

2.     For years, Hyundai and Kia have knowingly concealed the ABS Module Defect from the public and consumers, and in particular, that the ABS module is prone to electrical short-circuits due to trapped moisture that increases the risk of a fire both while the vehicle is being driven or parked. Defendants have also concealed the serious safety risks of bodily injury and property damage that can result from the ABS Module Defect. Among other things, a spontaneous engine fire while driving increases the risk of accident, bodily injury (including death) to drivers and their passengers, as well as to third parties on the road. A spontaneous fire when the vehicle is parked in the garage of a residential home or in a commercial parking structure also increases the risk of bodily injury and significant property damage. Hyundai and Kia never disclosed the dangerous ABS Module Defect, the attendant safety risks, and actual fire incidents to consumers at the point of sale or in any other advertising materials and communications.

3.     The ABS Module Defect has been problematic for Hyundai and Kia for many years, as evidenced by a recent recall in February 2022 of additional Hyundai and Kia model vehicles, including 2014 models. Despite knowing about the ABS Module Defect since as early as 2011, Defendants have waited years to confirm it, acknowledge the safety risks, and issue recalls. Moreover, Defendants' recalls have been inadequate and incomplete, as alleged herein.

4.     In April 2011, an owner of a 2010 Hyundai Elantra Touring, filed a complaint with the National Highway Traffic Safety Administration ("NHTSA")[2] stating: "MY 6-MONTH-OLD HYUNDAI ELANTRA TOURING CAUGHT FIRE AFTER SITTING IN MY DRIVEWAY FOR NINE HOURS" (emphasis in original). A forensic engineer hired by the owner's insurance company investigated the incident, inspected the car, and concluded that the fire was electrical and originated in the engine compartment.[3]

5.     Since the April 2011 NHTSA complaint above was filed, many other Hyundai and Kia owners have reported similar accounts of engines catching fire to the

[2] NHTSA ID No.: 10398944.

[3] *Id.*

NHTSA—underscoring the continuing safety problem that ABS Model Defect poses for consumers and the public alike. Below is a photo of a 2017 Hyundai Tucson burning after the engine suddenly caught fire while being driven on a highway:



6.      Defendants, pursuant to the TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000), are mandated to identify possible vehicle defects through monitoring of NHTSA databases.

7.      Hyundai and Kia knew or should have known about the ABS Module Defect through a number of sources, including: (1) Hyundai and Kia's own pre-sale durability testing on its vehicles and all of its components, including ABS control modules; (2) consumer complaints filed with the NHTSA, including consumer complaints reported directly to Hyundai and Kia; (3) warranty claims, dealership repair records, and part sales with Hyundai and Kia; and (4) safety recalls and technical service bulletins issued by Hyundai and Kia regarding the ABS Module Defect and attempts to fix the defect.

8.    Given the numerous complaints and reports of unexplainable and spontaneous engine compartment fires occurring in the Class Vehicles, Defendants multiyear delay in disclosing the ABS Module Defect and in issuing piece-meal recalls of certain affected Hyundai and Kia vehicles in 2016 (model years 2008-2009), 2018 (model years 2006-2011), 2020 (model years 2006-2018), 2021 (model years 2013-2021), and 2022 (2014-2019) is astounding in light of Hyundai's and Kia's promises of reliability and safety.

9.    Even worse, however, is that Defendants' recalls have been woefully inadequate and incomplete. First, the recalls have not included all affected vehicles, as is evident by the piece-meal recalls alleged herein. In other words, Defendants have failed to offer a remedy for all vehicles with the ABS Module Defect at no cost, even during the applicable warranty periods. And Defendants have denied warranty claims to repair the ABS Module Defect present in vehicles that are outside the warranty period although the defect existed at the time of sale.

10.    Second, the proposed "solutions" identified in the current and prior recall notices are insufficient and fail to adequately repair the ABS Module Defect, as alleged herein. Specifically, Defendants' proposed solutions have not addressed the leaking of moisture in the ABS module or that the ABS module holds a continuous electrical charge—which combined, can result in a spontaneous fire.

11.    Third, the recall notifications, including the most recent February 2022 recall notice, direct owners to "park outside and away from structures" until a solution is available. Despite having years to develop a repair, Defendants have not and their interim recommendation to consumers—to not park their cars inside their garages, near their homes, in their neighborhoods, at their places of work, or at the dozens of other places people frequent—is unworkable and presents an ongoing safety risk.

12.    Fourth, Defendants have not offered to reimburse Class Vehicle owners and lessees for out-of-pocket expenses, diminution in value, loss of use, or loss of time.

13.     When Plaintiffs and Class members bought or leased the Class Vehicles with the ABS Module Defect, Plaintiffs and Class members believed – based on Defendants' misleading advertisements and material omissions – that the Class Vehicles were safe, reliable, and fit for their intended and reasonably foreseeable uses—namely, for safe driving and parking, including in and around structures, such as their homes or places of employment. Had Defendants disclosed at the point of sale or in its advertising materials the ABS Module Defect, that the Class Vehicles were at risk of catching fire while driving or parked, or the actual engine compartment fires that have occurred, Plaintiffs and Class members would have seen such disclosures and would not have bought or leased the Class Vehicles, or they would have paid significantly less to buy or lease them.

14.     Defendants' alleged misconduct violates the consumer protection laws of California and other states as alleged herein and constitutes a breach of Defendants' warranty obligations. On behalf of themselves and consumers nationwide, Plaintiffs seek damages, injunctive, and all other appropriate relief.

## II.     PARTIES

15.     Plaintiff Adam Pluskowski is a citizen and resident of Illinois.

16.     Plaintiff Ricky Barber is a citizen and resident of Illinois.

17.     Plaintiff Lucille Jacob is a citizen and resident of New Jersey.

18.     Plaintiff Carla Ward is citizen and resident of California.

19.     Plaintiff Pepper Miller is a citizen and resident of Texas.

20.     Plaintiff Cindy Brady is a citizen and resident of Texas.

21.     Defendant Hyundai Motor America ("Hyundai" or "HMA") is a California corporation with its headquarters and principal place of business at 10550 Talbert Avenue, Fountain Valley, California 92708. HMA is the U.S. sales, marketing, and distribution subsidiary of its Korean parent company, Hyundai Motor Company.  HMA is responsible for manufacturing, assembling, importing, marketing, advertising, distributing, selling, leasing, warranting, and servicing Hyundai vehicles in the United States.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

22.     HMA's executives, including its Chief Executive Officer, and employees responsible for the manufacture, marketing, advertising, distribution, sales, warranty, and customer service of Hyundai vehicles, including the Hyundai Class Vehicles, are located at HMA's headquarters in Fountain Valley, California. In addition, the decisions regarding the marketing and sale of the Hyundai Class Vehicles, the development and issuance of the recalls relating to the ABS Module Defect found in the Hyundai Class Vehicles, and the decisions concerning the disclosure or non-disclosure of the ABS Module Defect, the attendant safety risks, and engine compartment fire incidents at the point-of-sale and in advertising materials, were made in whole or substantial part by HMA at its Fountain Valley, California headquarters.

23.     In each of HMA's Safety Recall Reports filed with the NHTSA regarding the Hyundai Class Vehicles, HMA is identified as the manufacturer of the recalled vehicles.[4] HMA's recall notification letters to Hyundai owners, HMA instructs owners to visit the "nearest Hyundai dealer" to have the repair completed.[5]

24.     Defendant Hyundai Motor Company ("HMC") is a corporation organized and existing under the laws of the Republic of Korea and has its principal place of business in Seoul, South Korea. HMC is the parent corporation of HMA. On its website, HMC advertises all Hyundai models sold by HMA.

25.     Defendant Kia America, Inc. ("Kia" or "KA") is California corporation with its headquarters and principal place of business at 111 Peters Canyon Road, Irvine, California 92606. KA is the U.S. sales, marketing, and distribution subsidiary of its Korean parent company, Kia Corporation. KA is responsible for manufacturing, assembling, importing, marketing, advertising, distributing, selling, leasing, warranting, and servicing Kia vehicles in the United States.

---

[4] *See e.g.*, https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V056-9011.PDF (last accessed March 17, 2021).

[5] *See e.g.*, https://static.nhtsa.gov/odi/rcl/2021/RCONL-21V303-6181.pdf (last accessed March 17, 2021) and https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V543-0565.pdf (last accessed March 17, 2021).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

26.     KA's executives, including its Chief Executive Officer, and employees responsible for the manufacture, marketing, advertising, distribution, sales, warranty, and customer service of Kia vehicles, including the Kia Class Vehicles, are located at KA's headquarters in Irvine, California. In addition, the decisions regarding the marketing and sale of the Kia Class Vehicles, the development and issuance of the recalls relating to the ABS Module Defect found in the Kia Class Vehicles, and the decisions concerning the disclosure or non-disclosure of the ABS Module Defect, the attendant safety risks, and engine compartment fire incidents at the point-of-sale and in advertising materials, were in whole or substantial part made by KA at its Irvine, California headquarters.

27.     In each of KA's Safety Recall Reports filed with the NHTSA regarding the Kia Class Vehicles, KA is identified as the manufacturer of the recalled vehicles.[6] KA's recall notification letters to Kia owners, KA instructs owners to "contact your Kia dealer" to have the repair completed and provides a link to the Kia America's website to help owners find their "nearest dealer."[7]

28.     Defendant Kia Corporation ("KC") is a corporation organized and existing under the laws of the Republic of Korea and has its principal place of business in Seoul, South Korea. KC is the parent corporation of KA.

29.     The Hyundai and Kia vehicles that Defendants manufacture, distribute, market, and sell share engineering designs, are often manufactured with the same parts, and are usually made in the same factories.

## III.   JURISDICTION AND VENUE

30.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Defendants, and more

---

[6] *See e.g.*, https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V051-7589.PDF (last accessed March 17, 2021).

[7] *See e.g.*, https://static.nhtsa.gov/odi/rcl/2021/RCONL-21V137-6823.pdf (last accessed March 17, 2021).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

than two-thirds of the proposed plaintiff class are citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

31.     This Court may exercise jurisdiction over Defendants because they have located their American headquarters in California; they are registered to conduct business in California; they have sufficient minimum contacts in California; and they have intentionally availed themselves of the markets within California through the promotion, sale, marketing, and distribution of their vehicles, thus rendering the exercise of jurisdiction by this Court proper and necessary.

32.     Venue is proper in this District under 28 U.S.C. § 1391 because HMA and KA are headquartered in this District, HMC and KC are foreign entities, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## IV.   <u>SUBSTANTIVE ALLEGATIONS</u>

### A.     The ABS Module Defect

33.     An ABS is an essential safety feature that is required by law in all vehicles sold in the United States.[8] The ABS modulates brake pressure in an emergency to stop the wheels from locking up and allows drivers to maintain control of the steering wheel and stop the car as quickly as possible. The ABS also prevents skidding, offers better traction control, can help prevent crashes, and promote overall road safety.

34.     An ABS consists of four-wheel sensors and a control module that connect to the vehicle's hydraulic brake system. The ABS control module "consists of the Hydraulic Control Unit ('HCU': hydraulic block with valve, integrated pump with electric motor, low pressure storage system) and the Electronic Control Unit ('ECU': coil carrier with electronic control unit)."[9]

---

[8] https://www.nhtsa.gov/sites/nhtsa.gov/files/esc_fr_03_2007.pdf (last accessed March 18, 2022).
[9] https://www.my-cardictionary.com/abs-control-unit.html (last accessed March 17, 2021).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

35.     Because the ABS control module consists of both the HUC and the ECU, it is also referred to as the "HECU." [10] Indeed, Hyundai and Kia use the terms ABS control module and HECU interchangeably when referring to the same component. In NHTSA filings regarding the ABS Module Defect, HMA has specifically described the ABS module as "the ABS brake hydraulic electronic control unit (HECU)."[11] Hyundai and Kia each also identify ABS modules and HECUs with the same five-digit prefix (58920) for the "Part Number."[12]

36.     The ABS control module is typically installed and mounted in a vehicle's engine compartment, and the wheel sensors are attached to the tires, near the brake rotors.

37.     The ABS control module is connected to and powered by the vehicle's electrical fuse box. It is the brains of the ABS—a "microprocessor"—that "runs diagnostic checks of a vehicle's antilock braking system and processes information from wheel-speed sensors and the hydraulic brake system to determine when to release braking pressure at a wheel that [is] about to lock up and start skidding."[13]

38.     Because the ABS module has an electrical current running through it during operation, the component must be carefully sealed to avoid moisture or liquid reaching or touching its circuits, which can cause corrosion or can lead to electrical short circuit fires.

39.     While the Class Vehicles' ABS module is properly located in the engine compartment, on information and belief, its electrical components are not adequately sealed, thereby permitting moisture from hydraulic fluid or other sources to leak in and

---

[10] *Id.*

[11] *See e.g.*, https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V543-8816.PDF (last accessed March 17, 2022).

[12] *See e.g.*, https://static.nhtsa.gov/odi/rcl/2021/RCRIT-21V303-2514.pdf (Hyundai Technical Service Bulletin regarding ABS Module Inspection and Multi-Fuse Installation, June 2021) (last accessed March 17, 2022); https://static.nhtsa.gov/odi/rcl/2020/RCRIT-20V519-7083.pdf (Kia Safety Recall Campaign regarding HECU/ABS Module Parasitic Current Draw Test and Replacement, October 2020) (last accessed March 17, 2022).

[13] https://www.cars.com/auto-repair/glossary/abs-control-module/ (last accessed March 17, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

around the electronic components in the ABS module. Moreover, because the ABS module maintains an electrical charge at all times, even when the vehicle is not in operation, the moisture accumulating within the ABS control module comes into contact with the electrical components resulting in a short circuit which can then lead to a fire that spreads to the engine compartment and the entire vehicle.

40. These two defects—the inadequate sealing and the continuous electrical charge—create a significant and potentially dangerous situation where a spontaneous fire erupts in the engine compartment of the Class Vehicles.

41. The ABS Module Defect places Plaintiffs and Class members, their passengers, and other drivers on the road in danger and at risk of serious bodily injury when the Class Vehicles are being driven—at any moment and without notice. Further, the ABS Module Defect places Plaintiffs and Class members, their families, and bystanders, such as children and neighbors, at risk of serious bodily injury when the Class Vehicles are routinely parked in garages, neighborhoods, and other countless places. The risk of spontaneous fire also results in an increased risk to property damage, both while the Class Vehicles are being driven or parked.

**B.    Consumer Complaints Reveal the Magnitude of the Defect**

40. Below are just a few examples of the numerous complaints Hyundai and Kia owners and lessees have lodged since 2011 with the NHTSA regarding non-collision fires caused by the ABS Module Defect.[14] The following complaints are also viewable online and searchable by NHTSA ID Number at https://www.nhtsa.gov/recalls.

2010 Hyundai Elantra Touring: **IN OCTOBER 2010 MY 6-MONTH-OLD HYUNDAI ELANTRA TOURING CAUGHT FIRE AFTER SITTING IN MY DRIVEWAY FOR NINE HOURS. THE VEHICLE WAS COMPLETELY TOTALED**. MY INSURANCE COMPANY (GEICO) SECURED THE CAR AND HIRED A FORENSIC ENGINEERING COMPANY (DOWN FORENSIC ENGINEERING, INC., CARY NC) TO INVESTIGATE THE ORIGIN OF THE FIRE. DOWN

---

[14] Emphasis added throughout unless stated otherwise.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

**CONCLUDED THAT THE FIRE WAS ELECTRICAL AND ORIGINATED IN THE ENGINE COMPARTMENT**. HYUNDAI OFFERED TO REIMBURSE MY INSURANCE POLICY DEDUCTIBLES AND TO PAY ME $500 FOR GOOD WILL BUT HAS REFUSED TO REPLACE THE VEHICLE OR REIMBURSE ME FOR ANY OTHER EXPENSES RELATED TO THE FIRE. AS FAR AS I KNOW, **HYUNDAI HAS NOT ISSUED A RECALL OR TSB ON THE CAR**.
(NHTSA ID Number: 10398944, Date Complaint Filed: 04/27/2011)

2009 Kia Sportage: TL* THE CONTACT OWNS A 2009 KIA SPORTAGE. THE CONTACT STATED THAT **WHILE PARKED, THE VEHICLE CAUGHT ON FIRE WITHOUT WARNING**. A POLICE REPORT WAS FILED AND THE VEHICLE WAS TOWED TO AN INDEPENDENT MECHANIC. THE CONTACT MENTIONED THE VEHICLE WAS INSPECTED BY AN **INSURANCE ADJUSTER, WHO CONCLUDED THAT THE FIRE ORIGINATED IN THE REAR DASHBOARD AREA**. THE VEHICLE WAS NOT TAKEN TO A DEALER FOR A DIAGNOSTIC TEST. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS DESTROYED. THE APPROXIMATE FAILURE AND CURRENT MILEAGE WAS 64,000.
(NHTSA ID Number: 10532051, Date Complaint Filed: 07/26/2013)

2015 Kia Sportage: **THE 2015 KIA SPORTAGE WAS IN THE PARKING LOT** AT THE MEDICAL CENTER WHERE MY WIFE HAD A DOCTOR APPOINTMENT. **SHE WAS INSIDE APPROXIMATELY 10-15 MINUTES** WHEN AN ANNOUNCEMENT WAS MADE ABOUT A RED KIA IN THE PARKING LOT. **WHEN SHE LOOKED, IT WAS HER CAR & THE ENGINE COMPARTMENT WAS ENGULFED IN FLAMES**. THE POLICE AND FIRE DEPARTMENT WERE ALREADY ON SCENE & THE FIRE WAS EXTINGUISHED. **THE CAR WAS A TOTAL LOSS**.
(NHTSA ID Number: 11078775, Date Complaint Filed: 03/12/2018)

2017 Kia Sportage: **ON SAT MORNING MY SUV CAUGHT FIRE WITHOUT WARNING.** THIS OCCURRED IN INDIANAPOLIS ON HARDING ST. NEAR THE INTERSTATE EXIT. WE WERE AT A COMPLETE STOP WHEN SMOKE STARTED COMING OUT OF THE CAR THEN FLAMES. I GOT MY KIDS AND DOGS OUT. THEN I

11

REALIZED OUR MEDICATIONS WERE IN THERE. I THEN WENT BACK TO TRY TO GRAB THE BAG. I COULDN'T BECAUSE OF HOW FAST IT WENT UP. IN THE PROCESS I ENDED WITH TWO SMALL BURNS AND A SLIGHT ABRASION. THERE WAS NO WARNING. THE SUV HAS BEEN MAINTENANCE AND GIVEN ALL REQUIRED MAINTENANCE. IN FACT IN JUNE IT WAS TAKEN IN FOR AN OIL CHANGE.AND 15000 MILE MAINTENANCE. **CURRENTLY IT SUSPECTED THAT THIS WAS ELECTRIC FIRE**. (NHTSA ID Number: 11124013, Date Complaint Filed: 09/02/2018)

2009 Kia Sportage:  ON TUESDAY AUGUST 28TH 2018 MY CAR WAS PARKED IN AN APARTMENT PARKING LOT, AND HAD BEEN OFF FOR 4 HOURS. **I WOKE UP TO MY CAR ALARM GOING OFF AT 12AM**. I LOOKED OUT THE WINDOW AND THE LIGHTS WERE NOT FLASHING ON MY CAR SO I DIDN'T THINK IT MINE. **NOT MORE THAN 1 MINUTE LATER MY CAR STARTED ON FIRE**. THANK GOODNESS MY BOYFRIEND WAS A FIREFIGHTER. HE CALLED 911 AND THE FIRE WAS PUT OUT WITH 15 MINUTES. HOWEVER **MY CAR WAS DETERMINE A TOTAL LOSS**. **ALL THEY COULD TELL ME WAS THAT IT LOOKED LIKE IT WAS AN ELECTRICAL FIRE**. NO ONE WAS HURT, BUT **HAD I BEEN AT HOME THAT NIGHT IN MY DUPLEX WHO I SHARE WITH MY NEIGHBORS AND THEIR INFANT, AND PARKED IN MY GARAGE MY HOUSE WOULD HAVE BEEN BURNED AND I WOULD BE DEAD**. IT WAS A 2009 KIA SPORTAGE AND I HAD NEVER HAD A SINGLE ISSUE WITH THE CAR IN THE 9 YEARS THAT I OWED IT. I WAS THE ONLY OWNER SO I KNEW MY CAR WAS WELL TAKEN CARE OF. WITH KIA IN THE NEWS A LOT LATELY WITH CAR FIRES I CAN'T HELP BUT FEEL THERE SHOULD BE AN INVESTIGATION. (NHTSA ID Number: 11129191, Date Complaint Filed: 9/12/2018)

2009 Kia Sportage: A FIRE STARTED IN THE ENGINE COMPARTMENT ON THE PASSENGER SIDE APPROXIMATELY 45 MINUTES AFTER PARKING THE VEHICLE AT MY PLACE OF EMPLOYMENT. WHILE SEARCHING THE INTERNET I FOUND THERE WAS A RECALL FOR THIS EXACT THING. **I WAS NEVER NOTIFIED ABOUT THE RECALL AND NOW MY VEHICLE IS TOTALED FROM THE LACK OF NOTICE**. (NHTSA ID Number: 11192437, Date Complaint Filed: 03/29/2019)

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

2008 Kia Sportage: CAR WAS SITTING IN DRIVE WAY FOR A DAY AND HALF AT 335 IN THE MORNING ELECTRICAL SHORT STARTED A FIRE WAS CAUGHT ON NEIGHBOR SECURITY CAMERA.
(NHTSA ID Number: 11204208, Date Complaint Filed: 04/28/2019)

2018 Kia Sportage: THE ENTIRE CAR CAUGHT FIRE. ALL ELECTRIC WIRES CAUGHT FIRE AND THE CAR IT WAS PARK IN MY HOUSE.
(NHTSA ID Number: 11288823, Date Complaint Filed: 12/13/2019)

2017 Kia Sportage: THE CAR CAUGHT FIRE AFTER BEING DRIVEN. AS SOON AS IT WAS PARKED IT STARTED SMOKING AND WITHIN MINUTES IT WAS ENGULFED IN FLAMES AND TOTALLY DESTROYED.
(NHTSA ID Number: 11407196, Date Complaint Filed: 04/09/2020)

2017 Kia Sportage: TL* THE CONTACTS SON OWNED A 2017 KIA SPORTAGE. THE CONTACT STATED **WHILE DRIVING AT 30 MPH, THE VEHICLE BEGAN TO SMOKE COMING FROM THE FRONT END OF THE VEHICLE**. WHILE ATTEMPTING TO DEPRESS THE BRAKE PEDAL, THE VEHICLE CONTINUED FORWARD MOVEMENT. THE CONTACT PULLED OVER TO THE SIDE OF THE ROAD, AND THE **VEHICLE BECAME ENGULFED IN FLAMES**. THE FIRE MARSHALS WERE CALLED TO SCENE AND EXTINGUISHED THE FIRE, AND A REPORT WAS TAKEN. THE VEHICLE WAS TAKEN TO A TOW LOT WHERE IT WAS DIAGNOSED WITH BEING DESTROYED. THE VEHICLE WAS NOT REPAIRED. UPON INVESTIGATION, THE CONTACT ASSOCIATED THE FAILURE WITH, NHTSA CAMPAIGN NUMBER: 21V137000 (SERVICE BRAKES, HYDRAULIC). THE MANUFACTURER WAS INFORMED OF FAILURE AND WAS AWAITING A RESPONSE. THE FAILURE MILEAGE WAS NOT AVAILABLE.
(NHTSA ID Number: 11404989, Date Complaint Filed: 03/26/2021)

2014 Hyundai Santa Fe Sport: 2014 HYUNDAI SANTA FE SPORT-BRAKE LIGHT/ ABS LIGHT/ HILL DESCENT CONTROL LIGHT CAME ON IN VEHICLE AND AFTER A DAY OR TWO NEVER TURNED OFF. TOOK CAR TO DEALERSHIP AND WAS ASKED TO MAKE APPOINTMENT. THE NEXT DAY A TRIANGLE WITH

13

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

EXCLAMATION POINT LIGHT TURNED ON ALONG WITH A STEERING WHEEL WITH EXCLAMATION POINT LIGHT AND THE STEERING WHEEL BECAME LOOSE AT THIS TIME. DROVE MYSELF HOME AND AFTER PARKING I TURNED VEHICLE OFF BUT THE ENGINE CONTINUED TO MAKE HUMMING NOISES LIKE SOMETHING WAS STILL RUNNING. RESTARTED CAR AND THEN TURNED OFF ENGINE AGAIN AND THE NOISE STOPPED. **I WENT INSIDE MY HOUSE AND LESS THAN 5 MINUTES LATER THERE WAS A LOUD BANGING ON MY FRONT DOOR- A NEIGHBOR THAT RAN UP TO INFORM ME MY CAR WAS ON FIRE.** I COMPLETED REGULAR MAINTENANCE ON THIS VEHICLE AND IT ONLY HAD 35,000 MILES. PLEASE LOOK INTO THIS SITUATION SO THAT NO OTHERS GO THROUGH THIS DEVASTATING SITUATION THAT I FACED TODAY.
(NHTSA ID Number: 11163149, Date Complaint Filed: 12/22/2018)

2014 Hyundai Santa Fe Sport: **ABOUT 20 MINUTES AFTER PARKING MY VEHICLE AT AN OFFICE LOCATION, IT CAUGHT ON FIRE. I COULD SEE THE FIRE BY THE RIGHT FRONT WHEEL, BETWEEN THE TIRE AND THE BODY; SMOKE WAS COMING FROM ALL AROUND THE HOOD. WE PUT OUT THE FIRE WITH A FIRE EXTINGUISHER. WE COULD SEE DAMAGED WIRES**. I HAD NOTICED WARNING LIGHTS ON MY DISPLAY PANEL WHEN I GOT INTO MY VEHICLE TO START DRIVING. I CALLED CLAY COOLEY HYUNDAI OF ROCKWALL AND INFORMED THEM OF THE MESSAGES: BEEPING FOLLOWED BY FLASHING MESSAGES ABOUT ABS, ESC, & DOWNHILL BRAKE CONTROL; PLUS DOWN BELOW WERE TWO RED CIRCLES (EXCLAMATION MARK IN ONE AND THE LETTER P IN THE OTHER) AND THE WORD BRAKE BELOW. **I ASKED HYUNDAI IF THE CAR WAS SAFE TO DRIVE AND THEY SAID YES.** I PROCEEDED TO MY 12 NOON APPOINTMENT IN RICHARDSON, TX. ABOUT 20 MINS AFTER PARKING THE CAR, THE FIRE WAS NOTICED BY AN EMPLOYEE. THE DAY BEFORE THIS, ON TUE, 01-29-2019, I HAD NOTICED 3 AMBER WARNING LIGHTS (ABS, ESC & DBC). I CALLED HYUNDAI, INFORMED THEM OF THIS AND MADE AN APPOINTMENT FOR THUR JAN 31, 2019 AT 9:30 A.M.
(NHTSA ID Number: 11174728, Date Complaint Filed: 02/06/2019)

14

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

2013 Hyundai Santa Fe Sport: **MY HYUNDAI SANTA FE SPORT 2013 MODEL SUDDENLY CAUGHT FIRE WHILE THE VEHICLE WAS IN MOTION**. THERE WAS NO ACCIDENT INVOLVED. INCIDENT HAPPENED ON DEC 5, 2019. I AM ATTACHING THE FIRE DEPARTMENT REPORT. MY WIFE WAS **DRIVING THE VEHICLE ON CITY ROAD AT A SPEED OF 45 MPH AND SUDDENLY SMOKE STARTED COMING OUT OF HOOD**. SHE STOPPED THE VEHICLE, GOT OUT OF IT AND A NEARBY DRIVER CALLED 911. FIRE DEPARTMENT FOLKS REACHED THE LOCATION IN 5 TO 10 MINS AND CONTROLLED THE FIRE.
(NHTSA ID Number: 11298274, Date Complaint Filed: 01/09/2020)

2014 Hyundai Santa Fe Sport: TL* THE CONTACT OWNED A 2014 HYUNDAI SANTA FE SPORT. THE CONTACT STATED THAT **THE VEHICLE WAS AT STAND STILL ON THE INSIDE OF THE GARAGE**, WHEN SHE HEARD AN ABNORMAL NOISE AND SHE **STARTED TO SMELL SMOKE ODOR**. THE CONTACT STATED HER DAUGHTER **NOTICED FIRE UNDER THE VEHICLE. THE CONTACT STATED SHE SAW AN UNKNOWN LEAK DRIPPING UNDER THE VEHICLE AND WAS EXPANDING THE FIRE. THE CONTACT STATED PART OF HER HOUSE ALSO CAUGHT FIRE**. THE FIRE DEPART WAS ABLE TO EXTINGUISH THE FIRE. A POLICE AND FIRE REPORT WAS FILED. THE CONTACT STATED NO ONE WAS INJURED OR SEEK MEDICAL ATTENTION, BUT DID FEEL SHORTNESS OF BREATH DUE TO THE SMOKE. THE VEHICLE WAS NOT DRIVABLE. **THE VEHICLE WAS TOTALED**. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED AS OF YET. A DEALER WAS NOT CONTACTED. THE MANUFACTURER WAS ATTEMPTED TO BE CONTACTED BUT HAD NOT BEEN ABLE TO SPEAK TO ANYONE. THE FAILURE MILEAGE WAS APPROXIMATELY 93,000.
(NHTSA ID Number: 11373484, Date Complaint Filed: 11/06/2020)

2014 Hyundai Santa Fe Sport: TL* THE CONTACT OWNED A 2014 HYUNDAI SANTA FE SPORT. THE CONTACT RECEIVED NHTSA CAMPAIGN NUMBER: 20V520000 (SERVICE BRAKES, HYDRAULIC) HOWEVER, THE PART TO DO THE RECALL REPAIR WAS NOT YET AVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER HAD EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE CONTACT HAD

15

EXPERIENCED A FAILURE **WHILE THE VEHICLE WAS IN THE DRIVEWAY OF HIS RESIDENCE WITHOUT WARNING AFTER EXITING HIS HOME TO WALK TO HIS VEHICLE. THE CONTACT NOTICED THE VEHICLE WAS ON FIRE INSIDE THE CARPORT WHICH WAS ATTACHED TO THE HOUSE**. **THE CONTACT RAN BACK IN THE HOUSE CONTACTED THE FIRE DEPARTMENT WITHIN MOMENTS THE VEHICLE AND RESIDENCE WENT UP IN FLAMES**. THE FIRE DEPARTMENT WAS CONTACTED CAME OUT AND EXTINGUISHED THE FLAMES. A POLICE REPORT WAS MADE. MEDICAL ATTENTION WAS CONTACTED AND CAME OUT TO THE SEEN BUT WAS NOT NEEDED. **THE FIRE DEPARTMENT DEEMED THE VEHICLE AND RESIDENCE A TOTALED**. DORAL HYUNDAI 10285 N.W. 12TH STREET, DORAL, FL 33172 (305) 477-4005 CONTACTED THE CONTACT FOR A COURTESY CALL AND WAS INFORMED, FROM THE CONTACT THAT THE VEHICLE WENT UP IN FLAMES. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 130,000. THE PARTS DISTRIBUTION DISCONNECT.
(NHTSA ID Number: 11388883, Date Complaint Filed: 01/19/2021)

2015 Hyundai Santa Fe Sport: Hyundai Santa Fe Sport 2015 was making sounds when vehicle was off. The ABS warning lights were lit on the dashboard (3 warnings in total) once car was turned on. Drove home hoping the sound would go away but it did not. Once home the sound continued without the vehicle being on. **Opened the hood and listened for the location of the sound. It was the ABS module on the left. This part then caught on fire while parked and off (keys were out)**.
(NHTSA ID Number: 11431709, Date Complaint Filed: 09/04/2021)

2019 Hyundai Tucson: 1.3 MILES AWAY FROM THE DEALERSHIP I PURCHASED THE 2019 HYUNDAI TUCSON IT STARTED TO SMOKE. 5 MINUTES LATER IT WAS ON FIRE!! IT HAD LESS THAN 400 MILES ON IT AND I'VE YET TO FIND OUT WHAT EXACTLY CAUSED THE FIRE. HYUNDAI OR THE DEALERSHIP WON'T TELL ME. **THE FIRE CAME FROM THE PASSENGER SIDE UNDER THE HOOD. THE VEHICLE STARTED SMOKING WHEN I ATTEMPTED TO START IT AND CAUGHT ON FIRE WHILE OFF**.
(NHTSA ID Number: 11265995, Date Complaint Filed: 10/03/2019)

<u>2018 Hyundai Tucson</u>: VEHICLE CAUGHT FIRE WHILE DRIVING ON THE HIGHWAY.
(NHTSA ID Number: 11351329, Date Complaint Filed: 08/26/2020)

<u>2017 Hyundai Tucson</u>: MY DAUGHTER WAS DRIVING HER CAR UP A HILL ON HWY 2 AND IT SLOWED TO A STOP. SHE PULLED OVER AND IT STARTED SMOKING. THE ENGINE CAUGHT FIRE AND BURNED HER CAR. IT WAS A TOTAL LOSS.
(NHTSA ID Number: 11405893, Date Complaint Filed: 03/31/2021)

<u>2016 Hyundai Tucson</u>: On Friday, September 11, 2022, I had just returned from running errands. **I parked the car**, which had no warning lights on whatsoever, and exited the vehicle. **A few seconds later, smoke started streaming out from under the hood**. I popped the hood but did not open it, and started toward the house to get some water, thinking that something was overheated. **Before I had taken ten steps, flames were shooting out from the hood**. **I called 911, but before the fire department arrived, part of my house also caught fire**. It has been inspected by the fire marshal and my insurance company.
(NHTSA ID Number: 11452621, Date Complaint Filed: 02/17/2022)

<u>2011 Hyundai Santa Fe</u>: CAR WAS DRIVEN ABOUT 10 MILES AND THEN PARKED INSIDE AN ATTACHED GARAGE. NO ISSUES WERE PRESENT DURING THE DRIVE. THE IGNITION WAS TURNED OFF AND KEY REMOVED FROM VEHICLE. **AFTER APPROXIMATELY 1 HOUR HAD PASSED THE CAR STARTED ON FIRE. FLAMES WERE VISIBLE BEHIND THE FRONT RIGHT HEADLIGHT AND FRONT RIGHT WHEEL**. LUCKILY NO ONE WAS HARMED. THE FIRE CAUSED SIGNIFICANT DAMAGE TO THE GARAGE AND HOME. FIRE DEPARTMENT INVESTIGATION CONCLUDED THAT THE CAUSE OF THE FIRE WAS NOT EXTERNAL TO THE VEHICLE.
(NHTSA ID Number: 11080980, Date Complaint Filed: 03/22/2018)

<u>2018 Hyundai Santa Fe</u>: I CALLED THE DEALERSHIP TO REPORT A HOT SMELL IN MY CAR ON TUESDAY. THEY TOLD ME TO BRING IT IN FOR SERVICE INSPECTION. THURSDAY MORNING THE CAR WAS DRIVEN FOR A SHORT TIME AND PARKED IN THE DRIVE WAY AFTER. APPROXIMATELY TWO HOURS TO TWO AND A

HALF HOURS LATER THE CAR CAB WAS FULL OF SMOKE. THE FIRE DEPARTMENT AND SHERIFFS DEPARTMENT BOTH ARRIVED ON SCENE.
(NHTSA ID Number: 11233444, Date Complaint Filed: 07/19/2019)

2017 Hyundai Santa Fe: THE CONTACT OWNED A 2017 HYUNDAI SANTA FE. THE CONTACT STATED THAT THE **VEHICLE CAUGHT FIRE UNDER THE HOOD WHILE PARKED** AND UNOCCUPIED. THE FIRE DEPARTMENT WAS PRESENT, EXTINGUISHED THE FIRE, AND STATED THAT THE FIRE INITIATED AROUND THE BATTERY AREA. A FIRE DEPARTMENT REPORT WAS FILED. THE CONTACT MENTIONED THAT A NEW BATTERY WAS INSTALLED A WEEK PRIOR THE FAILURE. THE MANUFACTURER WAS CONTACTED. **THE VEHICLE WAS TOWED AND DEEMED DESTROYED**. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE DEALER WAS NOT CONTACTED. THE VIN WAS UNKNOWN. THE APPROXIMATE FAILURE MILEAGE WAS 40,000.
(NHTSA ID Number: 11257848, Date Complaint Filed: 09/24/2019)

2016 Hyundai Santa Fe: **VEHICLE CAUGHT FIRE SPONTANEOUSLY AT A PARKING LOT**. CAR WAS JUST SERVICED AND INSPECTED A MONTH PRIOR AT THE HYUNDAI DEALER WHERE I PURCHASED IT AND HAD NO PROBLEMS REPORTED. CAR WAS PARKED AT THE TIME OF THE INCIDENT. FROM THE INITIAL REPORT FROM THE FIRE DEPARTMENT THE CAUSE OF THE FIRE WAS A MECHANICAL ISSUE. THE VEHICLE WAS A TOTAL LOSS.
(NHTSA ID Number: 11355609, Date Complaint Filed: 09/17/2020)

2017 Hyundai Santa Fe: The owner had just left the driveway and was driving up the neighborhood block at low speed in the vehicle when another driver motioned that there was a problem with the car, pointing at the driver's side wheel well. The owner immediately pulled to the curb, exited the vehicle, and saw smoke pouring from the vehicle. Grabbed purse and moved a safe distance away. **Spontaneously the car caught fire under the engine** before the fire truck arrived 8 minutes later. Huge flames shooting from under the hood were captured on both video and photos. The car is a total loss. Had been well maintained.
(NHTSA ID Number: 11441826, Date Complaint Filed: 11/27/2021)

2008 Hyundai Azera: FIRE IN ENGINE COMPARTMENT WHILE CAR WAS PARKED & OFF. KEY WAS NOT IN IGNITION. CAR SAT UNUSED FOR APPROX. 48 HOURS PRIOR TO FIRE.
(NHTSA ID Number: 11072177, Date Complaint Filed: 02/11/2018)

2008 Hyundai Azera: RECALL NUMBER 18V026000 RECALL DATE 01/09/2018 COMPONENT SERVICE BRAKES, HYDRAULIC:ANTILOCK HYUNDAI RECALLS AZERA AND SONATA FOR FIRE DANGERS JANUARY 24, 2018 ' HYUNDAI IS RECALLING ABOUT 88,000 MODEL YEAR 2006-2011 HYUNDAI AZERA AND 2006 HYUNDAI SONATA CARS BECAUSE THE ENGINE COMPARTMENTS MAY CATCH ON FIRE. **ON 1/10/18, 2 WEEKS PRIOR TO THIS RECALL MY 2008 HYUNDAI AZERA CAUGHT FIRE IN MY BASEMENT WHILE IT WAS PARKED AND NO KEY WAS IN THE IGNITION. THIS HAPPENED AT 3:30AM, OUR ENTIRE HOUSE, INCLUDING BOTH OF OUR VEHICLES WERE DESTROYED. NOTHING WAS SALVAGEABLE**. THE AUTOMAKER REVEALS IN THE GOVERNMENT DOCUMENTS THAT WATER COULD ENTER THE ANTI-LOCK BRAKE MODULE AND CAUSE AN ELECTRICAL SHORT, WHICH INCREASES THE RISK OF FIRE WHETHER THE VEHICLE IS ON OR OFF**. HYUNDAI SAYS THE RECALL IS SCHEDULED TO BEGIN ON FEB. 23, AND THAT ALL NECESSARY REPAIRS WILL BE MADE BY DEALERS FREE OF CHARGE. HERE IS AN ARTICLE THAT CLEARLY STATES WHAT COULD POSSIBLY HAPPEN WITH THE RECALL. **HYUNDAI HAS YET TO ACCEPT RESPONSIBILITY**.
HTTPS://WWW.MLIVE.COM/AUTO/2018/01/HYUNDAI_RECALL.
(NHTSA ID Number: 11202884, Date Complaint Filed: 04/22/2019)

2010 Hyundai Elantra Touring: IN OCTOBER 2010 MY 6-MONTH OLD HYUNDAI ELANTRA TOURING **CAUGHT FIRE AFTER SITTING IN MY DRIVEWAY FOR NINE HOURS. THE VEHICLE WAS COMPLETELY TOTALED**. MY INSURANCE COMPANY (GEICO) SECURED THE CAR AND HIRED A FORENSIC ENGINEERING COMPANY (DOWN FORENSIC ENGINEERING, INC., CARY NC) TO INVESTIGATE THE ORIGIN OF THE FIRE. DOWN CONCLUDED THAT THE **FIRE WAS ELECTRICAL AND ORIGINATED IN THE ENGINE COMPARTMENT**. HYUNDAI OFFERED TO REIMBURSE

19

MY INSURANCE POLICY DEDUCTIBLES AND TO PAY ME $500 FOR GOOD WILL, BUT **HAS REFUSED TO REPLACE THE VEHICLE OR REIMBURSE ME FOR ANY OTHER EXPENSES RELATED TO THE FIRE**. AS FAR AS I KNOW, **HYUNDAI HAS NOT ISSUED A RECALL OR TSB ON THE CAR**.
(NHTSA ID Number: 10398944, Date Complaint Filed: 10/16/2010)

2011 Hyundai Elantra Touring: VEHICLE CAUGHT FIRE WHILE PARKED IN GARAGE. VEHICLE WAS NOT RUNNING AND HAD NOT BEEN DRIVEN FOR OVER 5 HOURS. FIRE ORIGINATED IN THE DRIVERS SIDE OF THE ENGINE COMPARTMENT.
(NHTSA ID Number: 11218387, Date Complaint Filed: 06/06/2019)

2010 Hyundai Elantra: I PUT MY 2010 HYUNDAI ELANTRA IN THE GARAGE ABOUT 11:00 PM ON SUNDAY NIGHT AUGUST 11, 2013. AT ABOUT 01:00 AM ON AUGUST 12, 2013 **I WAS AWAKENED WITH MY ENTIRE GARAGE ON FIRE. THE FIRE APPEARED TO COME FROM THE FRONT OF THE ELANTRA**, AS BOTH FRONT TIRES WERE COMPLETELY BURNED WITH ONLY STEEL WIRES WRAPPED AROUND WHEELS. ENGINE IS WARPED AND BURNED. ENTIRE FRONT END MELTED. I LOST **MY GARAGE AND CONTENTS ALONG WITH KAYAKS ON KAYAK TRAILER PARKED BESIDE GARAGE. BOTH NEIGHBORS' PRIVACY FENCES WERE BURNED DOWN BEHIND AND BESIDE MY GARAGE. THE ELANTRA BURNED COMPLETELY FROM THE FIRE**. NO STEERING WHEEL OR UPHOLSTERY LEFT. ALL ALUMINUM PARTS MELTED. RADIATOR MELTED. WIRES MELTED. EVEN THE BATTERY WAS MELTED.
(NHTSA ID Number: 10536612, Date Complaint Filed: 08/22/2013)

2007 Hyundai Elantra: **VEHICLE CAUGHT FIRE AFTER SITTING OFF FOR 5 HOURS. FIRE DEPARTMENT DETERMINED THAT FIRE ORIGINATED IN ENGINE COMPARTMENT**. NO INDICATION OF ARSON. **PROBABLE CAUSE OF FIRE ELECTRICAL WITHIN ENGINE COMPARTMENT**. VEHICLE WAS IN EXCELLENT CONDITION, NEVER HAD ANY PROBLEMS AND WAS NEVER IN AN ACCIDENT. **NO RECALLS ISSUED FOR ELECTRICAL ISSUES IN ENGINE COMPARTMENT**. VEHICLE WAS PURCHASED NEW. NO PREVIOUS OWNER.
(NHTSA ID Number: 10548829, Date Complaint Filed: 10/21/2013)

20

2008 Hyundai Elantra: THE CONTACT OWNED A 2008 HYUNDAI ELANTRA. **WHILE PARKING THE VEHICLE AFTER DRIVING FOR APPROXIMATELY FIVE MINUTES, IT CAUGHT ON FIRE**. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE AND FILED A REPORT. THE VEHICLE WAS TOWED BY THE INSURANCE COMPANY. THE FIRE DEPARTMENT DIAGNOSED THE VEHICLE WITH FAILED WIRES. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 40,000.
(NHTSA ID Number: 10875551, Date Complaint Filed: 06/21/2016)

2007 Hyundai Elantra: COLD CAR CATCHES ON FIRE TOTAL LOST. WAS PARKED ON MY DRIVEWAY.
(NHTSA ID Number: 10956981, Date Complaint Filed: 02/15/2017)

2007 Hyundai Elantra: MY CAR SPONTANEOUSLY CATCH FIRE ON ITS OWN. THE CAR PARKED ON MY FRONT YARD FOR AT LEAST 3 HOURS. IT WENT AFLAME, THE WHOLE ENGINE WAS DESTROYED. EVERY THING CAUGHT ON HOME SECURITY CAMERA.
(NHTSA ID Number: 11051523, Date Complaint Filed: 11/30/2017)

2011 Hyundai Elantra: THE CONTACT OWNED A 2011 HYUNDAI ELANTRA. THE CONTACT STATED THAT **THE VEHICLE CAUGHT FIRE WHILE PARKED IN THE FAMILY GARAGE**. THERE WERE NO INJURIES AND THE FIRE DEPARTMENT PUT OUT FIRE. A FIRE REPORT AND A POLICE REPORT WERE FILED. **SMOKE FILLED THE HOME AND THE GARAGE DRYWALL CEILING HAD COLLAPSED AND BLACKENED THE INTERIOR OF THE GARAGE. THERE WAS EXTENSIVE SMOKE DAMAGE TO THE INTERIOR OF THE HOUSE. THE VEHICLE WAS ENGULFED IN FLAMES AND FULL OF WATER. THE FIRE STARTED ON THE DRIVER'S FRONT SIDE OF THE ENGINE**. THE EXACT CAUSE HAD NOT BEEN DETERMINED AS OF YET. **THE VEHICLE 'S WHOLE FRONT FROM THE ENGINE HAD BEEN BURNED OUT**. THE GLASS EXPLODED AND THE VEHICLE WAS RIPPED OPEN USING A JAWS OF LIFE TOOL SO THE FIRE DEPARTMENT COULD PUT OUT THE FIRE FROM THE ENGINE. **THE VEHICLE WAS DESTROYED**. THE DEALER AND THE

MANUFACTURER WERE NOT CONTACTED. THE FAILURE
MILEAGE 68,000.
(NHTSA ID Number: 11222746, Date Complaint Filed: 06/26/2018)

2008 Hyundai Elantra: THIS LAST OCTOBER (2017), **I WAS WOKEN
UP BY NEIGHBORS INFORMING US THAT SMOKE WAS
COMING FROM OUR GARAGE. THERE WAS A FIRE THAT
STARTED IN THE ENGINE BAY OF MY 2008 (REGULARLY
MAINTENANCED) HYUNDAI ELANTRA, AND TOTALED MY
CAR, MY WIFE'S CAR, AND EXTENSIVELY DAMAGED MY
GARAGE ($15,000 WORTH).** THE VEHICLE SHOWED NO SIGNS
OF IT ACTING STRANGELY AT ALL. **THE FIRE DEPARTMENT
CHALKED IT UP TO A "UNEXPLAINED ELECTRICAL FIRE" AS
IT SEEMED LIKE IT STARTED FROM AROUND WHERE THE
BATTERY WAS.**
(NHTSA ID Number: 11139165, Date Complaint Filed: 10/09/2018)

2009 Hyundai Elantra: ON 09/17/2018 **I WOKE UP AROUND 5 AM TO
FIND THE ELANTRA FULLY ENGULFED IN FLAMES IN THE
FRONT END. IT WASN'T RUNNING, NOTHING LEFT ON, IT
HAD NOT BEEN RUN FOR 4 HOURS SO THE ENGINE SHOULD
HAVE BEEN COLD.** NO DRIVABILITY PROBLEMS BEFORE.
POLICE AND FIRE DEPARTMENT RESPONDED, PUT THE FIRE
OUT AND STATED THAT THEY SAW NOTHING SUSPICIOUS
ABOUT THE FIRE AND THAT I SHOULD CHECK ON PROBLEMS
WITH HYUNDAI. THIS CAR ONLY HAD 70000 MILES ON IT WITH
A 10 YEAR 100000 MILE WARRANTEE .**I WENT TO THE DEALER,
THEY TOLD ME IT WAS NOT COVERED WITHOUT EVEN
LOOKING AT IT. THIS CAR WAS COLD, PARKED, NOTHING
ON, NO KEYS IN IT, I DON'T SEE ANY REASON IT SHOULD
HAVE CAUGHT FIRE. IT WAS A TOTAL LOSS.** THANK YOU.
(NHTSA ID Number: 11140848, Date Complaint Filed: 10/17/2018)

2008 Hyundai Elantra: MY DAUGHTER'S 2008 HYUNDAI ELANTRA
WAS PARKED ON THE STREET OUTSIDE HER APARTMENT
COMPLEX. THE FRONT OF THE CAR CAUGHT ON FIRE AFTER
THE CAR HAD BEEN PARKED FOR ABOUT 30-35 HOURS.
(NHTSA ID Number: 11258901, Date Complaint Filed: 09/29/2019)

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

2008 Hyundai Elantra: **14 HOURS AFTER PARKING THE CAR, SMOKE WAS COMING FROM THE ENGINE COMPARTMENT**. FIRE DEPT WAS CALLED, I DISCONNECTED THE BATTERY AND FIRE DEPARTMENT EXTINGUISHED SMOKE SOURCE. TOWED TO **DEALER, WHO SAID THE ABS SYSTEM SHORTED CAUSING A FIRE AND DESTROYING WIRING HARNESS**. LUCKILY IT WAS CAUGHT BEFORE THE VEHICLE WAS DESTROYED.
(NHTSA ID Number: 11308829, Date Complaint Filed: 02/12/2020)

2007 Hyundai Elantra: SOME TIME BETWEEN APPROXIMATELY BETWEEN 12:00 AM AND 4:00 AM ON 2/1/2020, THE VEHICLE CAUGHT FIRE ON IT'S OWN (IT WAS PARKED AND OFF) AND BADLY BURNED OUR GARAGE/HOME CAUSING EXTENSIVE PROPERTY DAMAGE TO THE GARAGE AND INTERIOR OF OUR HOME.
(NHTSA ID Number: 11310173, Date Complaint Filed: 02/19/2020)

2008 Hyundai Elantra: **MY 2008 HYUNDAI CAUGHT FIRE IN MY GARAGE** ON FEBRUARY 18, 2020. **THE FIRE DESTROYED MY CAR AND MY GARAGE**. MY NEIGHBOR HAPPENED TO BE TAKING HIS DOG OUT AT 4:00 AM AND SMELLED SMOKE. HE LOOKED OVER AND SAW SMOKE COMING OUT OF MY GARAGE.HE FRANTICALLY RANG THE DOORBELL, WOKE ME AND MY HUSBAND UP AND WE CALLED 911. **WE COULD HAVE DIED AS A RESULT**.
(NHTSA ID Number: 11321087, Date Complaint Filed: 04/14/2020)

2007 Hyundai Elantra: THE CONTACT CALLED ON BEHALF OF THE VEHICLE OWNER HIS STEPSON. THE CONTACT STATED WHILE THE STEPSON'S VEHICLE A **2007 HYUNDAI ELANTRA WAS PARKED IN FRONT OF AN APARTMENT COMPLEX, THE VEHICLE CAUGHT ON FIRE**. THE CONTACT WAS ALERTED BY THE FIRE DEPARTMENT WHOM EXTINGUISHED THE FIRE AND FILED A REPORT. THE CONTACT STATED THAT THE ENGINE COMPARTMENT WAS BURNT. THERE WAS NO WARNING INDICATORS ILLUMINATED PRIOR TO THE FAILURE. THE VEHICLE WAS TOTALED. THE CONTACT STATED THAT HE WAS INFORMED OF NHTSA CAMPAIGN NUMBER: 20V061000 (SERVICE BRAKES, HYDRAULIC) BY THE INSURANCE COMPANY HOWEVER, **THE VIN WAS NOT INCLUDED IN THE RECALL**.

THE CONTACT CALLED AN UNKNOWN HYUNDAI DEALER IN
ORLANDO, FL AND WAS REFERRED TO THE MANUFACTURER.
THE CONTACT CALLED THE MANUFACTURER SEVERAL TIMES
AND WAS UNABLE TO REACH A LIVE AGENT. THE FAILURE
MILEAGE WAS UNKNOWN.
(NHTSA ID Number: 11325178, Date Complaint Filed: 05/19/2020)

2007 Hyundai Elantra: THE CONTACT OWNS A 2007 HYUNDAI
ELANTRA. THE CONTACT STATED **WHILE THE VEHICLE WAS
PARKED IN THE DRIVEWAY, IT SPONTANEOUSLY CAUGHT
FIRE**. THERE WERE NO REPORTED INJURIES. THE FIRE
DEPARTMENT EXTINGUISHED THE FIRE. THERE WAS NO
POLICE REPORT FILED. THE LOCAL DEALER WAS NOT
CONTACTED. THE VEHICLE WAS NOT DIAGNOSED OR
REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE
FAILURE. THE CONTACT STATED THE FAILURE WAS SIMILAR
TO NHTSA CAMPAIGN NUMBER: 20V061000 (SERVICE BRAKES,
HYDRAULIC). THE FAILURE MILEAGE WAS 160,000.
(NHTSA ID Number: 11391064, Date Complaint Filed: 02/01/2021)

2008 Hyundai Elantra: Our car was sitting under our carport and got know
on door that **our car was on fire!** We call 911 the cam [sic] and put fire ot
[sic] that had also taken all the siding off the side of the house. **Firemen
said fire started under hood they thought**. We believe that this fire was
caused by a short circuit in abs module. We looked at recalls tonight
and found this out.
(NHTSA ID Number: 11430960, Date Complaint Filed: 08/30/2021)

2008 Hyundai Entourage: VEHICLE WAS PARKED IN THE
DRIVEWAY, NOT DRIVEN FOR APPROXIMATELY ONE WEEK.
THE ENGINE COMPARTMENT STARTED SMOKING THEN
ERUPTED IN FLAMES.
(NHTSA ID Number: 11110123, Date Complaint Filed: 07/08/2018)

2008 Hyundai Entourage: THE CONTACT OWNED A 2008 HYUNDAI
ENTOURAGE. THE CONTACT STATED THAT **WHILE THE
VEHICLE WAS PARKED IN HER DRIVEWAY, SHE WENT
OUTSIDE AND NOTICED SMOKE COMING FROM THE UNDER
THE HOOD**. THE STATED THAT SHE AND FAMILY MEMBERS
ATTEMPTED TO EXTINGUISH THE FIRE WITH HOSES AS FLAMES

24

WERE SEEN COMING FROM UNDER THE VEHICLE. THE FIRE DEPARTMENT WAS CALLED AND EXTINGUISHED THE FIRE. A FIRE AND POLICE DEPARTMENT REPORTS WERE FILED. NO INJURIES SUSTAINED. THE VEHICLE WAS DEEMED A TOTAL LOSS BY THE FIRE DEPARTMENT. THE INSURANCE COMPANY WAS CONTACTED BUT HAS NOT SEEN THE VEHICLE AS OF YET. A LOCAL DEALER WAS NOT NOTIFIED OF THE FAILURE. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND A CASE WAS OPENED. THE CONTACT REFERRED THE FAILURE TO NHTSA CAMPAIGN NUMBER: 20V061000 (SERVICE BRAKES, HYDRAULIC). THE FAILURE MILEAGE WAS APPROXIMATELY 104,000. *LN CONSUMER STATED THERE IS A RECALL ON IT #188. (NHTSA ID Number: 11330039, Date Complaint Filed: 06/22/2020)

2006 Hyundai Sonata: THE CONTACT OWNED A 2006 HYUNDAI SONATA. **WHILE DRIVING HIGHWAY SPEEDS, THE VEHICLE MADE AN ABNORMAL NOISE AND SMOKE EMITTED FROM THE ENGINE COMPARTMENT**. **THE FAILURE OCCURRED WITHOUT WARNING**. THE CONTACT WAS ABLE TO SAFELY MANEUVER FROM THE HIGHWAY TO A PARKING LOT. THE CONTACT EXITED THE VEHICLE AND OBSERVED FLAMES UNDERNEATH THE VEHICLE. THE FIRE DEPARTMENT WAS CONTACTED AND EXTINGUISHED THE FIRE. THE VEHICLE WAS TOWED TO A SALVAGE YARD WHERE IT WAS DEEMED A TOTAL LOSS. THE DEALER AND MANUFACTURER WERE NOT NOTIFIED. THERE WERE NO INJURIES. THE CONTACT STATED THAT THE VEHICLE WAS INCLUDED IN NHTSA CAMPAIGN NUMBER: 18V026000 (SERVICE BRAKES, HYDRAULIC). THE FAILURE MILEAGE WAS APPROXIMATELY 100,000. (NHTSA ID Number: 11114927, Date Complaint Filed: 07/31/2018)

2014 Kia Optima: MAY 9TH 2016, DRIVING TO WORK ON I-44 HEADING TO WORK, MY VEHICLE WITHOUT WARNING SHUTS OFF AND DIES, **I START TO SEE WHITE SMOKE COME FROM THE ENGINE COMPARTMENT**, I SAFELY PULL THE CAR OVER TO SHOULDER BECAUSE IT WAS STILL ROLLING. EXIT THE VEHICLE AND **OPEN THE HOOD, AND THE ENGINE CATCHES FIRE ON THE DRIVER SIDE OF THE ENGINE**. **I HAVE SPOKEN TO MANY CERTIFIED MECHANICS ALL WITH THE SAME ANSWER THAT IT WAS AN ELECTRICAL FIRE**. I HAVE SINCE

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

COMPLETED THE TOTAL LOSS PROCESS WITH MY INSURANCE. **I HAVE CONTACTED KIA CONSUMER AFFAIRS WHO WERE ABSOLUTELY ZERO HELP**. THE VEHICLE WAS STILL UNDER WARRANTY AS IT ONLY HAD JUST OVER 36000 MILES.
(NHTSA ID Number: 10873251, Date Complaint Filed: 05/09/2016)

2015 Kia Optima: THE CONTACT OWNS A 2015 KIA OPTIMA. **WHILE STATIONARY, THE VEHICLE CAUGHT FIRE. THE CONTACT SMELLED SMOKE COMING FROM THE CABIN OF THE VEHICLE**. THE FIRE STARTED UNDER THE STEERING COLUMN OF THE VEHICLE. THE FIRE DEPARTMENT EXTINGUISHED THE FIRE. THERE WERE NO INJURIES AND A FIRE REPORT WAS FILED IMMEDIATELY. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE FAILURE MILEAGE WAS 22,000.
(NHTSA ID Number: 10914473, Date Complaint Filed: 10/05/2016)

2013 Kia Optima: THE CAR CAUGHT FIRE AND BURNED SITTING IN MY DRIVEWAY. DRIVEN DAILY TO AND FROM WORK. NO CHECK ENGINE LIGHT OR ANY WARNING. CAUGHT FIRE WITHIN FIVE MINUTES OF TURNING OFF ENGINE.
(NHTSA ID Number: 10918948, Date Complaint Filed: 10/24/2016)

2013 Kia Optima: CAR SPONTANEOUSLY CAUGHT ON FIRE RESULTING IN TOTAL LOSS. NO INJURY BUT DRIVER HAD TO JUMP OUT OF MOVING VEHICLE.
(NHTSA ID Number: 11139335, Date Complaint Filed: 10/08/2018)

2013 Kia Optima: ON SEPTEMBER 16, 2018 AT APPROXIMATELY 930AM, WHILE ON DUTY AT WORK (CORRECTION OFFICER) **MY KIA OPTIMA GDI 2013 WENT UP IN FLAMES IN THE PARKING LOT OF MY JOB**.. I WAS NOT PRESENT AND THE VEHICLE. I HAD ALREADY BEEN ON DUTY 530AM THAT MORNING. **ONCE I MADE IT TO THE SCENE MY CAR WAS COMPLETELY ALMOST BURNT TO THE GROUND**. **THE FIRE DEPARTMENT LABELED IT AS An ELECTRICAL FIRE**, WHICH CAUSED THE CAR THE BURN FROM THE INSIDE OUT, STARTING FROM THE ENGINE. I HAD SEVERAL PERSONAL ITEMS OF MINE BURNT IN THE FIRE AND ALSO WORK EQUIPMENT THAT WAS LOST IN THE FIRE. SINCE THE INCIDENT I'VE SUFFERED MENTAL,

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

EMOTIONAL AND PHYSICAL DISTRESS. **I'M A SINGLE MOTHER AND I DEPENDED ON MY CAR TO GET ME WHERE I NEEDED TO GO. THINGS HAVE BEEN VERY FRUSTRATING AND HARD.** I'M SEEKING HELP FROM KIA MOTORS.
(NHTSA ID Number: 11142750, Date Complaint Filed: 10/25/2018)

2015 Kia Optima: **AT APPROXIMATELY 4:30 A.M. ON NOVEMBER 12, 2018, THE ENGINE BECAME FULLY ENGULFED IN FLAMES WHILE THE CAR WAS PARKED ON THE STREET IN FRONT OF OUR HOUSE AND TURNED OFF. NO ONE HAD DRIVEN THE CAR FOR SEVERAL HOURS.** THE FIRE DESTROYED THE ENTIRE FRONT END OF THE CAR, MELTED THE TIRES AND FILLED THE INTERIOR OF THE CAR WITH SMOKE. FORTUNATELY, THE FIRE DEPARTMENT ARRIVED AND PUT OUT THE FIRE BEFORE IT SPREAD TO THE GAS TANK.
(NHTSA ID Number: 11151352, Date Complaint Filed: 11/12/2018)

2013 Kia Optima: MY CAR RANDOMLY CAUGHT FIRE AT 10:30 PM WHILE IT WAS ALREADY SITTING IN MY DRIVEWAY SINCE 7 PM. THE ENTIRE FRONT END OF THE CAR IS NOW MELTED ON MY DRIVEWAY PAVEMENT. PUTTING MY FAMILY AND MY HOUSE AT DANGER.
(NHTSA ID Number: 11186541, Date Complaint Filed: 03/11/2019)

2013 Kia Optima: MY CAR CAUGHT FIRE SITTING IN MY DRIVEWAY WHEN I WAS ASLEEP AND BURNED TO THE GROUND.
(NHTSA ID Number: 11194980, Date Complaint Filed: 04/09/2019)

2008 Kia Sedona: ON 05-10-16 MY **2008 KIA SEDONA WAS PARKED IN THE DRIVEWAY. IT WAS NOT ON. IT HAD NOT BEEN DRIVEN FOR MORE THAN 24 HOURS.THE KEY WAS NOT IN THE IGNITION.** WE WERE REMOVING ONE OF THE BACK PASSENGER SEATS ON THE DRIVER'S SIDE. THE SIDE DOOR HAD REMAINED OPEN. IN THE PAST WE HAD PROBLEMS WITH THE DRIVER'S SIDE SLIDING DOOR, IT WOULDN'T OPEN OR WOULDN'T CLOSE. WHILE REMOVING THE SEAT THE OPEN DOOR INDICATOR (BUZZING) CAME ON. DID NOT KNOW WHY IT CAME ON, THE CAR WAS IN PARK AND WAS OFF. **A COUPLE OF MINUTES LATER THE SMELL OF SMOKE WAS COMING FROM**

27

**THE CAR. DID NOT SEE WHERE IT WAS COMING FROM AT FIRST AND THEN SMOKE WAS COMING OUT OF THE ENGINE AREA. THE HOOD WAS OPENED AND THERE WERE FLAMES ON THE DRIVER'S SIDE BEHIND THE STEERING WHEEL**. THE FIRE DEPT. WAS CALLED BUT WE WERE ABLE TO PUT THE FLAMES OUT BEFORE IT BECAME DANGEROUS AND CANCELLED THE CALL. THE BATTERY HAD TO BE DISCONNECTED TO AVOID HAVING THE FLAMES START UP AGAIN. THE VEHICLE WAS TOWED TO A KIA DEALER TO INVESTIGATE THE CAUSE. AFTER A FEW DAYS OF WAITING **THE DEALER CONCLUDED THE ABS MAY HAVE CAUSED THE FIRE**. THE FIRE HAD BURNED THE WIRING HARNESS AND FIRE WALL. THE CAR WAS TOTALED DUE TO NOT BEING ABLE TO CONFIRM THE ACTUAL CAUSE OF THE FIRE. TO DATE WE DO NOT KNOW WHAT ACTUALLY CAUSED THE FIRE BUT WE HAD TO BUY ANOTHER CAR. I WANT TO POINT OUT IF YOU HAVE A PROBLEM WITH THE DOOR SYSTEM BE ALERT. IF YOUR CAR IS IN PARK WITH THE KEY OUT OF THE IGNITION AND YOU HAVE WARNING BUZZARDS GO OFF CHECK THE CURRENT STATUS OF THE VEHICLE, POSSIBLE RELAY OVERLOAD TO DOOR CONNECTION. NOT CONFIRMED BUT WAS THE ONLY POWER OPERATING PART TO THE VEHICLE THAT WAS IN USE WHEN THE FIRE STARTED.
(NHTSA ID Number: 10875413, Date Complaint Filed: 06/20/2016)

2007 Kia Sedona: **WHILE MY KIA SEDONA WAS PARKED IN THE DRIVEWAY. HAD BEEN PARKED ABOUT AN HOUR WHEN SMOKE SUDDENLY STARTED COMING FROM UNDER THE HOOD. SOON, THE ENTIRE FRONT END WAS ON FIRE** AND LOCAL FIRE DEPARTMENT CAME AND PUT THE FIRE OUT. VEHICLE WAS A TOTAL LOSS. **KIA COORPERATE SAYS IT'S NOT THEIR PROBLEM**.
(NHTSA ID Number: 11090369, Date Complaint Filed: 04/26/2018)

2007 Kia Sedona: OUR 2007 LOW MILEAGE KIA HAD BEEN PARKED FOR OVER 24 HRS. **WHILE SITTING IN OUR DRIVEWAY NOT RUNNING, NO KEYS IN IGNITION, CAUGHT FIRE AND BURNED TO THE GROUND**. THE FIRE TRAVELLED TO MY STORAGE BUILDING. WE LOST EVERYTHING IN OUR STORAGE AND OUR VEHICLE. **KIA ASSUMES NO FAULT**.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

ATTACHED IS FIRE DEPARTMENT REPORT AND PICS OF THE DAMAGE.
(NHTSA ID Number: 11098160, Date Complaint Filed: 05/27/2018)

2006 Kia Sedona: THE CONTACT OWNS A 2006 KIA SEDONA. **WHILE DRIVING 10 MPH, THE CONTACT NOTICED SMOKE COMING FROM THE ENGINE WITHOUT WARNING**. THE CONTACT PULLED THE VEHICLE OVER AND WAITED A FEW MINUTES TO ALLOW THE ENGINE TO COOL OFF. THE CONTACT ATTEMPTED TO RESTART THE VEHICLE, BUT IT WOULD NOT START. **THE CONTACT BEGAN TO NOTICE MORE SMOKE COMING FROM THE VEHICLE AND SMELLED A BURNING PLASTIC ODOR**. THE CONTACT REMOVED HERSELF AND HER KIDS FROM THE VEHICLE. THE CHILD'S SCHOOL MAINTENANCE MAN ASSISTED THE CONTACT AND ASKED HER TO OPEN THE VEHICLE'S HOOD. **AS THE HOOD WAS OPENED, FLAMES BEGAN TO EMIT FROM THE VEHICLE**. THE MAINTENANCE PERSON CALLED THE FIRE DEPARTMENT FOR ASSISTANCE. THE FIRE WAS EXTINGUISHED AND A FIRE REPORT WAS FILED. THERE WERE NO INJURIES. THE CONTACT'S INSURANCE COMPANY HAD THE VEHICLE TOWED TO THE CONTACT'S HOME. THE VEHICLE WAS NOT DESTROYED. **A VIN SEARCH CONFIRMED THAT THERE WERE NO ACTIVE RECALLS ON THE VEHICLE**. THE MANUFACTURER AND DEALER WERE NOT NOTIFIED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 175,000.
(NHTSA ID Number: 11256149, Date Complaint Filed: 09/17/2019)

2007 Kia Sedona: **MY CAR WAS PARKED IN MY DRIVEWAY, NOT RUNNING, NO KEY IN THE IGNITION, AND HAD NOT BEEN DRIVEN SINCE THE PREVIOUS DAY**. ONE OF THE KIDS WENT OUTSIDE TO PLAY AND CAME RUNNING BACK IN TO TELL US THE CAR WAS SMOKING. **THERE WAS SMOKING COMING OUT FROM UNDER THE HOOD**. MY BOYFRIEND QUICKLY GOT TO IT AND GOT THE BATTERY OUT AND FOUND THE SOURCE AND UNPLUGGED THE ELECTRICAL STABILITY CONTROL MODULE (I BELIEVE IS WHAT HE CALLED IT) EITHER WAY, THE PLUG AND WIRES WERE FRIED. THE DEALERSHIP STATED THAT HAD WE NOT SEEN THIS IT WOULD HAVE CAUGHT FIRE. **I CALLED THE KIA CORPORATE NUMBER AND THEY TOLD ME**

29

**SORRY BUT ITS AN OUT-OF-POCKET EXPENSE, MY CAR IS NOT UNDER WARRANTY AND THERE ARE NO RECALLS**. THIS IS NOT THE FIRST 07 KIA SEDONA TO HAVE THIS ISSUE BASED ON THE RESEARCH I HAVE DONE. AND **HAD WE BEEN SLEEPING WHEN THIS HAPPENED MY HOUSE COULD HAVE CAUGHT FIRE. HAD THERE BEEN CHILDREN IN THIS AT THE TIME THEY COULD HAVE BEEN INJURED**.
(NHTSA ID Number: 11308166, Date Complaint Filed: 02/10/2020)

2009 Kia Sedona: THE VEHICLE WAS STATIONARY AND A FIRE STARTED SOMEWHERE IN THE ENGINE AND THE WHOLE CAR BURNED.
(NHTSA ID Number: 11311935, Date Complaint Filed: 02/27/2020)

2006 Kia Sedona: THE CONTACT OWNS A 2006 KIA SEDONA. THE CONTACT STATED THAT WHILE HIS WIFE WAS DRIVING THE VEHICLE, THE VEHICLE'S ABS WARNING LIGHT SUDDENLY BEGAN TO ILLUMINATE AND THE WARNING SOUNDER BEGAN TO CHIME. AS HIS WIFE BEGAN TO PULL INTO THEIR GARAGE, THE CONTACT **NOTICED SMOKE COMING FROM THE UNDER THE HOOD OF THE VEHICLE. HIS WIFE TURNED OFF THE VEHICLE AND THE CONTACT BEGAN TO PUT OUT THE FIRE**. HOWEVER, IT WAS A LITTLE DIFFICULT FOR THE CONTACT TO EXTINGUISH THE FIRE, SO THE CONTACT DETACHED THE BATTERY, WHICH, MADE IT EASIER FOR THEM TO EXTINGUISH THE FIRE. THERE WERE NO INJURIES. THE FIRE DEPARTMENT WAS NOT CONTACTED AND FIRE REPORT WAS NOT MADE. THE CONTACT DID NOT CONTACT THE DEALER. THE VEHICLE HAD NOT BEEN OFFICIALLY DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE AND OPENED A CASE REGARDING THE MATTER. **THE MANUFACTURER INFORMED THE CONTACT THAT A FUTURE RECALL NOTICE HAD NOT BEEN RELEASED DUE TO PARTS FOR A REMEDY NOT YET BEING AVAILABLE**. THE APPROXIMATE FAILURE MILEAGE WAS 228,000.
(NHTSA ID Number: 11320439, Date Complaint Filed: 04/07/2020)

2006 Kia Sedona: THE CONTACT OWNS A 2006 KIA SEDONA. THE CONTACT STATED THAT WHEN HER HUSBAND WAS **PARKING THE VEHICLE IN HER DRIVEWAY, SHE NOTICED THAT**

30

**SMOKE BEGAN EMITTING FROM UNDERNEATH THE VEHICLE; MOMENTS LATER, THE VEHICLE CAUGHT FIRE**. THE CONTACT WAS UNAWARE IF THERE WERE ANY ILLUMINATED WARNING LIGHTS PRIOR TO THE FAILURE. THE CONTACT WAS ABLE TO GRAB A WATER HOSE AND EXTINGUISH THE FIRE INDEPENDENTLY. THE CONTACT'S HUSBAND, WITH THE HELP OF SOME NEIGHBORS, WAS ABLE TO MANUALLY PUSH THE VEHICLE OUT OF THE DRIVEWAY AND PARK IT ON THE SIDE OF THE STREET. THE CONTACT STATED **PRIOR TO THE FIRE, SHE HAD RECEIVED A RECALL NOTIFICATION FOR NHTSA CAMPAIGN NUMBER: 20V088000 (ELECTRICAL SYSTEM, SERVICE BRAKES, HYDRAULIC) HOWEVER, THE PARTS TO DO THE REPAIR WERE UNAVAILABLE**. THE CONTACT STATED THAT THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE MANUFACTURER NOR THE DEALER WERE NOTIFIED OF THE FAILURE OR THE RECALL. THE FAILURE MILEAGE WAS UNKNOWN. **VIN TOOL CONFIRMS PARTS NOT AVAILABLE**. (NHTSA ID Number: 11321732, Date Complaint Filed: 04/20/2020)

2007 Kia Sedona: THE KIA VAN WAS PARKED, TURNED OFF, KEYS WERE REMOVED, OUTSIDE IN OUR BUSINESS PARKING LOT. A PERSON DRIVING BY NOTICED IT WAS ON FIRE AND CALLED THE FIRE DEPARTMENT. THIS HAPPENED AROUND 12 AM. (MIDNIGHT) THE LOCAL FIRE DEPARTMENT RESPONDED TO THE CALL AND REPORTED TO THE SCENE. (NHTSA ID Number: 11361085, Date Complaint Filed: 09/25/2020)

2008 Kia Sedona: [XXX] owned a 2008 Kia Sedona minivan, VIN #[XXX]. This was his only vehicle at the time. On or about April 26, 2021, [XXX] heard a loud noise coming from the driveway and went outside to investigate. **The van was engulfed in flames, mainly in the engine compartment**. He attempted to put the fire out himself. His neighbor called the Pinellas Park fire department who responded and put out the fire. **The vehicle was a total loss. The van had been parked for approximately five hours after he used it earlier that day to pick up children from school The spontaneous vehicle fire was a serious safety risk, and he is fortunate to have not lost his home in the fire along with the vehicle**. The day before the fire, the ABS indicator light on the dash came on. He

31

made an appointment to have the van serviced on April 27, but the fire destroyed the vehicle before it could be looked at. Shortly after this happened, [XXX] learned of Manufacturer Recall Number SC186; NHTSA Recall Number 20V088. **He was never notified by Kia North America, before or after the fire which destroyed the vehicle. [XXX] has opened case number [XXX] with and was assured that Kia would be providing reimbursement for the Kia Sedona vehicle he had to replace. Kia North America requested pictures of the fire damaged vehicle, which he sent to them. He offered to allow Kia to inspect the wreckage of the vehicle, but no action was ever taken despite assurances that Kia would send a representative to inspect the vehicle. In September 2021, Kia North America stopped responding to Mr. Brackett, and no longer returns his or my communication.** If the NHTSA requires any more information, please contact my office. /s [XXX] Florida Bar #[XXX] [XXX] INFORMATION Redacted PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
(NHTSA ID Number: 11438659, Date Complaint Filed: 10/29/2021)

2008 Kia Sorento: I DROVE MY 08 KIA SORENTO HOME AT ABOUT 730 AM. I WORK NIGHT SHIFT AND WENT TO SLEEP AND WAS **WOKEN UP AT 945 BY EMS TO MY CAR UP IN FLAMES. IT WAS SHOWING NO SIGNS OF ANY PROBLEMS, NOT RUNNING HOT, NOTHING. IT WAS PARKED FOR ABOUT AN HOUR WHEN IT WENT UP IN FLAMES**. THE FIRE CHIEF WAS ON THE TRUCK THAT DAY AS HE HAD ORIENTEE'S, AND SAID THE FIRE STARTED BEHIND THE STEERING WHEEL/DASH AND THAT **IT WAS AN ELECTRICAL ENGINE FIRE** WHICH IS STATED ON MY FIRE REPORT. **I CONTACTED KIA, THEY TOLD ME IT WAS NO WAY IT WAS THEIR PROBLEM AND HAD TO BE A USER ERROR**. I HAVE PHOTOS BUT MY COMPUTER WOULD NOT LET ME UPLOAD THEM FOR A REASON.
(NHTSA ID Number: 11089996, Date Complaint Filed: 04/25/2018)

2008 Kia Sorento: SUNDAY SEPT 9TH AT AROUND 9 - 9:30 AM **I SMELLED SMOKE AND WALKED AROUND THE HOUSE AND SMELLED THAT IT WAS COMING FROM THE GARAGE**. WHEN I OPENED THE DOOR, **I SAW FLAMES UNDERNEATH THE CAR AND SMOKE AND FIRE ON TOP OF THE HOOD**. I CALLED THE PALM BAY FIRE DEPARTMENT WHEN THEY GOT THERE, THEY PUT THE HOSE ON THE CAR UNTIL THE FIRE WAS OUT THEY

HAD TO CUT THE HOOD IN ORDER TO FINISH PUTTING OUT THE FIRE. THEY **FIRE MARSHALL CAME AND INSPECTED THE VEHICLE IT COULD HAVE BEEN AN ELECTRICAL PROBLEM**. WHEN I CALLED KIA CUSTOMER SERVICE THEY GAVE ME A CLAIM NUMBER AND THEY TOLD ME WHAT WOULD YOU LIKE KIA DO FOR YOU. THE CUSTOMER SERVICE AGENT SAID THEY WILL GIVE THE CLAIM TO THE RIGHT DEPARTMENT AND THEY WILL GET BACK TO ME IN 3 TO 5 BUSINESS DAYS. **THIS HAPPENED WHILE THE CAR WAS PARKED IN THE GARAGE AND IT HADN'T BEEN TURNED ON SINCE FRIDAY**. THIS VEHICLE WAS A 2008 SORENTO WITH LESS THAN 90,000 MILES IT WAS IN GREAT CONDITION ALSO.
(NHTSA ID Number: 11128582, Date Complaint Filed: 09/10/2018)

2008 Kia Sorento: I pulled into my driveway and the car shut off and I heard a pop, never had an issue before this. **Upon getting out I noticed smoke and asked my neighbor to help me open the hood. Upon opening the hood, we noticed a fire in the passenger side of the engine** and called 911**. The entire car was engulfed in flames within minutes of me getting out of the vehicle, luckily, I made it out but what if I had not?** I am mentally traumatized along with my family especially my young child. The car is sitting in my driveway still and it is a daily reminder of what happened. **There is a recall SC186 on Kia Sorento year 2007-2009 that I was never informed about**. Something needs to be done or I will be making sure this is a case that is handled in the court system.
(NHTSA ID Number: 11420671, Date Complaint Filed: 06/12/2021)

2018 Kia Stinger: VEHICLE WAS IN PARK WITH THE ENGINE NOT RUNNING. CAME OUT OF BIG DEAL CONVENIENT STORE LOCATED ON RTE 9 CHESTERFIELD, NH TO FIND SMOKE COMING OUT OF THE ENGINE COMPARTMENT. CALLED 911 AND USED A STORE FIRE EXTINGUISHER TO TRY TO PUT OUT THE FLAMES. WAITED FOR THE FIRE DEPT TO ARRIVE, THEY PUT THE ENGINE COMPARTMENT FIRE OUT.
(NHTSA ID Number: 11163818, Date Complaint Filed: 12/28/2018)

2018 Kia Stinger: I PARKED MY 2018 KIA STINGER AT HOME AFTER DRIVING 40 MIN, MOSTLY HIGHWAY. NOTHING WAS WRONG WITH THE CAR DURING THIS TIME. AFTER ROUGHLY 5 MINUTES IN MY HOUSE, I BEGAN TO SMELL A BURNING ODOR. I

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

LOOKED AROUND THE HOUSE FOR ANYTHING BURNING. I SEARCHED THE 1ST/2ND FLOOR, BUT NOTHING. I OPENED MY BACK DOOR AND THE SMELL WAS STRONGER, BUT NOTHING WAS UNUSUAL. THE FURNACE WAS OKAY. THEN I HEARD FIRE TRUCKS AND POLICE OUT FRONT. I WENT OUT AND SAW MY CAR IN FLAMES.
(NHTSA ID Number: 11176669, Date Complaint Filed: 02/13/2019)

2018 Kia Stinger: WENT TO CAR WASH TO DEGREASE ENGINE IN THE EVENING. CAR WAS PARKED IN CAR WASH BAY NOT RUNNING. SPRAYED GUNK ENGINE DEGREASER ON MOTOR AND **CAR CAUGHT ON FIRE IN A FEW SECONDS UNEXPECTEDLY**. **CAR WAS NOT RUNNING**. QUICKLY PUT FIRE OUT WITH WATER AND FUEL LEAKS AFTER CAREFUL INSPECTION AND ELECTRICAL WIRES FOUND BARE AND BURNT. NOT SURE IF THERE WAS A SHORT OR A FUEL LEAK PRESENT BEFORE USING GUNK DEGREASER BUT DID NOT EXPECT FIRE FOR DOING THIS. PREMIUM MODEL STINGER WITH 2.L T GDI ENGINE. LOVE THE CAR BUT DID NOT EXPECT THIS. :( REPAIR EXPENSIVE TO NOT REPLACE MOTOR. AROUND $13,000 AT DEALERSHIP.
(NHTSA ID Number: 11331154, Date Complaint Filed: 06/26/2020)

## C. Defendants' Knowledge of the ABS Module Defect

41. On information and belief, Hyundai and Kia each knew or should have known about the ABS Module Defect in the Class Vehicles through a number of sources: (1) Defendants' own pre-sale durability testing on its vehicles and all of its components, including ABS control modules; (2) consumer complaints filed with the NHTSA, including consumer complaints reported directly to Defendants; (3) warranty claims, dealership repair records, and part sales with Defendants; and (4) safety recalls and technical service bulletins issued by Defendants regarding the ABS Module Defect and attempts to fix the defect.

42. As experienced designers and manufacturers of consumer vehicles, Defendants conduct tests, including pre-sale durability testing on incoming vehicles and components, such as ABS modules, to verify that parts are free from defects and align

34

with Hyundai and Kia's specifications.

43.     Hyundai and Kia have a joint-testing facility located in California City, California, known as the "Hyundai-Kia Motors California Proving Ground."[15] ("Proving Ground"). The Proving Ground, a 4,300 acre, $60-million facility, was designed as a "test site for next-generation Hyundai and Kia vehicles."[16] The Proving Ground's facilities represent Hyundai's and Kia's "commitment to designing, testing and building Hyundai [and Kia] products in the United States for North American consumers."[17] According to HMC's Vice Chairman Kim Dong-Jin, "[t]he Hyundai-Kia Motors California Proving Ground will ensure that Hyundai and Kia continue to develop the highest quality vehicles."[18]

44.     According to Hyundai and Kia Senior Research Engineer, Jong-Woo Kim, all vehicles tested at the joint-testing facility "must pass a 30,000 miles (48,280 km) accelerated durability test and a 100,000 miles (160,000 km) field fleet durability test to be sold in North America."[19] The testing facility is described as "a car's worst nightmare," as the testing is intended to simulate up to "five years' wear and tear [] in just six months."[20] The car parts are "dose[d]" "with UV and total radiation to see if the sample is going to deteriorate, blister, fade or fail."[21] Defendants also conduct testing in extreme

---

[15] *Hyundai Celebrates Grand Opening of New $60 Mln U.S. Proving Ground*, Hyundai Motor Am. (Jan. 26, 2005), https://www.hyundainews.com/en-us/releases/393 (last accessed March 20, 2022).

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Enduring the Scorching Desert Heat in Extreme Heat Tests of Hyundai and Kia* (Sept. 24, 2020), https://tech.hyundaimotorgroup.com/article/enduring-the-scorching-desert-heat-in-extreme-heat-tests-of-hyundai-and-kia/ (last accessed March 20, 2022).

[20] *Behind the scenes at Kia's desert testing facility* (June 2, 2018), https://www.autocar.co.uk/car-news/new-cars/behind-scenes-kias-desert-testing-facility (last accessed March 20, 2022).

[21] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

1  cold weather conditions.[22]

2       45.    Kia claims to use "the most extreme and rigorous vehicle testing program

3  ever devised by the company."[23] Kia conducts extensive pre-sale durability testing on its

4  vehicles using seven different types of durability tests to make sure its vehicles "endure

5  over a long time without fault."[24] The seven durability tests are as follows: (1) item

6  durability test; (2) module durability test; (3) Belgian road test; (4) high speed test; (5)

7  corrosion test; (6) P/T test; and (7) vehicle test.[25]

8       46.    As part of these tests, Kia's simulates "the stop-and-go drive, [that is] typical

9  conditions in a congested urban centre," which is "repeated several times," "to put

10  additional strain on the engine, transmission and HVAC systems and eliminate any

11  possible flaws."[26] Kia also utilizes "high-speed oval, gravel off-road tracks, high-vibration

12  road surfaces, brake test facilities and different gradients" that "enable engineers to

13  evaluate and refine the ride, handling, brakes and NVH of prototype and production

14  vehicles."[27] These simulations and methods are conducted at Kia's Mojave Proving

15  Grounds test facility in California.[28]

16       47.    On information and belief, Hyundai similarly conducts extensive safety and

17  pre-sale durability testing on its vehicles like Kia's testing.[29] In fact, HMA touts itself as

18

19

20  [22] *Id.*

21  [23] https://www.thenewsmarket.com/news/death-valley-hot-weather-test-for-all-new-kia-sportage/s/bfe8a9b5-9786-4e73-a648-2970972d74f1 (last accessed March 20, 2022).

22  [24] https://www.kia-uae.com/experience/innovation-story/performance.php (last accessed

23  March 20, 2022).

24  [25] *Id.*
    [26] https://www.thenewsmarket.com/news/death-valley-hot-weather-test-for-all-new-kia-

25  sportage/s/bfe8a9b5-9786-4e73-a648-2970972d74f1 (last accessed March 20, 2022).

26  [27] *Id.*
    [28] *Id.*

27  [29] Hail, rain or shine – Hyundai Motor's extreme weather testing (Feb. 5, 2017),

28  https://www.hyundai.news/eu/articles/press-releases/hail-rain-or-shine-hyundai-motors-extreme-weather-testing.html (last accessed March 20, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

the "Industry leader in quality and dependability."[30] HMA states that they "hand check nuts, bolts, cables, wiring and power components before any Hyundai leaves the plant. Then every vehicle is road tested to eliminate squeaks and rattles that can't be detected on the factory floor."[31] And have "[a]n army of 250 robots, equipped with optical sensors far more sensitive than the human eye, inspects every vehicle for quality welds and proper fit. ***This ensures tight seams and seals***, as well as perfect alignment."[32] (emphasis added).

48. The ABS Module Defect is the type of defect that Defendants' pre-sale durability testing would reveal because the ABS Module Defect is a manufacturing defect present in the vehicles before they "leave [Defendants'] plant" and are ever driven. Since Defendants' pre-sale durability testing involves extreme hot and cold weather conditions, the ABS module's proneness to moisture or other leaks would be evident after testing is complete.

49. Defendants also are required by law to regularly monitor the NHTSA databases and analyze NHTSA complaints, to identify potential safety defects in their vehicles and to determine whether recalls should be issued. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Defendants have knowledge of all NHTSA complaints.

50. On information and belief, Defendants' customer service departments, warranty departments, among other personnel, regularly monitor customer complaints posted to NHTSA's public database, including their respective websites, and the internet; regularly monitor and respond to customer calls concerning vehicle issues, including component defects; and collect and analyze field data, including but not limited to, repair requests made at Hyundai and Kia dealerships and service centers, technical reports

---

[30] https://www.hyundaiusa.com/content/dam/hyundai/us/com/pdf/why-hyundai/The%20HYUNDAI%20Way_2019.pdf (last accessed March 20, 2022).
[31] https://www.auto-brochures.com/makes/Hyundai/Entourage/Hyundai_US%20Entourage_2008.pdf (last accessed March 20, 2022).
[32] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

prepared by its engineers and authorized technicians that have investigated vehicles for which warranty coverage is requested and/or identified defect trends, warranty claims data, and part sales reports.

51.    For warranty repairs, Hyundai and Kia require their dealerships and service centers to provide them with detailed reports of problems and fixes that describe the complaint, cause, and correction. Hyundai and Kia also require their dealerships and service centers to save the broken or defective part for purposes of conducting an audit on the dealership and service centers should the need arises, or otherwise confirm the warranty repair. Defendants will not pay the dealerships and service centers for repairs if the complaint, cause, and correction are not described in detail. Accordingly, dealerships and service centers keep detailed and accurate records and information about warranty repairs.

52.    On information and belief, the customers service departments, warranty departments, and other departments, such as engineering and safety, of HMA, HMC, KA, and KC interact with each other and discuss potential issues or defects in Hyundai and Kia vehicles because they share designs and components.

53.    HMA "work[s] to deliver exceptional customer service and complete owner satisfaction," "are committed to always improving vehicle quality, technology, and service," and if customers have an "unsatisfactory service, have concerns about [] warranty," HMA "want[s] to be the first to help."[33] In fact, HMA encourages its customers to contact "Customer Care Department" "to address any concern" because "no issue is too big or too small." HMA's "goal is to give [its customers] one-on-one, personalized service and provide [its customers] with the best possible solution in the shortest amount of time. That's [HMA's] commitment to [its customers]."[34]

54.    Hyundai has publicly stated that it "ha[s] a robust system in place for

_____

[33] https://www.hyundaiusa.com/us/en/lemon-law-concerns (last accessed March 22, 2022).
[34] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

monitoring and investigating reported vehicle fires that includes investigation and reporting to NHTSA as required."[35]

55.     According to Kia, "Customers [are] at the Center of Everything [They] Do," Kia "value[s] [its customers'] opinion, understand[s] [their] needs, and provide the highest value and experience based on trust-based communication."[36] KA is "committed to providing the best experience for [its customers] on or off the road."[37]

56.     In April 2011, an owner of a 2010 Hyundai Elantra filed a complaint with the NHTSA stating that his "6-month-old Hyundai Elantra Touring caught fire after sitting in [the] driveway for nine hours."[38] A forensic engineer, hired by the owner's insurance company, investigated the origin of the fire and "***concluded that the fire was electrical and originated in the engine compartment***." (emphasis added).[39] The owner stated, "as far as I know, Hyundai has not issued a recall or TSB on the car."[40] The owner was correct, at that time, Defendants had yet to issue any recalls or publicly acknowledge any defect in the Class Vehicles that could result in an engine compartment catching fire.

57.     Consequently, Defendants should have known about the ABS Module Defect, or at least known that ABS modules had issues with sealing and moisture resulting in dangerous conditions within the component. In 2012, Hyundai and General Motors were informed by their hydraulic electronic control unit ("HECU") supplier that a defect in the HECUs may lead to corrosion and impair brake effectiveness.[41] This affected the Hyundai Genesis model years 2009-2012.[42] While General Motors recalled its vehicles

---

[35] https://www.autoblog.com/2018/10/12/hyundai-kia-fires-center-for-auto-safety/ (last accessed March 22, 2022).
[36] https://worldwide.kia.com/int/company/sustainability/customer-services (last accessed March 22, 2022).
[37] https://owners.kia.com/us/en/kia-owner-portal.html/ (last accessed March 22, 2022).
[38] NHTSA ID No.: 10398944.
[39] *Id.*
[40] *Id.*
[41] *See* https://www.nhtsa.gov/sites/nhtsa.gov/files/2021-11/TQ14-002-Hyundai-Consent-Order-8-7-2014-tag.pdf (last accessed March 21, 2022).
[42] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

containing the HECU component in January 2012 and again in September 2012, Hyundai waited until October 2013 to issue its recall.[43]

58.    On October 29, 2013, HMA recalled 2009-2012 Hyundai Genesis vehicles because of a defect where brake fluid entered and corroded the module.[44] Hyundai acknowledged that corrosion of the "Hydraulic Electronic Control Unit (HECU) module" could affect "brake effectiveness, which may increase the risk of a vehicle crash."[45]

59.    In 2014, NHTSA fined Hyundai $17.3 million for failing to timely report a defect in the HECUs.[46] NHTSA found that Hyundai knew since 2012 about the defect in the HECUs, and knowingly withheld information about the potential safety defect from vehicle owners and delayed issuing a recall.[47] As part of the consent decree with NHTSA, HMA and Hyundai-Kia America Technical Center, Inc. ("HATCI"), "commit[ed] and agree[d] to … [make] corporate organizational and process improvements" including the "establish[ment] in the United States a Technical Committee to review and decide upon potential safety recalls and service campaigns," and the head of the U.S. Technical Committee was ordered to "have direct access to the board of directors and the Chief Executive Officer ('CEO') of HMA."[48] On information and belief, this Technical Committee knew or should have known about the ABS Module Defect.

60.    Because of moisture entering into ABS modules resulting in injuries to drivers, two other vehicle manufacturers issued recalls. In 2015, Chrysler issued a recall

---

[43] *Id.*

[44] NHTSA Campaign No.: 13V489000.

[45] https://static.nhtsa.gov/odi/rcl/2013/RCDNN-13V489-9416.pdf (last accessed March 21, 2022).

[46] https://www.nhtsa.gov/sites/nhtsa.gov/files/2021-11/TQ14-002-Hyundai-Consent-Order-8-7-2014-tag.pdf (last accessed March 21, 2022); https://one.nhtsa.gov/About-NHTSA/Press-Releases/Hyundai–agrees–to–pay–$17.35–million–fine (last accessed March 21, 2022); https://static.nhtsa.gov/odi/rcl/2013/RCDNN-13V489-9416.pdf (last accessed March 21, 2022.

[47] *Id.*

[48] https://www.nhtsa.gov/sites/nhtsa.gov/files/2021-11/TQ14-002-Hyundai-Consent-Order-8-7-2014-tag.pdf (last accessed March 21, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

of 2012-2015 Dodge Journeys concerning a defect within the ABS module that allows moisture to enter the component that "could disable the ABS and/or Electronic Stability Control (ESC) system(s)."[49] In 2016, Nissan issued a recall of 2016-2017 Nissan Maximas regarding a defect in its ABS that can leak fluid into the component that "can create an electrical short, and may lead to a fire."[50] Nissan owners were "advised to park the vehicle outdoors away from other vehicles or structures and to not drive the vehicle."[51]

61.      Through these channels, methods, and sources, including recalls by other manufacturers involving ABS modules, Hyundai and Kia were made aware of the ABS Module Defect, and its potential danger. Defendants therefore knew, or should have known, of the ABS Module Defect in the Class Vehicles at least as early as 2011, based on publicly available information.

62.      Furthermore, on information and belief, Defendants knew or should have known about the ABS Module Defect and the risk of engine compartment fires because of the sheer number of replacement parts ordered from Defendants by its dealerships and service centers, as they are required to order replacement parts, including ABS modules, directly from HMA, HMC, KA, or KC. Independent vehicle repair shops and auto mechanics that service the Class Vehicles also order replacement parts directly from Defendants. Since HMA, HMC, KA, or KC regularly monitor part sales reports and are responsible for shipping parts ordered by dealerships, service centers, and independent shops, Defendants have real-time, accurate, and detailed data. Accordingly, Defendants have knowledge of the number and frequency of replacement part orders, including ABS modules. With an increase in orders for ABS modules to fix the damage caused by engine compartment fires in the Class Vehicles, Defendants should have been aware of the scope and severity of the ABS Module Defect.

---

[49] https://www.chrysler.com/universal/webselfservice/pdf/R61.pdf (last accessed March 21, 2022); NHTSA Campaign No.: 15V6750000.
[50] https://static.nhtsa.gov/odi/rcl/2016/RIONL-16V636-7450.pdf (last accessed March 21, 2022); NHTSA Campaign No.: 16V636000.
[51] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

**D.     Defendants' Inadequate and Incomplete Recalls in 2016, 2018, 2020, 2021, and 2022**

63.     Vehicle manufacturers are required to submit a report to the NHTSA within "5 working days" of identifying any safety related defects in its vehicles. 49 C.F.R. § 573.6. The initial report must identify all vehicles "potentially containing the defect," "including a description of the manufacturer's basis for its determination of the recall population and a description of how the vehicles or items of equipment to be recalled differ from similar vehicles or items of equipment that the manufacturer has not included in the recall." *Id.* "In addition, the manufacturer shall identify and describe the risk to motor vehicle safety reasonably related to the defect[.]" *Id.*

64.     The purpose of these regulations are two-fold: (1) "To facilitate the notification of owners of defective and noncomplying motor vehicles …, and the remedy of such defects and noncompliances, by equitably apportioning the responsibility for safety-related defects and noncompliances with Federal motor vehicle safety standards among manufacturers of motor vehicles [;] and (2) To inform NHTSA of defective and noncomplying motor vehicles …, and to obtain information for NHTSA on the adequacy of manufacturers' defect and noncompliance notification campaigns, on corrective action, on owner response, and to compare the defect incidence rate among different groups of vehicles." *Id.* § 573.2.

65.     Defendants, however, have knowingly waited years to recall the Class Vehicles, as evidenced by their piece-meal recalls since 2016.

**1.     Incomplete and Inadequate Recall in 2016**

66.     The first acknowledgment of the existence of the ABS Module Defect was on November 4, 2016 when KMA notified NHTSA that it was recalling 71,704 vehicles (2008-2009 Kia Sportage) by submitting its Part 573 Safety Recall Report.[52] KMA described the ABS Module Defect as "[i]mproper sealing of the HECU's wire harness

---

[52] NHTSA Campaign No.: 16V-815; https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V815-4945.PDF (Part 573 Safety Recall Report) (last accessed March 23, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

cover permits salt water to eventually reach the electrical circuit board through corroded connector pins."[53] KMA described the safety risk as occurring "[i]f the HECU circuit board experiences a short circuit, a thermal event can result, including the possibility of an engine compartment fire."[54] (the "2016 Recall").

67.     KMA also submitted a "Chronology" of the events leading up to its 2016 Recall.[55] In its Chronology, KMA reported the following: on April 19, 2016, KMA received a report from its Consumer Affairs department of an engine fire in a 2008 Kia Sportage that was parked in a driveway at the time of the fire. On April 22, 2016, the vehicle was transported to KMA's headquarters in Irvine, California. On April 26, 2016, just four days later, KMA's inspected the vehicle and identified the "ABS control module area" as the origin of fire. KMA then requested assistance from KMC.

68.     According to KMA's Chronology, between April 26, 2016 and May 4, 2016, KMC communicated with its ABS module supplier and coordinated meetings and inspections in the United States. On May 12, 2016, KMA evaluated field data and identified other complaints of "thermal events." The following week, KMC and its supplier traveled to the northeast United States and met with its dealers and evaluated possible thermal events. They determined that road salt entering the ABS module and causing corrosion as a "possible contributing factor to thermal events," and on May 23, 2016, KMC and its supplier again identified the "origin of the fire [] to be the HECU."

69.     In June 2016, KMC conducted tests to determine the cause for the fire and found that "[s]alt water is found to increase conductivity in HECU circuits and lead to possible circuit overload."

70.     On September 27, 2016, KMC decided to recall the 2008-2009 Kia Sportage vehicles "to prevent thermal events in areas exposed to heavy salt use." KMA also identified "9 consumer assistance complaints regarding thermal events."

---

[53] *Id.*

[54] *Id.*

[55] https://static.nhtsa.gov/odi/rcl/2016/RMISC-16V815-3941.pdf (last accessed March 23, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

71.     On or around November 28, 2016, KMA sent recall notification letters to owners of 2008-2009 Kia Sportage vehicles.[56] And directed Kia Sportage owners to "[p]ark [their] vehicle outdoors and away from other vehicles or structures."[57]

72.     Although Kia acknowledged the potentially dangerous defect in 71,704 2008-2009 Kia Sportage vehicles, it did not offer to remedy the ABS Module Defect in all of its recalled vehicles. KMA only offered to replace the defective HECU if a Kia dealer determined that "corrosion is present"; otherwise, KMA instructed its dealers to only offer Kia owners a replacement of connector covers for their HECUs.[58]

73.     KMA and KMC, however, failed to disclose that the risk of an engine compartment catching fire was due to the HECU remaining powered at all times, and did not offer to fix this aspect of the ABS Module Defect.

## 2.     Incomplete and Inadequate Recall in 2018

74.     Two years later, on January 9, 2018, HMA notified NHTSA that it was recalling 87,854 vehicles (model year 2006-2011 Hyundai Azera and model year 2006 Hyundai Sonata) by submitting its Part 573 Safety Recall Report.[59] In its Description of the Defect, HMA stated, "[t]he subject vehicles are equipped with an Anti-Lock Brake System ("ABS") module that remains powered on when the vehicle is turned off. If moisture has entered the ABS module[,] such as from water …, over time an electrical short could occur inside the ABS module."[60] HMA further stated, "[m]oisture intrusion into the electronic components of the ABS module can cause a short circuit. Because the ABS module has continuous power, a short circuit may occur while a vehicle is parked

---

[56] https://static.nhtsa.gov/odi/rcl/2016/RCONL-16V815-3403.pdf (Important Safety Recall notice letters to 2008-2009 Kia Sportage owners) (last accessed March 23, 2022).
[57] *Id.*
[58] *Id.*; https://static.nhtsa.gov/odi/rcl/2016/RCLRPT-16V815-4945.PDF (last accessed March 23, 2022).
[59] NHTSA Campaign No.: 18V-026; https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V026-8031.PDF (last accessed March 22, 2022).
[60] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

and the ignition switch is turned off."[61] HMA described the safety risk as occurring "[i]f a short circuit occurs inside the ABS module, there could be an increased risk of an engine compartment fire."[62] (the "2018 Recall").

75.    According to the "Chronology" filed in HMA's Part 573 Safety Recall Report, HMC, in December 2016, "received a report in the Korean market alleging an overheated condition inside the engine compartment around the ABS module," and "HMC initiated a request to recover warranty return parts for analysis."[63] HMC, by May 2017, stated that it found "[n]o design or manufacturing flaw" in the ABS module.[64]

76.    HMA, in June 2017, "received a report from the United States market alleging illumination of the MIL and smoke inside the engine compartment around the ABS module" and "[t]he parts were sent to HMC for analysis with the supplier."[65]

77.    In November 2017, "HMC and the supplier found evidence of an electrical short inside the ABS module potentially caused by moisture leaking into the ABS module and accelerated by the continuous powered state of the module."[66]

78.    HMA and HMC did not immediately issue a recall. It was not until January 3, 2018, two months after learning of the ABS Module Defect, did HMA decide that a recall was necessary.[67] And in late February 2018, HMA sent out owner notification letters warning affected vehicles owners of 2006-2011 Hyundai Azera and 2006 Hyundai Sonata that "[m]oisture can enter [their] vehicle's ABS electrical system. Over time the moisture can cause a short circuit inside the ABS module, **increasing the risk of an engine**

---

[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

**compartment fire**." (emphasis in original).[68]

79.    In contrast to the ABS Module Defect remedy outlined in the 2016 Recall, this time HMA offered to remedy the ABS Module Defect by "install[ing] a relay in the vehicle's main junction box," which is designed to "power down [the ABS module] when the ignition switch is turned OFF."[69]

80.    Unlike the 2016 Kia Recall, HMA acknowledged that the ABS Module Defect and the resulting risk of fire are related to the ABS module remaining powered at all times. However, HMA failed to disclose that moisture entering the ABS module posed a risk of engine compartment fire while the vehicle is in operation.

81.    On March 22, 2018, a month after HMA announced its recall and offered its "relay remedy," a 2011 Hyundai Azera owner filed a complaint with NHTSA explaining that "[t]he recall addresses rewiring the ABS so no power is present in the water leaking ABS module when the vehicle is not operating and parked ***but does not address*** failure of the ABS without fire from water leakage when the vehicle is driven." (emphasis added).[70] The 2011 Hyundai Azera owner proposed the following remedy, "Hyundai should replace all Azera ABS systems that are prone to water leakage to preclude the ABS systems not working properly in and during braking emergencies."[71]

82.    Although Hyundai reported to NHTSA that it "is not aware of any accidents or injuries related to the [ABS Module Defect],"[72] Hyundai ignored that Class Vehicle owners had lost use of their cars, experienced diminished value in their cars, and some

---

[68] *See* https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V026-8031.PDF ("Owner notifications will begin in late February 2018.") (last accessed March 23, 2022). *See e.g.*, owner notification recall letter submitted to NHTSA before mailing to its customers at https://static.nhtsa.gov/odi/rcl/2018/RCONL-18V026-6316.pdf (last accessed March 23, 2022).

[69] https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V026-8031.PDF (last accessed March 23, 2022).

[70] NHTSA ID No. 11080896.

[71] *Id.*

[72] https://static.nhtsa.gov/odi/rcl/2018/RCLRPT-18V026-8031.PDF (last accessed March 23, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

have experienced damage to their home and/or other personal property, due to fires caused by the ABS Module Defect while their cars were parked. Hyundai also ignored the reports of injuries suffered by owners and bystanders of the Class Vehicles that have not yet been recalled.

83. Defendants have also failed to disclose that the ABS Module Defect extended to other Hyundai and Kia vehicle models and years.

84. Beginning in 2018, Hyundai and Kia came under public and political scrutiny for their failure to timely address a "growing number of complaints filed with the [] NHTSA involving non-collision related fires in Kia and Hyundai vehicles."[73] The Center for Auto Safety reported that from June 2018 to October 2018, there were at least 103 fire complaints filed with NHTSA.[74]

85. After the Center for Auto Safety petitioned NHTSA's Office of Defects Investigation ("ODI") to initiate a safety defect investigation into non-collision related fires in Hyundai and Kia vehicles, the ODI, in 2019, opened an investigation into HMA's and KA's practices.[75]

86. In response, Defendants slowly issued recalls related to engine compartment fires involving many different models and years, including some of the Class Vehicles.

### 3. Incomplete and Inadequate Recalls of 2020

87. In February 2020, HMA recalled approximately 476,111 vehicles due to the ABS Module Defect involving the following Hyundai vehicles: 2007-2010 Hyundai Elantra, 2009-2011 Elantra Touring, 2007-2008 Hyundai Entourage, and 2007 Hyundai

---

[73] https://www.commerce.senate.gov/2018/10/nelson-kia-hyundai-ceos-asked-to-appear-before-congress (last accessed March 23, 2022); *See also* Jackie Callway, *KIA, Hyundai CEOs refuse to attend Senate hearing to explain cause of car fires*, ABC Action News (Nov. 8, 2018), https://www.abcactionnews.com/news/national/kia-hyundai-ceos-refuse-to-attend-senate-hearing-to-explain-cause-of-car-fires-1 (last accessed March 23, 2022).
[74] *See* https://www.commerce.senate.gov/2018/10/nelson-kia-hyundai-ceos-asked-to-appear-before-congress (last accessed March 23, 2022).
[75] NHTSA IDs: PE19003, PE19004.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

Santa Fe – all produced by HMC.[76] And directed its customers to "[p]ark [their] vehicle outside and away from structure and other vehicles."[77] (the "HMA February 2020 Recall").

88.    On February 14, 2020, KA recalled approximately 228,829 vehicles due to the ABS Module Defect involving the following Kia vehicles: 2006-2010 Kia Sedona and 2007-2009 Kia Sorento vehicles.[78] And also directed its customers to "[p]ark [their] vehicle outdoors and away from any other vehicles or structures."[79] (the "KA February 2020 Recall") (the HMA February 2020 Recall and the KA February 2020 Recall are collectively referred to as the "February 2020 Recall").

89.    As in the 2018 Recall, HMA, in its amended Part 573 Safety Recall Report, stated that the recalled "vehicles are equipped with an Anti-Lock Brake System ('ABS') module that remains energized when the vehicle is turned off. If moisture enters the electrical circuit of the ABS module a short circuit could gradually develop."[80] HMA described the safety risk as "[i]f a short circuit occurs inside the ABS module, there could be an increased risk of a 'key-off' engine compartment fire."[81] HMA stated that ***"[a] specific causality allowing moisture to enter the ABS module electrical circuit has not yet been identified***; however, because the ABS module is continually powered, an electrical short could develop even while the vehicle is turned off." (emphasis added).[82] HMA proposed the same inadequate relay installation remedy as in the 2018 Recall. HMA offered to remedy the ABS Module Defect by "install[ing] a relay in the vehicle's main

---

[76] NHTSA Recall No.: 20V-061; https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V061-0541.pdf (last accessed March 23, 2022).

[77] https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V061-0541.pdf (last accessed March 23, 2022).

[78] NHTSA Recall No.: 20V-088.

[79] https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V088-1951.pdf (last accessed March 23, 2022).

[80] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V061-1748.PDF (last accessed March 23, 2022).

[81] *Id.*

[82] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

junction box," which is designed to "power down [the ABS module] when the vehicle's ignition switch is turned OFF."[83]

90.     Similarly, KA's February 2020 Recall of its 2006-2010 Kia Sedona and 2007-2009 Kia Sorento vehicles also involved the ABS Module Defect. KA recalled these vehicles because "[m]oisture entering the Hydraulic Electronic Control Unit (HECU) may result in an electrical short circuit."[84] KA described the defect as "[w]hen the vehicle is in the key OFF position and parked, the Hydraulic Electronic Control Unit (HECU) remains energized. If moisture enters the HECU, an electrical short circuit could occur even though the vehicle is turned off and parked."[85] KA described the safety risk as "[a]n electrical short circuit inside the HECU increases the risk of an engine compartment key OFF fire."[86] KA stated that ***"[t]he cause of moisture entering the has not yet been ascertained.*** However, since the HECU is continually powered, an electrical short may occur while the vehicle is turned off and parked." (emphasis added).[87] HMA offered to remedy the ABS Module Defect by "install[ing] a relay in the vehicle's main junction box," which is designed to "prevent power from being directed to the HECU when the vehicle's ignition switch is turned OFF."[88]

91.     Accordingly, the February 2020 Recall has the same inadequacies as the 2018 Recall because it does not address the risks associated with moisture entering into the ABS module; and does not address the risk of engine compartment fires while the vehicle is turned on.

92.     In February 2020, shortly after Hyundai announced its recall, Consumer Reports questioned Michael Stewart, Hyundai America's Senior Group Manager, about

---

[83] *Id.*

[84] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V088-8521.PDF (last accessed March 23, 2022).

[85] *Id.*

[86] *Id.*

[87] *Id.*

[88] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

the risk a short circuit could take place when the vehicle is turned on.[89] Mr. Stewart placed the burden on its drivers. Consumer Reports wrote that Mr. Stewart "told [Consumer Reports] that drivers will be able to detect the symptoms of a short circuit if they are present in the vehicle."[90] Mr. Stewart wrote in an email to Consumer Reports stating, "[w]hen the vehicle is on, short circuits are preceded by other noticeable symptoms," including "noise or an ABS warning illuminated on the dashboard."[91]

93.    On August 27, 2020, Defendants recalled more than half a million additional vehicles suffering from the ABS Module Defect that could result in engine compartment fires. HMA recalled approximately 151,205 2013-2015 Hyundai Santa Fe Sport vehicles,[92] and KA recalled approximately 9,443 2019 Kia Stinger vehicles equipped with 3.3L T-GDI engines,[93] approximately 283,803 2013-2015 Kia Optima vehicles and approximately 156,567 2014-2015 Kia Sorento vehicles.[94] On September 4, 2020, HMA recalled approximately 180,000 2019-2020 Hyundai Tucson vehicles.[95] ("Summer 2020 Recall").

94.    For the 2013-2015 Hyundai Santa Fe Sport vehicles recall, HMA described the ABS Module Defect in its Part 573 Safety Recall Report, stating that "[t]he subject vehicles are equipped with Anti-lock Brake System ('ABS') modules that could leak brake fluid internally and cause an electrical short over time."[96] For the 2013-2015 Kia Optima and 2014-2015 Kia Sorento vehicles recall, KMA described the ABS Module Defect in its Part 573 Safety Recall Report the same as HMA: "brake fluid may leak internally inside

---

[89] https://www.consumerreports.org/car-recalls-defects/hyundai-elantras-recalled-for-fire-risk/ (last accessed March 24, 2022).
[90] *Id.*
[91] *Id.*
[92] NHTSA Campaign No.: 20V520000.
[93] NHTSA Campaign No.: 20V518000.
[94] NHTSA Campaign No.: 20V519000.
[95] NHTSA Campaign No.: 20V543000.
[96] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V520-3551.PDF (last accessed March 24, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

the Hydraulic Control Unit (HECU) which overtime, can result in an electrical short."[97]

95.    The "remedy" offered by HMA and KA is inadequate and incomplete in that it will only replace the defective components upon an "inspection" by its dealers. If their dealers determines that there is no brake fluid leak into the ABS module or HECU, HMA and KMA, respectively, will not replace the defective component.[98] This subjects owners to an unreasonable and increased risk of accident, injury, death, or property damage should their vehicle's engine compartment catch fire at any given moment.

96.    As in all prior Recalls, HMA described of the safety risk as, "[a]n electrical short in the ABS module could increase the risk of an engine compartment fire."[99] Unlike prior Recalls, HMA described in more detail on what it believed to be the "cause" of the ABS Module Defect, stating that "[d]ue to possible quality control deviation with the supplier's manufacturing process, the piston seals in the ABS module's hydraulic valve unit could leak brake fluid into the electronic control unit ('ECU')."[100]

97.    According to HMA's Chronology, in April 2018, HMA learned of "an engine compartment fire on a model year 2014 Hyundai Santa Fe Sport vehicle in the U.S. market."[101] In May 2018, "HMA searched internal records including warranty claims and identified four (4) additional incidents involving engine compartment fires on model year 2013-2014 Santa Fe Sport vehicles."[102] By June of 2018, HMA "summarized its findings to date and issued a Quality Information Report ('QIR') to HMC." HMA then shipped

---

[97] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V519-6446.PDF (last accessed March 24, 2022).

[98] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V519-6446.PDF (HMA's Part 573 Safety Recall Report) (last accessed March 24, 2022); https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V519-6446.PDF (KA's Part 573 Safety Recall Report) (last accessed March 24, 2022).

[99] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V520-3551.PDF (last accessed March 24, 2022).

[100] *Id.*

[101] https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V520-4703.pdf (last accessed March 24, 2022).

[102] *Id.*

51

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

four ABS modules recovered from incident vehicles to Kia Motor Manufacturing Georgia "for further inspection." According to HMA's Chronology, sometime between January 2020 and July 2020, a third-party testing laboratory identified "a leak path of brake fluid from the ABS hydraulic unit to the [printed circuit board ('PCB')] contained within the ECU through its connector, causing brake fluid to accumulate and corrode the PCB resulting in an electrical short. Further replication testing confirmed propagation of an electrical fire caused by this short."[103] As of August 2020, "Hyundai [was] aware of fifteen (15) engine compartment fires related to this defect."[104] It is unclear whether "Hyundai" refers to HMA or HMC as it is not indicated in the Chronology.

98.    On December 30, 2020, HMA expanded its recall of Hyundai Tucson vehicles and added model years 2016-2018, which included approximately 500,000 additional Class Vehicles.[105] That same day, KA also expanded its recall of Kia Stinger vehicles to include model years 2018 and 2020-2021.[106] KMC and KA disclosed that the recalled Hyundai Tucson vehicles are "equipped with the same HECU as the Kia Stinger."[107] (the "December 2020 Recall").

99.    According to KA's Chronology, KA learned of a complaint related to the ABS Module Defect in 2013-2015 Kia Optima and 2014-2015 Kia Sorento vehicles on February 5, 2020 when KA "receive[d] [an] electrical failure complaint for 2015 Kia Sorento... [and the] Dealer identifie[d] Hydraulic Electric Control Unit (HECU) melted."[108] On May 27, 2020, KA "identifie[d] localized heat damage to HECU connector

---

[103] *Id.*
[104] *Id.*
[105] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V543-3047.PDF (last accessed March 24, 2022).
[106] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V518-4450.PDF (last accessed March 24, 2022).
[107] *See* https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V518-5626.pdf (last accessed March 24, 2022).
[108] https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V519-1447.pdf (last accessed March 24, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

and circuit board near connector[,]" and sent the collected parts to KMC for "further evaluation."[109] In June of 2020, KMC determined that the HECU was "internally damaged and melted possibly due to leaking brake fluid."[110]

100.  For the 2019 Kia Stinger vehicles recall, KA described the ABS Module Defect in its Part 573 Safety Recall Report, stating, "[a]n engine compartment fire may occur while driving in the area where the Hydraulic Electronic Control Unit (HECU) is located. ***The cause of fire is currently unknown***." (emphasis added).[111] KA described the safety risk as, "[f]ire increased the risk of injury."[112] Knowing this deadly risk of a fire, KA offered no "remedy" for the ABS Module Defect in its 2019 Kia Stinger vehicles, and instead, instructed its customers to "[p]ark [their] vehicle outdoors and away from other vehicles or structures."[113]

101.  According to KA's Chronology, KA learned of an engine compartment fire in August 2019 when it received a complaint identifying the that identified the right rear engine compartment as the origin of the fire.[114] On September 27, 2019, KA received another report of an engine compartment fire and transported both Kia Stinger vehicles to its offices "for further evaluation."[115] In December 2019, "KMA, NHTSA and Kia Motors Corporation (KMC) conduct 2nd inspection of 2019 Stinger" and the "area of engine room and relay box, HECU and battery cable pass-through in the fender" were identified as the origin of the fire.[116] In May-June 2020, KA identified four additional engine compartment

---

[109] *Id.*

[110] *Id.*

[111] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V518-1403.PDF (last accessed March 24, 2022).

[112] *Id.*

[113] *Id.*; https://static.nhtsa.gov/odi/rcl/2020/RIONL-20V518-3921.pdf (last accessed March 24, 2022).

[114] https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V518-5626.pdf (last accessed March 24, 2022).

[115] *Id.*

[116] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

fire incidents.[117] On July 29, 2020, KA "inform[ed] KMC of inspection results" that it had identified damage to the HECUs PCBs, and KMC then "evaluat[ed] [the] incidents and confirm[ed] that all the fires occurred in" similar Kia Stinger models.[118] On August 25, 2020, KMC decided to recall all 2019 Kia Stinger vehicles equipped with 3.3L T-GDI engines.[119]

102.   For the 2019-2021 Hyundai Tucson vehicles, which were "produced by [HMC]," HMA recalled these vehicles because they "may contain a defective circuit board in the ABS brake hydraulic electronic control unit (HECU)."[120] Similar to prior recalls, HMA stated that the ABS modules found in these recalled vehicles, "could corrode internally and cause an electrical short over time, resulting in an engine compartment fire[,]" "while parked or driving."[121] For the "[d]escription of the [c]ause," HMA stated that "[f]lux residue from the soldering process at the supplier could accumulate on the ABS module's main controller board (PCB). With exposure to heat and humidity, the residue could result in a corrosive path and an electrical resistance short." Hyundai America stated that the Defect posed a "Safety Risk" of "[a]n electrical short in the ABS module could increase the risk of an engine compartment fire."

103.   According to HMA's Chronology, in July 2019, HMA "received a report involving a 2019 Hyundai Tucson that allegedly caught fire while driving" and that "[t]he customer alleged a technician believed that the fire may have come from the ABS module." "Hyundai was able to inspect the vehicle and recover the ABS module for further investigation by HMC and the supplier."[122]

---

[117] *Id.*

[118] *Id.*

[119] *Id.*

[120] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V543-3344.PDF (last accessed March 24, 2022).

[121] *Id.*; https://static.nhtsa.gov/odi/rcl/2020/RCMN-20V543-9976.pdf (last accessed March 24, 2022).

[122] https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V543-4082.pdf (last accessed March 24, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

104.   Between January 2020 and July 2020, HMA hired a third-party laboratory to evaluate and identify "an ABS module failure mechanism and relative root cause" in its 2019-2021 Tucson vehicles.[123] The third-party laboratory found "evidence of electrical resistance shorts caused by corrosion on the ABS module's ECU's printed circuit board ('PCB')" and conducted a spectrum analysis of the corrosion residue.[124] "The test laboratory deduced that the residue could have been created by a corrosive reaction between byproducts of the reflow solder, containing tin, and various copper and silicon-based elements on the PCB, resulting in an electrical short."[125]

105.   In HMA's Part 573 Safety Recall Report filed in September 2020 with NHTSA, the "Remedy Program" HMA offered for its 2019-2021 Hyundai Tucson vehicles, like prior recalls, is inadequate and incomplete. HMA recommended that its customers "park[] these vehicles outside and away from structures until the recall remedy is completed[,]" and failed to state whether HMA will replace all defective ABS modules found in 2019-2021 Hyundai Tucson vehicles.[126]

106.   In HMA's December 30, 2020 expanded recall that included additional Hyundai Tucson model years 2016-2018 (nearly 500,000 more vehicles) for the ABS Module Defect, the problem was the same as earlier, namely, ABS modules could short-circuit internally and cause and engine compartment fire while parked or driving, and still no root cause was determined.[127] However, with this expanded recall, HMA refers to the defective component an "ABS module" instead of an "HECU": "The subject vehicles are equipped with Anti-Lock Brake System ('ABS') modules that could malfunction internally and cause an electrical short over time potentially resulting in an engine

---

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V543-8816.PDF (last accessed March 24, 2022).

[127] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V543-3047.PDF (last accessed March 24, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

compartment fire."[128]

107. In HMA's amended "Chronology," between September 2020 and November 2022, "Hyundai continued its investigation into potential root causes by analyzing warranty part returns. Although unsuccessful in determining an exact root cause, HMC concluded that the risk of an electrical short resulting in a fire could be mitigated by limiting the operating current in the ABS module through a lower amperage fuse."[129]

108. In December 2020, HMC confirmed additional "claims received for Tucson vehicles" caused by the ABS Module Defect and "Hyundai [was] aware of twelve (12) engine compartment fires related to this defect in the U.S. Hyundai is aware of 9 fires in model year 2019 vehicles, 2 fires in 2020 model years and a single fire in a 2021 model. There are no related fires involving model year 2016-2018 vehicles in the U.S; however, ABS module fires have been confirmed in regional markets outside the U.S. for the affected 2016-2018 Tucson population."[130]

109. With this expanded recall, like prior recalls, HMA continued to recommend that its customers "park[] [their] vehicles outside and away from structures until the recall remedy is completed."[131] However, with this recall, HMA's purported remedy was to inspect and replace the fuse in the ABS module with a lower amperage fuse to "limit the operating current of the ABS module" and update the Electronic Stability Control software."[132]

110. Like HMA, on December 30, 2020, KA also expanded its recall of Kia Stinger vehicles to include model years 2018, 2020-2021 (nearly 19,000 more vehicles)

---

[128] *Id.*

[129] https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V543-4082.pdf (last accessed March 24, 2022).

[130] *Id.*

[131] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V543-3047.PDF (last accessed March 24, 2022).

[132] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

for the ABS Module Defect.[133] In its amended Part 573 Safety Recall Report, KA described the defect as "[a]n engine compartment fire may occur while driving in the area where the Hydraulic Control Unit (HECU) is located[,]" and "[t]he exact cause of fire remains unknown. However, it is believed that an electrical short circuit within the HECU experiences a short circuit condition that results in excessive current, thereby increasing the risk of an engine compartment fire."[134]

111.    In its amended Chronology, KA explained that it expanded the recall because KMC advise it "that Hyundai is expanding its recall to include the 2016-2021MY Tucson globally which is equipped with the same HECU as the Kia Stinger."[135] Like HMA, KA also directed its customers to "[p]ark [their] vehicles outdoors and away from other vehicles or structures until [] the recall repair [is] performed."[136]

112.    On March 4, 2021, KA issued a new recall of approximately 379,931 vehicles that involved 2017-2021 Kia Sportage and Kia 2017-2019 Cadenza vehicles for the ABS Module Defect.[137] KMA described the defect as, "[a]n engine compartment fire may occur in the area where the Hydraulic Electronic Control Unit (HECU) is located. The electrical circuit within the HECU may experience a short circuit condition that results in excessive current, thereby increasing the risk of an engine compartment fire[,]" and described the safety risk as, "[f]ire increases the risk of injury."[138] KA described the "cause" as "[e]lectrical short circuit within the HECU. However, exact cause of electrical short circuit condition is unknown."[139] Like prior recalls, KA directed its customers to "[p]ark [their]

---

[133] https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V518-4450.PDF (last accessed March 24, 2022).
[134] *Id.*
[135] https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V518-5626.pdf (last accessed March 24, 2022).
[136] https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V518-5862.pdf (last accessed March 24, 2022).
[137] https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V137-9464.PDF (last accessed March 24, 2022).
[138] *Id.*
[139] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

vehicles outdoors and away from any other vehicles or structures until [] the recall repair [is] performed."[140] (the "KA March 2021 Recall").

113.    A week later, on March 10, 2021, HMA recalled 2015-2016 Hyundai Genesis and 2017-2020 Hyundai Genesis G80 vehicles, which involved approximately 94,646 vehicles, for the ABS Module Defect. As with prior HMA recalls, HMA described the defect as, "[t]he subject vehicles are equipped with Anti-Lock Brake System ("ABS") modules that could malfunction internally and cause an electrical short over time potentially resulting in an engine compartment fire[,]" and described the safety risk as, "[a]n electrical short could result in significant overcurrent in the ABS module increasing the risk of an engine compartment fire while parked or driving."[141] As a result, "Hyundai recommends parking these vehicles outside and away from structures[.]"[142] In its Part 573 Safety Recall Report, HMA could not determine the "root cause," however, in its Chronology, HMC states that the ABS module in a 2016 Hyundai Genesis vehicles it investigated prior to issuing the recall had "moisture contamination."[143] (the "HMA March 2021 Recall") (the KA March 2021 Recall and the HMA March 2021 Recall are collectively referred to as the "March 2021 Recall").

114.    On April 28, 2021, HMA issued a second recall for 2013-2015 Hyundai Santa Fe Sport vehicles, replacing the Summer 2020 Recall.[144] And on May 10, 2021, KA issued a new recall for 2013-2015 Kia Optima and 2014-2015 Kia Sorento vehicles, which were

---

[140] https://static.nhtsa.gov/odi/rcl/2021/RCONL-21V137-1231.pdf; https://static.nhtsa.gov/odi/rcl/2021/RCONL-21V137-6823.pdf (last accessed March 24, 2022).
[141] NHTSA Campaign No.: 21V160000; https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V160-1906.PDF (last accessed March 24, 2020).
[142] https://static.nhtsa.gov/odi/rcl/2021/RIONL-21V160-6573.pdf (last accessed March 24, 2020).
[143] https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V160-1906.PDF (last accessed March 24, 2020); https://static.nhtsa.gov/odi/rcl/2021/RMISC-21V160-9268.pdf (last accessed March 24, 2020.)
[144] NHTSA Campaign No.: 21V303000.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

part of the Summer 2020 Recall.[145] (the "May 2021 Recall").

115.   In its April 28, 2021 filings with NHTSA, HMA stated that the ABS Module Defect was "[d]ue to possible quality control deviation with the supplier's manufacturing process," which causes "the piston seals in the ABS module's hydraulic valve unit [to] leak brake fluid into the electronic control unit ('ECU')."[146]

116.   HMA claimed in its filed Chronology that this second recall was necessary because "HMC developed a new ABS module multi-fuse with a lower amperage rating and conducted replication testing to confirm its effectiveness in safeguarding the module from issues stemming from overcurrent."[147] Therefore, the "remedy" offered was "for inspection of the ABS module and, if necessary, replacement of a new one. In addition to the ABS module inspection, the ABS multi-fuse will be replaced with a revised on to mitigate the risk of a fire caused by an internal electrical short."[148] HMA continued to advise owners to "park their vehicles outside and away from structures[.]"[149]

117.   Similar to HMA's "remedy" for Hyundai Santa Fe Sport vehicles, KA stated that it would "have the HECU inspected for leaking brake fluid in the HECU. If brake fluid is leaking, the HECU will be replaced with a new one. In addition, a new multi-fuse will be installed, which contains a 30-ampere fuse instead of a 40-ampere fuse for the HECU circuit, to prevent an over-current condition in HECU's electrical circuit board and mitigate the risk of a fire caused by an internal electrical short circuit."[150] In its filed Chronology, KA disclosed that there is "[o]ne (1) dealer report of isolated melting in an

---

[145] NHTSA Campaign No. 21V331000.

[146] https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V303-5849.PDF (last accessed March 24, 2022).

[147] https://static.nhtsa.gov/odi/rcl/2021/RMISC-21V303-7845.pdf (last accessed March 24, 2022).

[148] https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V303-5849.PDF (last accessed March 24, 2022).

[149] https://static.nhtsa.gov/odi/rcl/2021/RCONL-21V303-6181.pdf (last accessed March 24, 2022).

[150] https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V331-5686.PDF (last accessed March 22, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

Optima vehicle following completion of the 20V-519 recall remedy."[151]

118.   On February 8, 2022, NHTSA issued a "Consumer Alert" that KA and HMA "recommend that owners of select model year 2014-2016 Kia Sportage, 2016-2018 Kia K900 and 2016-2018 Hyundai Santa Fe vehicles park their vehicle outdoors and away from other vehicles or structures due to a risk of fire, even if the vehicle is turned off."[152]

119.   "Kia and Hyundai have identified an increasing risk of an engine compartment fire. Although the cause remains unknown, the manufacturers believe an electrical component in the anti-lock brake system may experience an internal electrical short circuit that could increase the risk of fire both while the vehicle is driven or parked."[153]

120.   In KA's Part 573 Safety Recall Report, KA describes the defect, cause, and safety risk as, "[a]n engine compartment fire may occur in the area where the Hydraulic Electronic Control Unit (HECU) is located. The exact cause of fire remains unknown. However, it is believed that the HECU may experience an internal electrical short circuit that could result in overcurrent, thereby increasing the risk of an engine compartment fire while the vehicle is driven or while parked[,]" and "[f]ire increases risk of injury."[154] KA's proposed "remedy" is to "install a new fuse with a different capacity to prevent an overcurrent condition in the HECU's electrical circuit board."[155]

121.   In HMA's Part 573 Safety Recall Report, HMA describes the defect, cause, and safety risk as, "[t]he subject vehicles are equipped with Anti-Lock Brake System ('ABS') modules that could malfunction internally and cause an electrical short over time[;] root cause has not yet been determined; and "[a]n electrical short could result in

---

[151] https://static.nhtsa.gov/odi/rcl/2021/RMISC-21V331-3916.pdf (last accessed March 22, 2022).

[152] https://www.nhtsa.gov/press-releases/consumer-alert-kia-and-hyundai-issue-park-outside-orders (last accessed March 22, 2022.).

[153] *Id.*

[154] NHTSA Campaign No. 22V051000; https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V051-7589.PDF (last accessed March 24, 2022).

[155] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

overcurrent in the ABS module increasing the risk of an engine compartment fire while parked or driving."[156] HMA's proposed "remedy" is "[t]he ABS multi-fuse will be replaced with a revised one to mitigate the risk of a fire caused by an internal electrical short."[157]

122. On information and belief, no remedy is currently available for this most recent recall. Indeed, on March 11, 2022, a Hyundai dealership told Plaintiff Jacob there is "no remedy" and that she should park her vehicle outside and away from structures.

123. Accordingly, Defendants' recall "remedies" for the ABS Module Defect are inadequate and incomplete, and therefore, each of the Class Vehicles remains a present danger to all drivers, owners, and bystanders. Defendants' recall "remedies" fail to fix the spontaneous engine compartment fire risk in the Class Vehicles and fail to identify the exact root cause of the ABS Module Defect.

124. Defendants' first "remedy" (proposed in the 2016 Recall) to replace the connector cover of the defective component, and Defendants' second "remedy" (proposed in the 2018 and February 2020 Recalls) to install a relay in the fuse box to "power down" from the ABS module when the car is turned off, are not a comprehensive and complete fix to render the Class Vehicles safe while driving or parked. The defective ABS modules still remain installed in the Class Vehicles. These two proposed remedies also do not fix the issue because the ABS module is susceptible to moisture and electrical short, especially while the Class Vehicles are in operation and there is an electrical current. According to a January 19, 2021 complaint filed with NHTSA, an owner of a 2010 Kia Sedona stated that even after the February 2020 Recall "remedy" was completed on the vehicle, "the vehicle still caught fire."[158]

125. Defendants' third "remedy" (proposed in the Summer and December 2020 Recall and 2021 Recalls) is to inspect and replace the fuse in the ABS module with a lower

---

[156] NHTSA Campaign No. 22V056000; https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V056-9011.PDF (last accessed March 24, 2022).
[157] *Id.*
[158] NHTSA ID No. 11388907 (dated January 19, 2021).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

amperage fuse, and if they determine that there is a present brake fluid leak into the ABS module, replace the control unit. This "remedy" is also inadequate because the defective ABS modules still remain installed in the Class Vehicles, which are known to leak brake fluid and cause fires. Therefore, this third "remedy" does not fix the fire risk.

126.   Furthermore, this third "remedy" has already proven to be inadequate. KA disclosed that there is "[o]ne (1) dealer report of isolated melting in an Optima vehicle following completion of the 20V-519 recall remedy."[159]

127.   Moreover, Defendants' directions to have their customers park their vehicles outside and away from structures until a fix is available, places an unfair and unreasonable burden on Plaintiffs and Class members who may live in areas where it is not feasible to park outside and away from structures, especially in very cold and very hot weather conditions.

128.   On November 27, 2020, NHTSA announced consent orders with HMA and KA that included combined penalties of $210 million regarding separate engine defect issues.[160] The consent order and fines "reflect [NHTSA's] assessment that both Hyundai and Kia conducted untimely recalls of over 1.6 million vehicles... and inaccurately reported certain information to NHTSA regarding the recalls."[161] On information and belief, Defendants' misconduct with those recall efforts should be indicative of its misconduct in the Recalls addressed in this case.

129.   Defendants' belated recalls for the same ABS Module Defect, the latest recall of additional vehicles for the first time, and continued reports of non-collision engine fires across many Hyundai and Kia models and years, Plaintiffs have reason to believe the ABS Module Defect extends beyond the Class Vehicles alleged in this Complaint or in other related cases. Plaintiffs reserve the right to amend the Class Vehicles as discovery

---

[159] https://static.nhtsa.gov/odi/rcl/2021/RMISC-21V331-3916.pdf (last accessed March 22, 2022).
[160] https://www.nhtsa.gov/press-releases/nhtsa-announces-consent-orders-hyundai-and-kia-over-theta-ii-recall (last accessed March 24, 2022).
[161] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

warrants.

130.   To date, Defendants have recalled over a million Class Vehicles due to the ABS Module Defect.

**E.     Defendants Marketed the Class Vehicles as Safe, Reliable, and Durable, Despite Knowledge of the ABS Module Defect**

131.   Defendants have long promoted the safety, reliability, and durability of their vehicles because they know safety is important to consumers. For example, HMC promotes itself as being "committed to becoming a lifetime partner in automobiles and beyond[.][162] HMC states that "[f]rom the moment you step into a Hyundai Motor's vehicle, safety surrounds you from all corners at every second, even in places you never imagined."[163]

132.   Hyundai also promotes and emphasizes safety in Hyundai's sales brochures. For example, for the 2008 Hyundai Entourage, HMA states, "IF YOU CREATED YOUR OWN CAR COMPANY, you wouldn't make safety an option. Neither did we." (emphasis in original).[164] HMA also states it "filled [the vehicle] with cutting-edge active safety features that work dynamically with input from you and the road to help prevent an accident. Which is why the Entourage is an ideal choice to help protect you, your passengers and your peace of mind. Just like you'd expect from your own car company."[165] HMA knows the importance of the ABS and promotes it as a key "Active Safety" feature.[166] In the 2017 Hyundai Tucson brochure, HMA states that the vehicle contains "[a]n arsenal of advanced safety features like optional Automatic Emergency Braking"

---

[162] https://www.hyundai.com/worldwide/en/company/newsroom/hyundai-motor-reports-december-2019-global-sales-0000016366 (last accessed March 24, 2022).
[163] https://www.hyundai.com/worldwide/en/suv/tucson-2021/safety (last accessed March 24, 2022).
[164] https://www.auto-brochures.com/makes/Hyundai/Entourage/Hyundai_US%20Entourage_2008.pdf (last accessed March 24, 2022).
[165] *Id.*
[166] *Id.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

that are "class-leading."[167]

133.   KA advertises that it "believe[s] in the outstanding quality and durability of every new Kia that rolls off the assembly line" and that "[f]rom design to technology, materials to safety features, Kia continues to innovate[.]"[168]

134.   Kia also promotes and emphasizes Safety in its sales brochures. For example, for the 2009 Kia Sedona, KA advertised that the vehicle as "class-leading [in] safety" and offers "exceptional standard safety," such as "[a] four-channel, four-sensor, antilock brake system (ABS)."[169] In the 2014 Kia Sorrento brochure, KA states that the vehicle "is also equipped with advanced active and passive safety features designed to ensure your peace of mind[.]"[170]

135.   On information and belief, Defendants' sales brochures and other marketing materials for other Class Vehicles promotes the same claims about safety, reliability, and durability.

136.   On information and belief, Hyundai and Kia oversaw, developed, and created all the marketing and advertising materials for the respective Class Vehicles. Accordingly, Defendants could and should have disclosed the ABS Module Defect to Plaintiffs and Class members in such materials.

**F.      Defendants Breached their Warranty Obligations**

137.   Hyundai and Kia each provide a 5-year/60,000-mile new vehicle limited warranty. Under this warranty, Hyundai and Kia agreed to repair defects within five years or 60,000 miles, whichever occurs first.

---

[167] http://viewer.zmags.com/publication/006d43a3?cs:o=%272017_Certifed_Tucson_Brochure%27#/006d43a3/1 (last accessed March 24, 2022).
[168] https://www.kia.com/us/en/why-kia (last accessed March 24, 2022).
[169] https://www.kiamedia.com/us/en/media/pressreleases/3587/2009-kia-sedona (last accessed March 24, 2022).
[170] https://cdn.dealerreprocess.org/cdn/brochures/kia/2014-sorento.pdf (last accessed March 24, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

138.   Hyundai claims: "America's Best Warranty" "[m]ore than giving you added peace of mind, this warranty supports our commitment to provide vehicles of high quality, dependability and reliability."[171] Kia claims: "Warranty Coverage for your Kia. We believe in the outstanding quality and durability of every new Kia that rolls off the assembly line."[172]

139.   On information and belief, Hyundai and Kia provided these warranties, or substantially similar warranties, for all the Class Vehicles at all relevant times.

140.   Hyundai and Kia are obligated to repair the defective ABS module at issue in this lawsuit under its warranty because the ABS module suffers from a defect in material, workmanship, or design—whether due to improper manufacturing process, or an improper assembly process. In addition, design defects are not specifically excluded from warranty coverage and the warranties are a contract of adhesion, under which any ambiguities of coverage should be construed against Hyundai and Kia.

141.   As a result of Hyundai and Kia's failure to disclose the ABS Module Defect to Plaintiffs and Class members and refusal to repair or cover damages caused by the ABS Module Defect, Hyundai and Kia have avoided and breached their warranty obligations.

142.   Further, as a result of Defendants' systematic denials of warranty coverage for the ABS Module Defect, consumers are required to incur substantial repair and/or replacement costs.

143.   Since recalling some of the Class Vehicles, many consumers, including Plaintiff Jacob, complained that recall or remedy parts were unavailable through Hyundai and Kia dealerships, delaying help for aggrieved vehicle owners and lessees.

**G.   Defendants' Concealment of the ABS Module Defect and Its Refusal to Warn**

144.   Despite their knowledge of the fact that the ABS Module Defect in the Class

---

[171] https://www.hyundaiusa.com/us/en/assurance/america-best-warranty (last accessed March 22, 2022).
[172] https://owners.kia.com/content/owners/en/service-page/warranty.html (last accessed March 22, 2022).

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

Vehicles endanger drivers, passengers, properties, and others on the road or when the Class Vehicles are parked, Defendants continue to conceal the problem from drivers and potential customers alike. Defendants have not warned consumers at the point of sale or lease (nor have they instructed their dealerships to do so). As a result, most drivers are unaware that they are driving unsafe vehicles and consumers are deprived of the right to make informed purchasing decisions taking into account the available information about the propensity of the engine compartment catching fire due to the ABS Module Defect, the danger posed, and the cost of repair.

145.  As Defendants know, the problem is not reasonably discoverable by consumers unless they experience the ABS Module Defect firsthand, and thus, are exposed to the attendant safety risks.

146.  While the Class Vehicles have been the subject of voluntary safety recalls—which by law requires notification to owners of lessees of the danger—Defendants continue to profit from the sale and lease of the Class Vehicles to unwitting consumers and continue to decline to provide assistance with repair costs even for Class Vehicles that remain within warranty.

147.  Given the severity and the safety risks posed by the ABS Module Defect, Defendants either should not have sold or leased the Class Vehicles to Plaintiffs and Class members or they should have prominently disclosed—both in a written disclosure to be acknowledged in writing by Plaintiffs and Class members and through an oral disclosure to be given by Defendants' authorized dealerships—that the vehicles' engine compartment are prone to spontaneously catch fire due to the ABS Module Defect.

## H.  Fraudulent Omission/Concealment Allegations

148.  At this time, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Defendants responsible for making false and misleading statements regarding the Class Vehicles. Defendants are in possession of all of this information.

149.  Plaintiffs' claims arise out of Defendants' fraudulent omission/concealment

of the ABS Module Defect, despite Defendants' representations about the safety, reliability, and durability of the Class Vehicles.

150. Plaintiffs, at all relevant times, including at the time Plaintiffs and Class members purchased their Class Vehicles, allege that Defendants knew, or were reckless in not knowing, of the ABS Module Defect; Defendants had a duty to disclose the ABS Module Defect based upon their exclusive knowledge; and Defendants never disclosed the ABS Module Defect to Plaintiffs and Class members at any time or place in any manner prior to any of the Recalls, as alleged herein.

151. Plaintiffs make the following specific concealment/omission-based allegations with as much specificity as possible through reasonable investigation and absent discovery to the information available exclusively only to Defendants:

152. *Who*: each Defendant (HMA, HMC, KA, and KC) actively concealed and omitted the ABS Module Defect from Plaintiffs and Class members while at the same time promoting the safety, reliability, and durability of the Class Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for such decision-making.

153. *What*: that the Class Vehicles contain the ABS Module Defect, the attendant safety risks, and the actual fire incidents, as alleged herein. Defendants concealed and omitted the ABS Module Defect while making representations about the safety, reliability, and durability, and other attributes of the Class Vehicles, as alleged herein.

154. *When*: Defendants concealed and omitted material information regarding the ABS Module Defect at all times while making representations about the safety, reliability, and durability of the Class Vehicles on an ongoing basis, from at least 2012, and continuing to the present. Defendants still have not disclosed the truth about the full scope of the ABS Module Defect in the Class Vehicles. And when consumers brought their vehicles to HMA and KA dealerships or called Defendants' respective customer service and warranty departments complaining of the ABS Module Defect or inquiring about the ABS Module Defect, Defendants' authorized dealerships have denied any knowledge of

an adequate repair for the ABS Module Defect. In fact, on March 11, 2022, when Plaintiff Jacob asked her Hyundai dealership about the ABS Module Defect, the Hyundai dealership told Plaintiff Jacob there is "no remedy."

155. **_Where_**: Defendants concealed and omitted material information regarding the true nature of the ABS Module Defect in every form of communication they had with Plaintiffs and Class members and made representations about the safety, reliability, and durability of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the full scope of the ABS Module Defect in the Class Vehicles prior to the Recalls. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites. There are many sources through which Defendants could have disclosed the ABS Module Defect, including, but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communications to Class members through means such as state vehicle registry lists and e-mail notifications.

156. **_How_**: Defendants concealed and omitted the ABS Module Defect from Plaintiffs and Class members and made representations about the safety, reliability, and durability of the Class Vehicles. Each Defendant actively concealed and omitted the truth about the existence, scope, and nature of the ABS Module Defect from Plaintiffs and Class members at all times, even though each Defendant knew about the ABS Module Defect and knew that information about the ABS Module Defect would be important to a reasonable consumer, and Defendants promised in their marketing materials that Class Vehicles have qualities that they do not have.

157. **_Why_**: Defendants actively concealed and omitted material information about the ABS Module Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class members to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles, and made representations about the safety, reliability, and durability of the Class Vehicles. Had Defendants disclosed the truth, for example, in their

advertisements or other materials or communications, Plaintiffs and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## V.    PLAINTIFFS' EXPERIENCES

### A.    Adam Pluskowski

158.    Plaintiff Pluskowski bought a new 2015 Kia Sportage in February 2015, from Gerald Kia of North Aurora, an authorized Kia dealership located in North Aurora, Illinois. Based on reliability and safety ratings he had researched, heard, viewed, and/or read about the Sportage, including Kia's website and vehicle brochure, he bought the Sportage. Also, before buying the Sportage, he reviewed and relied on information set forth in the Monroney sticker affixed to the Sportage's window, including talking to dealership personnel, and taking a test drive.

159.    At no point before Mr. Pluskowski bought his vehicle did Kia or their agents, dealers, or other representatives disclose the ABS Module Defect to him. If Kia had disclosed the ABS Module Defect to him, Mr. Pluskowski would have been aware of it, and he would not have bought the 2015 Kia Sportage or would have paid less for it.

160.    Sometime in February 2022, Mr. Pluskowski obtained an oil change from a business establishment he trusts. During the oil change, he was told that there was smoke in engine compartment, which was consistent with a burning odor Mr. Pluskowski smelled the day before. Mr. Pluskowski was advised that the smoke had nothing to do with the oil.

161.    Mr. Pluskowski recently had hip surgery and so his Sportage is parked in his garage.

162.    Mr. Pluskowski is now concerned that his Sportage could catch fire due to the ABS Module Defect and believes that the Sportage's market value is diminished as a result.

### B.    Ricky Barber

163.    Plaintiff Barber bought a new 2021 Kia Sportage in April 2021, from Janesville Kia, an authorized Kia dealership located in Janesville, Wisconsin. Based on

reliability and safety ratings he had researched, heard, viewed, and/or read about the Sportage, including Kia's website, he bought the Sportage. Also, before buying the Sportage, he reviewed and relied on information set forth in the Monroney sticker affixed to the Sportage's window, including talking to dealership personnel, and taking a test drive.

164.   At no point before Mr. Barber bought his vehicle did Kia or their agents, dealers, or other representatives disclose the ABS Module Defect to him. If Kia had disclosed the ABS Module Defect to him, Mr. Barber would have been aware of it, and he would not have bought the 2021 Kia Sportage or would have paid less for it.

165.   About several weeks ago, Mr. Barber smelled a burning or melting electrical odor.

166.   Mr. Barber is now concerned that his Sportage could catch fire due to the ABS Module Defect and believes that the Sportage's market value is diminished as a result.

**C.    Lucille Jacob**

167.   Plaintiff Jacob initially leased a new 2017 Hyundai Santa Fe Sport in March 2017, then bought it outright after three years, from Rockland Hyundai, an authorized Hyundai dealership located in West Nyack, New York. Based on reliability and safety ratings she had researched, heard, viewed, and/or read about the Hyundai Santa Fe Sport, including Hyundai's website and the vehicle brochure, she bought the Santa Fe Sport. Also, before buying the Santa Fe Sport, she reviewed and relied on information set forth in the Monroney sticker affixed to the Santa Fe Sport's window, including talking to dealership personnel, and taking a test drive.

168.   At no point before Ms. Jacob bought her vehicle did Hyundai or their agents, dealers, or other representatives disclose the ABS Module Defect to her. If Hyundai had disclosed the ABS Module Defect to her, Ms. Jacob would have been aware of it and she would not have leased the 2017 Hyundai Santa Fe Sport and then bought it outright or would have leased it for less and paid less for it outright.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

169.   On March 11, 2022, Ms. Jacob took her Santa Fe Sport to Liberty Hyundai for an oil change. She asked Liberty Hyundai about the February 2022 recall. Ms. Jacob was directed by Liberty Hyundai, an authorized Hyundai dealership, to park her vehicle outside and away from structures. Moreover, Liberty Hyundai told Ms. Jacob there is "no remedy."

170.   Ms. Jacob is now concerned that her Santa Fe Sport could catch fire due to the ABS Module Defect and believes that the Santa Fe Sport's market value is diminished as a result.

### D.   Carla Ward

171.   Plaintiff Ward bought a new 2020 Hyundai Tucson in October 2020, online and picked it up from Bob Baker Hyundai, an authorized Hyundai dealership located in Carlsbad, California. Based on reliability and safety ratings that her sons had researched for her, and had heard, viewed, and/or read about the Tucson, including Hyundai's website and the vehicle brochure, she bought the Tucson. Also, before buying the Tucson, Ms. Ward reviewed and relied on information set forth in the Monroney sticker affixed to the Tucson's window, including talking to dealership personnel, and taking a test drive.

172.   At no point before Ms. Ward bought her vehicle did Hyundai or their agents, dealers, or other representatives disclose the ABS Module Defect to her. If Hyundai had disclosed the ABS Module Defect to her, Ms. Ward would have been aware of it, and she would not have bought the 2020 Hyundai Tucson or would have paid less for it.

173.   About a month and a half ago, Ms. Ward smelled a burning or melting odor. And recently, her daughter-in-law also smelled a smoke odor in Ms. Ward's garage, which is where she parks her 2020 Hyundai Tucson. Ms. Ward drives her Tucson with her grandkids from time to time.

174.   Ms. Ward is now concerned that her Tucson could catch fire due to the ABS Module Defect and believes that the Tucson's market value is diminished as a result.

### E.   Pepper Miller

175.   Plaintiff Miller bought a new 2018 Hyundai Genesis G80 limited edition in

November 2017, from North Freeway Hyundai, an authorized Hyundai dealership located in Spring, Texas, in the Houston area. Based on reliability and safety ratings he had researched, heard, viewed, and/or read about the Genesis G80, including Hyundai's website and the vehicle brochure, he bought the Genesis G80. Also, before buying the Genesis G80n, Mr. Pepper talked to dealership personnel, and took a test drive.

176.   At no point before Mr. Miller bought his vehicle did Hyundai or their agents, dealers, or other representatives disclose the ABS Module Defect to him. If Hyundai had disclosed the ABS Module Defect to him, Mr. Miller would have been aware of it, and he would not have bought the 2018 Hyundai Genesis G80 or would have paid less for it.

177.   In or around November and December 2021, during a scheduled maintenance appointment at his Hyundai dealership, Hyundai personnel directed told Mr. Miller and his wife, if the ABS light came on while the vehicle was parked,

178.   On or around November or December 2021, Mr. Miller and his wife took their Genesis G80 to North Freeway Hyundai for a scheduled maintenance appointment. During this routine maintenance, Mr. Miller and his wife were directed by North Freeway Hyundai, an authorized Hyundai dealership, that if the ABS light comes on, to either park their vehicle outside when the vehicle is parked or pull over when the vehicle is in operation. Moreover, North Freeway Hyundai told Mr. Miller and his wife there is "not a fix yet."

179.   Mr. Miller is now concerned that his Genesis G80 could catch fire due to the ABS Module Defect and believes that the Genesis G80's market value is diminished as a result.

### F.   Cindy Brady

180.   Plaintiff Brady bought a new 2019 Kia Sportage in July 2020, from Fredy Kia, an authorized Kia dealership located in Houston, Texas. Based on reliability and safety ratings she had researched, heard, viewed, and/or read about the Sportage, including Kia's website and the vehicle brochure, she bought the Sportage. Also before buying the Sportage, she reviewed and relied on information set forth in the Monroney sticker affixed

to the Sportage's window, including talking to dealership personnel, and taking a test drive.

181.   At no point before Ms. Brady bought her vehicle did Kia or their agents, dealers, or other representatives disclose the ABS Module Defect to her. If Kia had disclosed the ABS Module Defect to her, Ms. Brady would have been aware of it, and she would not have bought the 2019 Kia Sportage or would have paid less for it.

182.   Ms. Brady is now concerned that her Sportage could catch fire due to the ABS Module Defect and believes that the Sportage's market value is diminished as a result.

## VI.   CLASS ACTION ALLEGATIONS

183.   Pursuant to Rule 23(a), (b)(2), and/or (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves, and a Class defined as follow:

All persons in the United States who bought or leased a Class Vehicle ("Nationwide Class").

184.   In the alternative, Plaintiffs seek to represent state classes defined as follows:

All persons who purchased or leased a Class Vehicle in California ("California Class").

All persons who purchased or leased a Class Vehicle in Illinois ("Illinois Class").

All persons who purchased or leased a Class Vehicle in New Jersey ("New Jersey Class").

All persons who purchased or leased a Class Vehicle in Texas ("Texas Class").

185.   Members of the Nationwide Class, the California Class, the Illinois Class, the New Jersey Class, and the Texas Class are collectively referred to herein as the "Class" or "Class members," unless otherwise stated. Excluded from the proposed Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entities in which Defendants have a controlling interest; any officer, director, or employee of Defendants;

any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff or the judge's family; any individuals who have personal injury claims resulting from the ABS Module Defect and alleged misconduct; and anyone who purchased a Class Vehicle for the purpose of resale.

186.   Plaintiffs reserve their right to revise the class definitions after having any opportunity to conduct discovery and further investigation.

187.   Members of the proposed Class are readily ascertainable because the class definition is based upon objective criteria.

188.   **Numerosity**. Defendants have sold many thousands of Class Vehicles, including a substantial number in California, Illinois, New Jersey, and Texas. Members of the proposed Class likely number in the thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

189.   **Commonality and Predominance**. Common questions of law and fact exist as to all proposed Class members and predominate over questions affecting only individual class members. These common questions include, but are not limited to:

a.     Whether the Class Vehicles were sold with the ABS Module Defect;

b.     Whether Defendants knew or should have known that the Class Vehicles are at risk for an electrical fire as a result of the ABS Module Defect, and if so, when Defendants discovered this;

c.     Whether the knowledge of risk for an electrical fire would be material to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

d.     Whether Defendants failed to disclose and concealed the existence of the ABS Module Defect, the attendant safety risks, and actual fire incidents from consumers;

e.     Whether any recalls the Defendants have issued pertaining to any of the Class Vehicles are complete and adequate;

f.     Whether Defendants breached their warranty obligations; and

g.      Whether Defendants' conduct, as alleged herein, violates the consumer protection statutes alleged below.

190.   **Typicality**. Plaintiffs' claims are typical of the claims of the proposed class(es).  Plaintiffs and the members of the proposed classes all purchased or leased Class Vehicles with the ABS Module Defect and that are at risk for an electrical fire, giving rise to substantially the same claims. As illustrated by consumer complaints, some of which have been excerpted above, each Class Vehicle included in the proposed class definitions suffers from the ABS Module Defect that Plaintiffs are complaining about.

191.   **Adequacy**. Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and will prosecute this action vigorously on Class members' behalf.

192.   **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective ABS modules, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

193.   In the alternative, the proposed Class may be certified because:

a.   the prosecution of separate actions by the individual members of the proposed class(es) would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

b.   the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.   Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed class(es) as a whole.

## VII.   CHOICE OF LAW ALLEGATIONS

194.   The State of California has sufficient contacts to the conduct alleged herein such that California law may be uniformly applied to the claims of the proposed Nationwide Class.

195.   Defendants conduct substantial business in California, where they maintain over 50 authorized dealerships; Defendants' U.S. headquarters are located in California; and a significant portion of the proposed Nationwide Class is located in California.

196.   Defendant HMA is headquartered in Fountain Valley, California, and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Hyundai vehicles, including the Hyundai Class Vehicles.

197.   Defendant HMA's executives, including its Chief Executive Officer, and employees responsible for the manufacture, marketing, advertising, distribution, sales, warranty, and customer service of Hyundai vehicles, including the Hyundai Class Vehicles, are located at HMA's headquarters in Fountain Valley, California.

198.   Defendant KA is headquartered in Irvine, California, and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Kia vehicles, including the Kia Class Vehicles.

199.   Defendant KA's executives, including its Chief Executive Officer, and

employees responsible for the manufacture, marketing, advertising, distribution, sales, warranty, and customer service of Kia vehicles, including the Kia Class Vehicles, are located at KA's headquarters in Irvine, California.

200.   In addition, the conduct that forms the basis for each and every Class member's claims against Defendants emanated from Defendants' U.S. headquarters in California, where, among other things, Defendants receive customer complaints, plan their communications with U.S. customers, plan their communications with authorized U.S. dealerships, analyze U.S. warranty data, and develop U.S. warranty policy. The decision not to inform consumers or authorized dealerships of the ABS Module Defect was made in California, as was the decision to systematically deny warranty coverage for repairs that were necessitated by the ABS Module Defect.

201.   The State of California also has the greatest interest in applying its law to class members' claims. Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also what the State has characterized as a "compelling" interest in using its laws to regulate a resident corporation and preserve a business climate free of fraud and deceptive practices. *Diamond Multimedia Sys. v. Sup. Ct.,* 19 Cal. 4th 1036, 1064 (1999).

202.   If other states' laws were applied to class members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired. California could not effectively regulate a company like Hyundai or Kia, who do business throughout the United States, if California can only ensure that consumers from one of the fifty states affected by conduct that runs afoul of its laws are compensated.

## VIII.   **TOLLING OF STATUTES OF LIMITATIONS**

203.   **Discovery Rule**. Plaintiffs' and Class members' claims accrued upon discovery of the ABS Module Defect in their Class Vehicles that created the risk of an electrical fire. While Defendants knew, and concealed, the facts that the Class Vehicles have the ABS Module Defect that creates a significant risk of electrical fire, Plaintiffs and

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

Class members could not and did not discover these facts sooner through reasonable diligent investigation.

204. **Active Concealment Tolling**. Any statutes of limitations are tolled by Defendants' knowing and active concealment of the ABS Module Defect in the Class Vehicles. Defendants kept Plaintiffs and all Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. Plaintiffs could not reasonably have discovered the ABS Module Defect in their Class Vehicles.

205. **Estoppel**. Defendants were and are under a continuous duty to disclose to Plaintiffs and all Class members the true character, quality, and nature of the ABS Module Defect in the Class Vehicles. At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of the ABS Module Defect Defendants installed in the Class Vehicles. The details of Defendants' efforts to conceal the above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. Plaintiffs reasonably relied upon Defendants' active concealment. Based on the foregoing, Defendants are estopped from relying upon any statutes of limitation in defense of this action.

206. **Equitable Tolling**. Defendants took active steps to conceal the fact that they wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with the ABS Module Defect. The details of Defendants' efforts to conceal their above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under

the doctrine of equitable tolling.

## IX.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of Unlawful, Unfair, and Fraudulent Business Practices
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)
### (All Plaintiffs individually on behalf of the proposed Nationwide Class or, in the Alternative, the California Class)

207.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

208.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against HMA and KA, and Plaintiff Ward brings this claim in the alternative on behalf of herself and the California Class against the Hyundai Defendants.

209.    Defendants have violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

210.    Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law. In particular, Defendants sold the Class Vehicles to Class members despite the ABS Module Defect in those vehicles and the increased risk of fire and failed to disclose the ABS Module Defect, its attendant risks, and actual fire incidents at the point of sale, advertising materials, or otherwise.

211.    Defendants' business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* and other laws as alleged herein.

212.    Defendants' acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Defendants knowingly conceal and fail to disclose at the point of sale and otherwise that the Class Vehicles have the ABS Module Defect and are at increased risk of a fire spontaneously occurring, endangering the personal safety of drivers and passengers, causing damage to property,

and thus requiring immediate repair. Had Defendants disclosed these facts, Plaintiffs, Class members, and reasonable consumers would not have purchased or leased the Class Vehicles or would have paid significantly less for them.

213.   Defendants' conduct also constitutes unfair business practices for at least the following reasons:

a.   The gravity of harm to Plaintiffs and the proposed class from Defendants' acts and practices far outweighs any legitimate utility of that conduct;

b.   Defendants' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the proposed class; and

c.   Defendants' conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

214.   As a direct and proximate result of Defendants' business practices, Plaintiffs and the proposed Class members suffered injury in fact and lost money or property, because they purchased and paid for vehicles that they otherwise would not have, or in the alternative, would have paid less for.

215.   Plaintiffs and the proposed Nationwide Class members are entitled to equitable relief, including restitution to compensate Plaintiffs and the Class as a result of Defendants' unlawful, unfair and deceptive, and fraudulent practices, and an injunction enjoining Defendants' misconduct as alleged herein and directing Defendants to disclose the existence of the ABS Module Defect to all owners and lessees of the Class Vehicles and directing Defendants to provide an adequate repair. Plaintiffs, the Class, and members of the public will suffer irreparable injury if an injunction is not ordered as they are at risk for bodily injury. Plaintiffs will also suffer irreparable injury if Defendants' misleading practices are not enjoined. They have an interest in buying vehicles in the future, often see marketing for Defendants' vehicles, and will consider purchasing Defendants' vehicles in the future if possible, but have no way of determining whether the vehicles are installed

with the ABS Module Defect.

216.   Plaintiffs bring this Claim on behalf of the Class in the alternative to any Claims brought for legal remedies and expressly allege that for purposes of this Claim they lack adequate remedies at law. Among other things, and without conceding any arguments Defendants may raise with respect to tolling, the statute of limitations for this claim is four years as compared to three years or two years for other claims brought in this complaint. In addition, the restitution that may be available under this claim, including for restitutionary disgorgement of revenues attributable to an increased volume of vehicle sales made possible by the challenged practices, may not be recoverable as damages or otherwise at law. Given the market share held by Defendants, Plaintiffs, individually and as members of the Class, have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above absent an injunction. Moreover, Defendants' alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

**SECOND CAUSE OF ACTION**
**Violation of the Consumers Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(All Plaintiffs individually and on behalf of the proposed Nationwide Class or, in the Alternative, the California Class)**

217.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

218.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against HMA and KA, and Plaintiff Ward brings this claim in the alternative on behalf of herself and the California Class against the Hyundai Defendants.

219.   Defendants are "persons" within the meaning of Civil Code §§ 1761(c) and 1770 and have provided "goods" within the meaning of Civil Code §§ 1761(b) and 1770.

220.   Plaintiffs and members of the proposed Nationwide Class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770 and their purchases or leases of the Class Vehicles constitute a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

221.   Defendants' acts and practices, which were intended to result, and which did result in the sale of Class Vehicles with the ABS Module Defect, violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

a.   Defendants represent that their vehicles had characteristics, uses, or benefits which they do not have;

b.   Defendants advertise their goods with intent not to sell them as advertised;

c.   Defendants represent that their vehicles are of a particular standard, quality, or grade when they are not;

d.   Defendants represent that a transaction conferred or involved rights, remedies, or obligations which they do not; and

e.   Defendants represent that their goods have been supplied in accordance with a previous representation when they have not.

222.   As described above, Defendants sold the Class Vehicles to Class members but failed to disclose the ABS Module Defect, its attendant risks, and actual fire incidents at the point of sale, advertising materials, or otherwise. Defendants intended that Plaintiff and the members of the proposed Class rely on this omission in deciding to purchase their vehicles.

223.   Had Defendants adequately disclosed the ABS Module Defect, the attendant safety risks, and the actual fire incidents at the point of sale and in advertising materials, Plaintiffs, members of the proposed class, and reasonable consumers would not have purchased or leased the Class Vehicles or would have paid significantly less to buy or lease them.

224.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs, on behalf of themselves and the proposed Class, notified Defendants in writing of the CLRA violation alleged herein prior to filing this complaint. If Defendants do not exercise its opportunity to provide corrective action pursuant to Section 1782(b) within the time provided, Plaintiffs will amend this complaint to seek damages and all other available relief.

225. Pursuant to California Civil Code § 1780, Plaintiffs seek all available injunctive relief. Plaintiffs and the proposed Nationwide Class members are entitled to an injunction enjoining Defendants' misconduct as alleged herein and directing Defendants to disclose the existence of the ABS Module Defect to all owners and lessees of the Class Vehicles and directing Defendants to provide an adequate repair. Plaintiffs, the Class, and members of the public will suffer irreparable injury if an injunction is not ordered as they are at risk of bodily injury. Plaintiffs will also suffer irreparable injury if Defendants' misleading practices are not enjoined. They have an interest in buying vehicles in the future, often see marketing for Defendants' vehicles, and will consider purchasing Defendants' vehicles in the future if possible, but have no way of determining whether the vehicles are installed with the ABS Module Defect.

226. Plaintiffs bring this Claim for injunctive relief on behalf of themselves and Class and expressly they lack adequate remedies at law. Plaintiffs, Class members, and members of the public are at risk of bodily injury, which is not redressed by money damages. Further, Defendants' alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

### THIRD CAUSE OF ACTION
### Violation of the California False Advertising Law
### (Cal. Civ. Code § 17500, *et seq.*)
### (All Plaintiffs individually and on behalf of the proposed Nationwide Class or, in the Alternative, the California Class)

227. Plaintiffs re-allege the paragraphs above as if fully set forth herein.

228. Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against HMA and KA, and Plaintiff Ward brings this claim in the alternative on behalf of herself and the California Class against the Hyundai Defendants.

229. California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate

or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

230.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and Class members.

231.   Defendants have violated § 17500 because their promises of safety, reliability and functionality of the Class Vehicles as set forth in this Complaint were misleading in light of the failure to disclose the material facts set forth herein, and thus, Defendants' representations and promises were likely to deceive a reasonable consumer.

232.   Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and Class member relied on the misrepresentations and/or omissions of Defendants with respect to the safety, reliability, and functionality of the Class Vehicles. Defendants' representations turned out not to be true because the Class Vehicles were and are distributed with the ABS Module Defect that causes the Class Vehicles to spontaneously combust into flames while the vehicle is in operation and while the vehicle is parked, which endangers the personal safety of drivers and passengers, causing damage to property, and thus requiring immediate repair. Had Defendants disclosed these facts, through Defendants' advertising, marketing, and other publications, such as their websites, the Class Vehicle brochures, and/or on the Monroney sticker, Plaintiffs, Class members, and reasonable consumers would not have purchased or leased the Class Vehicles or would have paid significantly less for them. Accordingly, Plaintiffs and Class members overpaid for their Class Vehicles and did not receive the

benefit of their bargain.

233.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

234.   Plaintiffs, individually and on behalf of the Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to the Plaintiffs and the Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief permitted.

235.   Plaintiffs and the proposed Nationwide Class members are entitled to equitable relief, including restitution to compensate Plaintiffs and the Class as a result of Defendants' unlawful, unfair and deceptive, and fraudulent practices, and an injunction enjoining Defendants' misconduct as alleged herein and directing Defendants to disclose the existence of the ABS Module Defect to all owners and lessees of the Class Vehicles and directing Defendants to provide an adequate repair. Plaintiffs, the Class, and members of the public will suffer irreparable injury if an injunction is not ordered as they are at risk for bodily injury. Plaintiffs will also suffer irreparable injury if Defendants' misleading practices are not enjoined. They have an interest in buying vehicles in the future, often see marketing for Defendants' vehicles, and will consider purchasing Defendants' vehicles in the future if possible, but have no way of determining whether the vehicles are installed with the ABS Module Defect.

236.   Plaintiffs bring this Claim on behalf of the Class in the alternative to any Claims brought for legal remedies and expressly allege that for purposes of this Claim they lack adequate remedies at law. Among other things, and without conceding any arguments Defendants may raise with respect to tolling, the statute of limitations for this claim is four years as compared to three years or two years for other claims brought in this complaint. In addition, the restitution that may be available under this claim, including for

restitutionary disgorgement of revenues attributable to an increased volume of vehicle sales made possible by the challenged practices, may not be recoverable as damages or otherwise at law. Given the market share held by Defendants, Plaintiffs, individually and as members of the Class, have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above absent an injunction. Moreover, Defendants' alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an inadequate remedy to address the conduct that injunctions are designed to prevent.

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### (Cal. Com. Code §§ 2313 and 10210)
### (All Plaintiffs individually and on behalf of the proposed Nationwide Class or, in the Alternative, the California Class)

237.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

238.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against HMA and KA, and Plaintiff Ward brings this claim in the alternative on behalf of herself and the California Class against the Hyundai Defendants.

239.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "seller[s]" of motor vehicles under § 2103(1)(d).

240.   With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Cal. Com. Code § 10103(a)(16).

241.   Plaintiffs and Class members who purchased Class Vehicles are "buyer[s]" within the meaning of Cal. Com. Code § 2103(1)(a), or who leased Class Vehicles are "lessee[s]" within the meaning of Cal. Com. Code § 10103(a)(14).

242.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

243.   In connection with the purchase or lease of the Class Vehicles, Defendants provided Plaintiffs and Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

86

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

244.   The Class Vehicles and parts affected by the ABS Module Defect, including the ABS module, were manufactured and distributed by Defendants and are covered by the warranties Defendants provided to all purchasers and lessors of Class Vehicles, including Plaintiffs and Class members.

245.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiffs and Class members unknowingly purchased or leased the Class Vehicles that came equipped with the ABS Module Defect.

246.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the ABS Module Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiffs and Class members. Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it and ignore their warranty obligations.

247.   Plaintiffs and Class members reasonably relied on Defendants' express warranties when purchasing or leasing their Class Vehicles.

248.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ABS Module Defect or replace the defective ABS modules in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiffs and Class members. Plaintiffs and Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

249.   Furthermore, the limited warranty promising to repair and correct the Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

250.   Accordingly, recovery by Plaintiffs and Class members are not restricted to the limited warranty promising to repair and correct the Defendants' defect in materials

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

and workmanship, and they seek all remedies as allowed by law.

251. As a direct and proximate result of Defendants' breach of their express warranties, Plaintiffs and Class members bought or leased the Class Vehicles they otherwise would not have, overpaid for their vehicles, received goods whose defect substantially impairs their value, and did not receive the benefit of their bargain. Plaintiffs and Class members also incurred and will continue to incur costs related to the diagnosis and repair of the ABS Module Defect.

252. Any attempt by Defendants to disclaim or limit these express warranties are unconscionable and unenforceable because Defendants knowingly sold a defective product without disclosing to consumers about the ABS Module Defect. In addition, the time limits in the Defendants' warranties were also unconscionable and inadequate because Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendants. Since Defendants knew or should have known that the Class Vehicles were equipped with the ABS Module Defect at the time of sale and thus the vehicles could fail well before the end of its life cycle, a gross disparity in bargaining power at contract formation existed between Defendants and Plaintiffs and Class members.

253. Defendants were provided notice of the ABS Module Defect by numerous NHTSA complaints filed against them, internal investigations, and warranty claims before or within a reasonable amount of time after Defendants issued the recalls and after the ABS Module Defect became public. Additionally, Plaintiffs on behalf of themselves and the proposed Class, sent Defendants a written demand before filing this complaint.

254. Plaintiffs and Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of the Defendants' conduct alleged herein.

**FIFTH CAUSE OF ACTION**
**Violations of Song-Beverly Consumer Warranty Act For Breach of Express Warranties**
**(Cal. Civ. Code § 1790, *et seq.*)**
**(Plaintiff Carla Ward individually and on behalf of the proposed Nationwide Class or in the Alternative, the California Class)**

255.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

256.    Plaintiff Carla Ward brings this claim on behalf of herself and the Nationwide Class against Hyundai Defendants, and Plaintiff Ward brings this claim in the alternative on behalf of herself and the California Class against the Hyundai Defendants.

257.    Defendants are and were at all relevant times "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

258.    Defendants are and were at all relevant times "seller[s]" of motor vehicles under Cal. Civ. Code § 1791(l).

259.    With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Cal. Civ. Code § 1791(i).

260.    Plaintiff Ward and Class members who purchased Class Vehicles sold in California are "buyer[s]" within the meaning of California Civil Code § 1791(b), or who leased Class Vehicles sold in California are "lessees" within the meaning of Cal. Civ. Code § 1791(h).

261.    The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

262.    The Song-Beverly Consumer Warranty Act applies to "consumer goods sold in this state[.]" Cal. Civ. Code § 1793.2.

263.    The Class Vehicles were also sold in California by Defendants. Plaintiff Ward's vehicle was sold in California.

264.    Defendants made express warranties to Plaintiff Ward and Class members within the meaning of California Civil Code §§ 1791.2 and 1793.2, as alleged herein.

265.    In connection with the purchase or lease of the Class Vehicles, Defendants

provided Plaintiff Ward and the Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

266.    The Class Vehicles and parts affected by the ABS Module Defect, including the ABS module, were manufactured and distributed by Defendants and are covered by the warranties Defendants provided to all purchasers and lessors of Class Vehicles, including Plaintiffs and Class members.

267.    Defendants' warranties formed the basis of the bargain that was reached when Plaintiff Ward and Class members unknowingly purchased or leased the Class Vehicles that came equipped with the ABS Module Defect.

268.    However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the ABS Module Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff Ward and Class members. Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it and ignore their warranty obligations.

269.    Plaintiff Ward and Class members reasonably relied on Defendants' express warranties when purchasing or leasing their Class Vehicles.

270.    Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ABS Module Defect or replace the defective ABS modules in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff Ward and Class members. Plaintiff Ward and Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

271.    Furthermore, the limited warranty promising to repair and correct the Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Ward and Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

272.  Accordingly, recovery by Plaintiff Ward and Class members are not restricted to the limited warranty promising to repair and correct the Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

273.  As a direct and proximate result of Defendants' breach of their express warranties, Plaintiff Ward and Class members bought or leased the Class Vehicles they otherwise would not have, overpaid for their vehicles, received goods whose defect substantially impairs their value, and did not receive the benefit of their bargain. Plaintiff Ward and Class members also incurred and will continue to incur costs related to the diagnosis and repair of the ABS Module Defect.

274.  Any attempt by Defendants to disclaim or limit these express warranties are unconscionable and unenforceable because Defendants knowingly sold a defective product without disclosing to consumers about the ABS Module Defect. In addition, the time limits in the Defendants' warranties were also unconscionable and inadequate because Plaintiff Ward and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendants. Since Defendants knew or should have known that the Class Vehicles were equipped with the ABS Module Defect at the time of sale and thus the vehicles could fail well before the end of its life cycle, a gross disparity in bargaining power at contract formation existed between Defendants and Plaintiff Ward and Class members.

275.  Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff Ward and Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

276.  Pursuant to California Civil Code § 1794, the Class is entitled to costs and attorneys' fees.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

**SIXTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(Cal. Com. Code §§ 2314 and 10212)**
**(All Plaintiffs individually and on behalf of the proposed Nationwide Class or, in the Alternative, the California Class)**

277.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

278.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against all HMA and KA, and Plaintiff Ward brings this claim in the alternative on behalf of herself and the California Class against the Hyundai Defendants.

279.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles, Cal. Com. Code §§ 2104(1) and 10103(c), and "seller[s]" of motor vehicles under § 2103(1)(d).

280.    With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Cal. Com. Code § 10103(a)(16).

281.    Plaintiffs and Class members who purchased Class Vehicles are "buyer[s]" within the meaning of Cal. Com. Code § 2103(1)(a), or who leased Class Vehicles are "lessee[s]" within the meaning of Cal. Com. Code § 10103(a)(14).

282.    The Class Vehicles were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

283.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

284.    The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.

285.    The Class Vehicles would not pass without objection in the automotive trade due to the ABS Module Defect. Because the Class Vehicles contained an inherent defect at the time of sale that causes the Class Vehicles to spontaneously combust while the

vehicle is in operation and while the vehicle is parked, the Class Vehicles were not in merchantable condition and thus not fit for ordinary purposes of providing safe and reliable transportation, including being safely parked in a garage or other structure.

286.   The Class Vehicles were and are not adequately labeled because the labeling fails to disclose the ABS Module Defect in the Class Vehicles.

287.   In the various channels of information through which Defendants sold, leased, and marketed Class Vehicles, Defendants failed to disclose material information concerning the ABS Module Defect in the Class Vehicles, which it had to duty to disclose. Defendants had a duty to disclose the ABS Module Defect because, as alleged herein: (a) Defendants knew about the ABS Module Defect for years, as early as 2012, and yet chose to conceal it; (b) Defendants had exclusive knowledge of material facts not known to the general public or Class members, including Plaintiff Ward; (c) Defendants actively concealed material facts from the general public and Class members, including Plaintiff Ward, concerning the ABS Module Defect in the Class Vehicles; and (d) Defendants made partial representations about the Class Vehicles that were misleading because they did not disclose the full truth. As alleged herein, Defendants knew the information concerning the ABS Module Defect at the time of advertising and selling the Class Vehicles, all of which intended to induce consumers to purchase the Class Vehicles.

288.   Plaintiff Ward and Class members reviewed and/or relied on statements or advertisements, such as Defendants' websites, Class Vehicle brochures, and/or the Monroney sticker, made by Defendants in choosing to purchase or lease a Class Vehicle.

289.   Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles that are defective. Furthermore, the ABS Module Defect has caused Class members, including Plaintiff Ward, to not receive the benefit of their bargain and have caused the Class Vehicles to depreciate in value.

290.   Plaintiff Ward and Class members have been damaged as a result of the diminished value of Defendants' products.

291.   As a direct and proximate result of the Defendants' breach of the implied

warranty of merchantability, Plaintiff Ward and Class members have been damaged in an amount to be proven at trial.

292.   Defendants were provided notice of the ABS Module Defect by numerous NHTSA complaints filed against them, internal investigations, and warranty claims before or within a reasonable amount of time after Defendants issued the recalls and after the ABS Module Defect became public. Additionally, Plaintiffs on behalf of themselves and the proposed Class, sent Defendants a written demand before filing this complaint.

293.   Plaintiff Ward and Class members have had sufficient direct dealings with either Hyundai Defendants or Kia Defendants, including their agents (*e.g.*, authorized dealerships, Consumer Affairs departments, and technical support) to establish privity of contract between the Hyundai Defendants or Kia Defendants on the one hand, and Plaintiff Ward and each of the other Class members on the other hand. Alternatively, the privity requirement is excepted here because, as alleged herein, Plaintiff Ward and Class members relied on and/or reviewed and viewed statements or advertisements, such as Defendants' websites, Class Vehicle brochures, and/or the Monroney sticker, made by Defendants in choosing to purchase or lease a Class Vehicle. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (identifying specific exceptions to the privity rule under California law – "[t]he first arises when the plaintiff relies on written labels or advertisement of a manufacturer.").

**SEVENTH CAUSE OF ACTION**
**Violations of Song-Beverly Consumer Warranty Act For Breach of Implied Warranty of Merchantability**
**(Cal. Civ. Code § 1790, *et seq*.)**
**(Plaintiff Carla Ward individually and on behalf of the proposed Nationwide Class or, in the Alternative, the California Class)**

294.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

295.   Plaintiff Carla Ward brings this claim on behalf of herself and the Nationwide Class against all Hyundai Defendants, and Plaintiff Ward brings this claim in the alternative on behalf of herself and the California Class against the Hyundai Defendants.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

296.   Defendants are and were all relevant times "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

297.   Defendants are and were at all relevant times "seller[s]" of motor vehicles under Cal. Civ. Code § 1791(l).

298.   With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Cal. Civ. Code § 1791(i).

299.   Plaintiff Ward and Class members who purchased Class Vehicles sold in California are "buyer[s]" within the meaning of California Civil Code § 1791(b), or who leased Class Vehicles sold in California are "lessees" within the meaning of Cal. Civ. Code § 1791(h).

300.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

301.   The Song-Beverly Consumer Warranty Act applies to "consumer goods that are sold at retail in this state[.]" Cal. Civ. Code §§ 1792.

302.   The Class Vehicles were also sold at retail in California by Defendants. Plaintiff Ward's vehicle was sold at retail in California.

303.   Defendants impliedly warranted to Plaintiff Ward and Class members that their Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

304.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

> (1)   Pass without objection in the trade under the contract description.
>
> (2)   Are fit for the ordinary purposes for which such goods are used.
>
> (3)   Are adequately contained, packaged, and labeled.
>
> (4)   Conform to the promises or affirmations of fact made on the container or label.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

305.   The Class Vehicles would not pass without objection in the automotive trade due to the ABS Module Defect. Because the Class Vehicles contained an inherent defect at the time of sale that causes the Class Vehicles to spontaneously combust while the vehicle is in operation and while the vehicle is parked, the Class Vehicles were not in merchantable condition and thus not fit for ordinary purposes of providing safe and reliable transportation, including being safely parked in a garage or other structure.

306.   The Class Vehicles were and are not adequately labeled because the labeling fails to disclose the ABS Module Defect in the Class Vehicles.

307.   In the various channels of information through which Defendants sold, leased, and marketed Class Vehicles, Defendants failed to disclose material information concerning the ABS Module Defect in the Class Vehicles, which it had to duty to disclose. Defendants had a duty to disclose the ABS Module Defect because, as alleged herein: (a) Defendants knew about the ABS Module Defect for years, as early as 2012, and yet chose to conceal it; (b) Defendants had exclusive knowledge of material facts not known to the general public or Class members, including Plaintiff Ward; (c) Defendants actively concealed material facts from the general public and Class members, including Plaintiff Ward, concerning the ABS Module Defect in the Class Vehicles; and (d) Defendants made partial representations about the Class Vehicles that were misleading because they did not disclose the full truth. As alleged herein, Defendants knew the information concerning the ABS Module Defect at the time of advertising and selling the Class Vehicles, all of which intended to induce consumers to purchase the Class Vehicles.

308.   Plaintiff Ward and Class members relied on and/or reviewed and viewed statements or advertisements, such as Defendants' websites, Class Vehicle brochures, and/or the Monroney sticker, made by Defendants in choosing to purchase or lease a Class Vehicle.

309.   Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles that are defective. Furthermore, the ABS Module Defect has caused Class members, including Plaintiff Ward, to not receive the

benefit of their bargain and have caused the Class Vehicles to depreciate in value.

310.   Plaintiff Ward and Class members have been damaged as a result of the diminished value of Defendants' products.

311.   Plaintiff Ward and Class members have had sufficient direct dealings with the Hyundai Defendants, including their agents (*e.g.*, authorized dealerships, Consumer Affairs departments, and technical support) to establish privity of contract between the Hyundai Defendants on the one hand, and Plaintiff Ward and each of the other Class members on the other hand. Alternatively, the privity requirement is excepted here because, as alleged herein, Plaintiff Ward and Class members relied on and/or reviewed and viewed statements or advertisements, such as Defendants' websites, Class Vehicle brochures, and/or the Monroney sticker, made by Defendants in choosing to purchase or lease a Class Vehicle. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (identifying specific exceptions to the privity rule under California law – "[t]he first arises when the plaintiff relies on written labels or advertisement of a manufacturer.").

312.   Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff Ward and Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

313.   Under Cal. Civ. Code § 1794, Plaintiffs and the other members of the Class are entitled to costs and attorneys' fees.

### EIGHTH CAUSE OF ACTION
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq*.)**
**(Plaintiffs Adam Pluskowski and Ricky Barber individually and on behalf of the proposed Illinois Class)**

314.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

315.   Plaintiffs Adam Pluskowski and Ricky Barber (for the purposes of this claim, "Illinois Plaintiffs") bring this claim on behalf of themselves and the Illinois Class against the Kia Defendants.

316. The Kia Defendants, the Illinois Plaintiffs, and Illinois Class members are "person[s]" as that term is defined in 815 ILCS 505/1(c).

317. The Illinois Plaintiffs and Illinois Class members are "consumer[s]" as that term is defined in 815 ILCS 505/1(e).

318. The Kia Defendants are and were engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

319. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

320. In the course of their business, the Kia Defendants actively concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by selling the Kia Class Vehicles to Illinois Plaintiffs and Illinois Class members despite the ABS Module Defect in those vehicles and failed to disclose the ABS Module Defect, its attendant risks, and actual fire incidents at the point of sale, advertising materials, or otherwise.

321. The Kia Defendants' acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, the Kia Defendants knowingly concealed and failed to disclose at the point of sale and otherwise that the Kia Class Vehicles have the ABS Module Defect and are at increased risk of a fire spontaneously occurring, endangering the personal safety of drivers and passengers, causing damage to property, and thus requiring immediate repair. Had Kia Defendants disclosed these facts, Illinois Plaintiffs, Illinois Class members, and reasonable consumers would not have purchased the Kia Class Vehicles or would have paid significantly less for them.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

322.   The Illinois Plaintiffs and Illinois Class members had no way of discerning that the Kia Defendants' representations were false and misleading and/or otherwise learning the facts that the Kia Defendants had concealed or failed to disclose. The Illinois Plaintiffs and Illinois Class members did not, and could not, unravel the Kia Defendants' deception on their own.

323.   The Kia Defendants thus violated the Illinois CFA by, at minimum: representing that the Kia Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Kia Class Vehicles are of a particular standard, quality, and grade when they are not; advertising the Kia Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving the Kia Class Vehicles has been supplied in accordance with a previous representation when it has not.

324.   The Kia Defendants intentionally and knowingly misrepresented material facts regarding the Kia Class Vehicles with intent to mislead the Illinois Plaintiffs and Illinois Class.

325.   The Kia Defendants knew or should have known that their conduct violated the Illinois CFA.

326.   The Kia Defendants owed the Illinois Plaintiffs and Illinois Class a duty to disclose the illegality and public health risks, the true nature of the Kia Class Vehicles, because the Kia Defendants:

A.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.   intentionally concealed the ABS Module Defect from the Illinois Plaintiffs and Illinois Class members; and/or made incomplete representations about the Kia Class Vehicles' safety, reliability, and durability while purposefully withholding material facts that contradicted these representations.

327.   The Kia Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

328.   The Kia Defendants' concealment of the Kia Class Vehicles' safety, reliability, and durability of the Kia Class Vehicles and/or the ABS Module Defect were material to the Illinois Plaintiffs and Illinois Class.

329.   The Kia Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois Class, about the true safety, reliability, and durability of the Kia Class Vehicles, the quality of the Kia Class Vehicles, and the true value of the Kia Class Vehicles.

330.   The Kia Defendants' violations present a continuing risk to the Illinois Plaintiffs and the Illinois Class as well as to the general public. The Kia Defendants' unlawful acts and practices complained of herein affect the public interest.

331.   The Illinois Plaintiffs and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of the Kia Defendants' concealment, misrepresentations, and/or failure to disclose material information. The Kia Defendants had an ongoing duty to the Illinois Plaintiffs and Illinois Class members to refrain from unfair and deceptive practices under the Illinois CFA in the course of their business.

332.   As a direct and proximate result of the Kia Defendants' violations of the Illinois CFA, Illinois Plaintiffs and members of the Illinois Class have suffered injury-in-fact and/or actual damage.

333.   Pursuant to 815 ILCS 505/10a(a), the Illinois Plaintiffs and Illinois Class seek monetary relief against the Kia Defendants in the amount of actual damages, as well as punitive damages because the Kia Defendants acted with fraud and/or malice and/or was grossly negligent.

334.   The Illinois Plaintiffs and Illinois Class also seek an order enjoining the Kia Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq.*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

# NINTH CAUSE OF ACTION
**Violation of the Illinois Uniform Deceptive Trade Practices Act
(815 ILCS 510/1, *et seq.*)
(Plaintiffs Adam Pluskowski and Ricky Barber individually and on behalf of the
proposed Illinois Class)**

335.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

336.   Plaintiffs Adam Pluskowski and Ricky Barber (for the purposes of this claim, "Illinois Plaintiffs") bring this claim on behalf of themselves and the Illinois Class against the Kia Defendants.

337.   The Kia Defendants, the Illinois Plaintiffs, and Illinois Class members are "person[s]" as that term is defined in 815 ILCS 510/1(5).

338.   The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") prohibits deceptive trade practices in the course of a business vocation, or occupation.  815 ILCS 510/2(a).

339.   In the course of their business, the Kia Defendants violated the Illinois UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the safety, reliability, and durability of the Kia Class Vehicles and/or the ABS Module Defect, as alleged herein. In particular, the Kia Defendants sold the Kia Class Vehicles to Illinois Plaintiffs and Illinois Class members despite the ABS Module Defect in those vehicles and the increased risk of fire and failed to disclose the ABS Module Defect, its attendant risks, and actual fire incidents at the point of sale, advertising materials, or otherwise.

340.   The Kia Defendants knowingly concealed and failed to disclose at the point of sale and otherwise that the Kia Class Vehicles have the ABS Module Defect and are at increased risk of a fire spontaneously occurring, endangering the personal safety of drivers and passengers, causing damage to property, and thus requiring immediate repair. Had Kia Defendants disclosed these facts, Illinois Plaintiffs, Illinois Class members, and reasonable consumers would not have purchased or leased the Kia Class Vehicles or would have paid significantly less for to buy or lease them.

101

341.   By misrepresenting the Kia Class Vehicles and/or the ABS modules installed in them as safe and/or free from defects, and by failing to disclose and actively conceal the dangers and risk posed by the Kia Class Vehicles and/or the ABS Module Defect, the Kia Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

A.   Representing that the Kia Class Vehicles and/or the ABS Module Defect installed in them have characteristics, uses, benefits, and qualities which they do not have;

B.   Representing that the Kia Class Vehicles and/or the ABS Module Defect installed in them are of a particular standard, quality, and grade when they are not;

C.   Advertising the Kia Class Vehicles and/or the ABS Module Defect installed in them with the intent not to sell or lease them as advertised; and

D.   Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

342.   The Illinois Plaintiffs and Illinois Class members had no way of discerning that the Kia Defendants' representations were false and misleading and/or otherwise learning the facts that the Kia Defendants had concealed or failed to disclose. The Illinois Plaintiffs and Illinois Class members did not, and could not, unravel the Kia Defendants' deception on their own.

343.   The Kia Defendants intentionally and knowingly misrepresented material facts regarding the Kia Class Vehicles with intent to mislead the Illinois Plaintiffs and the Illinois Class.

344.   The Kia Defendants knew or should have known that their conduct violated the Illinois UDTPA.

345.   The Kia Defendants owed the Illinois Plaintiffs and Illinois Class a duty to disclose all the material facts concerning the ABS Module Defect in the Kia Class Vehicles, because the Kia Defendants:

A.   possessed exclusive knowledge that they were manufacturing, selling,

102

and distributing vehicles throughout the United States that did not perform as advertised;

B.      intentionally concealed the ABS Module Defect from the Illinois Plaintiffs and Illinois Class members; and/or

C.      made incomplete representations about the Kia Class Vehicles' safety, reliability, and durability while purposefully withholding material facts that contradicted these representations.

346.   The Kia Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it.

347.   The Kia Defendants' concealment of the Kia Class Vehicles' safety, reliability, and durability of the Kia Class Vehicles and/or the ABS Module Defect were material to the Illinois Plaintiffs and Illinois Class.

348.   The Kia Defendants' deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois Class, about the true safety, reliability, and durability of the Kia Class Vehicles, the quality of the Kia Class Vehicles, and the true value of the Kia Class Vehicles.

349.   The Kia Defendants' violations present a continuing risk to the Illinois Plaintiffs and the Illinois Class as well as to the general public. The Kia Defendants' unlawful acts and practices complained of herein affect the public interest.

350.   The Illinois Plaintiffs and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of the Kia Defendants' concealment, misrepresentations, and/or failure to disclose material information. The Kia Defendants had an ongoing duty to the Illinois Plaintiffs and Illinois Class members to refrain from unfair and deceptive practices under the Illinois UDTPA in the course of their business.

351.   As a direct and proximate result of the Kia Defendants' violations of the Illinois UDTPA, Illinois Plaintiffs and members of the Illinois Class have suffered injury-in-fact and/or actual damage.

352.   Pursuant to 815 ILCS 510/3, the Illinois Plaintiffs and Illinois Class seek an order enjoining the Kia Defendants' unfair and/or deceptive acts or practices and awarding

damages and any other just and proper relief available under the Illinois UDTPA.

## TENTH CAUSE OF ACTION
### Breach of Express Warranty
### (810 Ill. Comp. Stat. 5/2-313 and 5/2A-210)
### (Plaintiffs Adam Pluskowski and Ricky Barber individually and on behalf of the proposed Illinois Class)

353.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

354.    Plaintiffs Adam Pluskowski and Ricky Barber bring this claim on behalf of themselves and the Illinois Class against the Kia Defendants.

355.    For purposes of this cause of action, Plaintiffs Pluskowski and Barber shall be referred to as the "Illinois Plaintiffs."

356.    The Kia Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 ILCS 5/2-104(1) and 5/2A- 103(3), and "seller[s]" of motor vehicles under 5/2-103(1)(d).

357.    With respect to leases, the Kia Defendants are and were at all relevant times "lessor[s]" of motor vehicles under 810 ILCS 5/2A-103(1)(p).

358.    Illinois Plaintiffs and Illinois Class members who purchased the Kia Class Vehicles are "buyer[s]" within the meaning of 810 ILCS 5/2-103(1)(a), or who leased the Kia Class Vehicles are "lessee[s]" within the meaning of 810 ILCS 5/2A-103(1)(n).

359.    The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

360.    In connection with the purchase or lease of the Kia Class Vehicles, the Kia Defendants provided the Illinois Plaintiffs and Illinois Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

361.    The Kia Class Vehicles and parts affected by the ABS Module Defect were manufactured and distributed by the Kia Defendants and are covered by the warranties the Kia Defendants provided to all purchasers and lessors of the Kia Class Vehicles, including Illinois Plaintiffs and Illinois Class members.

362.   The Kia Defendants' warranties formed the basis of the bargain that was reached when Illinois Plaintiffs and Illinois Class members unknowingly purchased or leased the Kia Class Vehicles that came equipped with the ABS Module Defect.

363.   However, the Kia Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Kia Defendants were aware of the ABS Module Defect in the Kia Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Illinois Plaintiffs and Illinois Class members. The Kia Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it and ignore their warranty obligations.

364.   Illinois Plaintiffs and Illinois Class members reasonably relied on the Kia Defendants' express warranties when purchasing or leasing their Kia Class Vehicles.

365.   The Kia Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ABS Module Defect or replace the defective ABS modules in the Kia Class Vehicles. The Kia Defendants also breached their express warranties by providing a product containing defects that were never disclosed to the Illinois Plaintiffs and Illinois Class members. Illinois Plaintiffs and Illinois Class members were therefore induced to purchase or lease the Kia Class Vehicles under false and/or fraudulent pretenses.

366.   Furthermore, the limited warranty promising to repair and correct the Kia Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make the Illinois Plaintiffs and Illinois Class members whole and because the Kia Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

367.   Accordingly, recovery by the Illinois Plaintiffs and Illinois Class members are not restricted to the limited warranty promising to repair and correct the Kia Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

368.   As a direct and proximate result of the Kia Defendants' breach of their express warranties, the Illinois Plaintiffs and Illinois Class members bought or leased the Kia Class Vehicles they otherwise would not have, overpaid for their vehicles, received goods whose defect substantially impairs their value, and did not receive the benefit of their bargain. The Illinois Plaintiffs and Illinois Class members also incurred and will continue to incur costs related to the diagnosis and repair of the ABS Module Defect.

369.   Any attempt by the Kia Defendants to disclaim or limit these express warranty warranties are unconscionable and unenforceable because the Kia Defendants knowingly sold a defective product without disclosing to consumers about the ABS Module Defect. In addition, the time limits in the Kia Defendants' warranties were also unconscionable and inadequate because the Illinois Plaintiffs and Illinois Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor the Kia Defendants. Since the Kia Defendants knew or should have known that the Kia Class Vehicles were equipped with the ABS Module Defect at the time of sale and thus the vehicles could fail well before the end of its life cycle, a gross disparity in bargaining power at contract formation existed between the Kia Defendants and the Illinois Plaintiffs and Illinois Class members.

370.   The Kia Defendants were provided notice of the ABS Module Defect by numerous NHTSA complaints filed against them, internal investigations, and warranty claims before or within a reasonable amount of time after the Kia Defendants issued the recalls and after the ABS Module Defect became public. Additionally, the Illinois Plaintiffs on behalf of themselves and the Illinois Class, sent a written demand to Defendants before filing this complaint.

371.   The Illinois Plaintiffs and Illinois Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of the Kia Defendants' conduct alleged herein.

**ELEVENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(810 Ill.Comp. Stat. §§ 5/2-314 and 5/2A-212)**
**(Plaintiffs Adam Pluskowski and Ricky Barber individually and on behalf of the proposed Illinois Class)**

372.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

373.   Plaintiffs Adam Pluskowski and Ricky Barber bring this claim on behalf of themselves and the Illinois Class against the Kia Defendants.

374.   For purposes of this cause of action, Plaintiffs Pluskowski and Barber shall be referred to as the "Illinois Plaintiffs."

375.   The Kia Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 ILCS 5/2-104(1) and 5/2A-103(3), and "seller[s]" of motor vehicles under 5/2-103(1)(d).

376.   With respect to leases, the Kia Defendants are and were at all relevant times "lessor[s]" of motor vehicles under 810 ILCS 5/2A-103(1)(p).

377.   The Illinois Plaintiffs and Illinois Class members who purchased the Kia Class Vehicles are "buyer[s]" within the meaning of 810 ILCS 5/2-103(1)(a), or who leased the Kia Class Vehicles are "lessee[s]" within the meaning of 810 ILCS 5/2A-103(1)(n).

378.   The Kia Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

379.   A warranty that the Kia Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 ILCS 5/2-314 and 5/2A-212.

380.   The Kia Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.

381.   The Kia Class Vehicles would not pass without objection in the automotive

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

trade due to the ABS Module Defect. Because the Kia Class Vehicles contained an inherent defect at the time of sale that causes the Kia Class Vehicles to spontaneously combust while the vehicle is in operation and while the vehicle is parked, the Kia Class Vehicles were not in merchantable condition and thus not fit for ordinary purposes of providing safe and reliable transportation, including being safely parked in a garage or other structure.

382.   The Kia Class Vehicles were and are not adequately labeled because the Monroney Sticker and other labeling failed to disclose the ABS Module Defect in the Kia Class Vehicles.

383.   In the various channels of information through which the Kia Defendants sold, leased, and marketed the Kia Class Vehicles, the Kia Defendants failed to disclose material information concerning ABS Module Defect in the Kia Class Vehicles, which it had to duty to disclose. The Kia Defendants had a duty to disclose the ABS Module Defect because, as alleged herein: (a) the Kia Defendants knew about the ABS Module Defect for years, as early as 2012, and yet chose to conceal it; (b) the Kia Defendants had exclusive knowledge of material facts not known to the general public or Illinois Class members, including Illinois Plaintiffs; (c) the Kia Defendants actively concealed material facts from the general public and the Illinois Class members, including the Illinois Plaintiffs concerning the ABS Module Defect in the Kia Class Vehicles; and (d) the Kia Defendants made partial representations about the Kia Class Vehicles that were misleading because they did not disclose the full truth. As alleged herein, the Kia Defendants knew the information concerning the ABS Module Defect at the time of advertising and selling the Kia Class Vehicles, all of which intended to induce consumers to purchase the Kia Class Vehicles.

384.   Illinois Plaintiffs and Illinois Class members relied on and/or reviewed and viewed statements or advertisements, such as the Kia Defendants' websites, the Kia Class Vehicle brochures, and/or the Monroney sticker, made by the Kia Defendants in choosing to purchase or lease a Kia Class Vehicle.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

385.   The Kia Defendants breached the implied warranty of merchantability by manufacturing and selling the Kia Class Vehicles that are defective. Furthermore, the ABS Module Defect has caused the Kia Illinois Class members, including the Illinois Plaintiffs, to not receive the benefit of their bargain and have caused the Kia Class Vehicles to depreciate in value.

386.   The Illinois Plaintiffs and Illinois Class members have been damaged as a result of the diminished value of the Kia Defendants' products.

387.   As a direct and proximate result of the Kia Defendants' breach of the implied warranty of merchantability, the Illinois Plaintiffs and Illinois Class members have been damaged in an amount to be proven at trial.

388.   The Kia Defendants were provided notice of the ABS Module Defect by numerous NHTSA complaints filed against them, internal investigations, and warranty claims before or within a reasonable amount of time after the Kia Defendants issued the recalls and after the ABS Module Defect became public. Additionally, the Illinois Plaintiffs on behalf of themselves and the Illinois Class, sent a written demand to Defendants before filing this complaint.

389.   Although privity is a prerequisite to recover economic damages under Illinois' law, the privity requirement is excepted here because, as alleged herein, the Illinois Plaintiffs and Illinois Class members relied on and/or reviewed and viewed statements or advertisements, such as Defendants' websites, Class Vehicle brochures, and/or the Monroney sticker, made by Defendants in choosing to purchase or lease a Class Vehicle. *See In re VTech Data Breach Litig.*, 2018 WL 1863953, *5 (N.D. Ill. 2018) (finding "allegation[s] that a plaintiff viewed a particular representation in an ad and relied on the representation in making the purchase" could fall under the "direct relationship" exception to the privity requirement under Illinois law.). Illinois Plaintiffs and Illinois Class members also bought their Class Vehicles from authorized dealerships who are agents of the Kia Defendants.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

**TWELFTH CAUSE OF ACTION**
**Violation of the New Jersey Consumer Fraud Act**
**(N.J. Stat. Ann. § 56:8-1 *et seq*.)**
**(Plaintiff Lucille Jacob individually and on behalf of the proposed New Jersey Class)**

390. Plaintiffs re-allege the paragraphs above as if fully set forth herein.

391. Plaintiff Lucille Jacob brings this claim on behalf of herself and the New Jersey Class against the Hyundai Defendants.

392. The Hyundai Defendants, Plaintiff Jacob, and New Jersey Class members and are "person[s]" within the meaning of N.J. Stat. § 56:8-1(d).

393. The Hyundai Class Vehicles and the ABS modules installed in them are "merchandise" within the meaning of N.J. Stat. § 56:8-1(c).

394. The Hyundai Defendants were and are engaged in "sale[s]" of "merchandise" within the meaning of N.J. Stat. §56:8-1(c), (e).

395. The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby[.]" N.J. Stat. § 56:8-2.

396. In the course of their business, the Hyundai Defendants violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the safety, reliability, and durability of the Hyundai Class Vehicles by failing to disclose the ABS Module Defect, the attendant risks, and the actual fire incidents, as alleged herein. In particular, the Hyundai Defendants sold the Hyundai Class Vehicles to Plaintiff Jacob and New Jersey Class members despite the ABS Module Defect in those vehicles and the increased risk of fire and failed to disclose

the ABS Module Defect, its attendant risks, and actual fire incidents at the point of sale, advertising materials, or otherwise.

397.   The Hyundai Defendants knowingly conceal and fail to disclose at the point of sale and otherwise that the Hyundai Class Vehicles have the ABS Module Defect and are at increased risk of a fire spontaneously occurring, endangering the personal safety of drivers and passengers, causing damage to property, and thus requiring immediate repair. Had Hyundai Defendants disclosed these facts, Plaintiff Jacob, New Jersey Class members, and reasonable consumers would not have purchased the Hyundai Class Vehicles or would have paid significantly less for them.

398.   By misrepresenting the Hyundai Class Vehicles and/or the ABS modules installed in them as safe and/or free from defects, and by failing to disclose and actively conceal the dangers and risk posed by the Hyundai Class Vehicles and/or the ABS Module Defect, the Hyundai Defendants engaged in one or more of the following unfair or deceptive acts or practices as prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Hyundai Class Vehicles.

399.   The Hyundai Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff Jacob and New Jersey Class members, about the true safety, reliability, and durability of Hyundai Class Vehicles, the quality of the Hyundai Class Vehicles, and the true value of the Hyundai Class Vehicles.

400.   Plaintiff Jacob and New Jersey Class members had no way of discerning that the Hyundai Defendants' representations were false and misleading and/or otherwise learning the facts that the Hyundai Defendants had concealed or failed to disclose. The

Plaintiff Jacob and New Jersey Class members did not, and could not, unravel the Hyundai Defendants' deception on their own.

401. The Hyundai Defendants intentionally and knowingly misrepresented material facts regarding the Hyundai Class Vehicles with intent to mislead the Plaintiff Jacob and New Jersey Class.

402. The Hyundai Defendants knew or should have known that their conduct violated the New Jersey CFA.

403. The Hyundai Defendants owed Plaintiff Jacob and New Jersey Class a duty to disclose all the material facts concerning the ABS Module Defect in the Hyundai Class Vehicles, because the Hyundai Defendants:

A.      possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.      intentionally concealed the ABS Module Defect from Plaintiff Jacob and New Jersey Class members; and/or

C.      made incomplete representations about the Hyundai Class Vehicles' safety, reliability, and durability while purposefully withholding material facts that contradicted these representations.

404. The Hyundai Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it.

405. The Hyundai Defendants' concealment of the Hyundai Class Vehicles' safety, reliability, and durability of the Hyundai Class Vehicles were material to Plaintiff Jacob and New Jersey Class.

406. The Hyundai Defendants' violations present a continuing risk to Plaintiff Jacob and the New Jersey Class as well as to the general public. The Hyundai Defendants' unlawful acts and practices complained of herein affect the public interest.

407. Plaintiff Jacob and the New Jersey Class suffered ascertainable loss and actual damages as a direct and proximate result of the Hyundai Defendants' concealment, misrepresentations, and/or failure to disclose material information. The Hyundai

Defendants had an ongoing duty to the Plaintiff Jacob and New Jersey Class members to refrain from unfair and deceptive practices under the New Jersey CFA in the course of their business.

408.   As a direct and proximate result of the Hyundai Defendants' violations of the New Jersey CFA, Plaintiff Jacob and members of the New Jersey Class have suffered injury-in-fact and/or actual damage.

409.   Pursuant to N.J. Stat. Ann. 56:8-19, the Illinois Plaintiffs and Illinois Class seek an order enjoining the Hyundai Defendants' unfair and/or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

## THIRTEENTH CAUSE OF ACTION
### Breach of Express Warranty
### (N.J.S. 12A:2-313 and 12A:2A-210)
### (Plaintiff Lucille Jacob individually and on behalf of the proposed New Jersey Class)

410.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

411.   Plaintiff Lucille Jacob brings this claim on behalf of herself and the New Jersey Class against the Hyundai Defendants.

412.   The Hyundai Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "seller[s]" of motor vehicles under 2-103(1)(d).

413.   With respect to leases, the Hyundai Defendants are and were at all relevant times "lessor[s]" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

414.   Plaintiff Jacob and New Jersey Class members who purchased the Hyundai Class Vehicles are "buyer[s]" within the meaning of N.J.S. 12A:2-103(1)(a), or who leased the Hyundai Class Vehicles are "lessee[s]" within the meaning of N.J.S. 12A:2A-103(1)(n).

415.   The Hyundai Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

416.   In connection with the purchase or lease of the Hyundai Class Vehicles, the Hyundai Defendants provided Plaintiff Jacob and New Jersey Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

417.   The Hyundai Class Vehicles and parts affected by the ABS Module Defect were manufactured and distributed by the Hyundai Defendants and are covered by the warranties the Hyundai Defendants provided to all purchasers and lessors of the Hyundai Class Vehicles, including Plaintiff Jacob and New Jersey Class members.

418.   The Hyundai Defendants' warranties formed the basis of the bargain that was reached when Plaintiff Jacob and New Jersey Class members unknowingly purchased or leased the Hyundai Class Vehicles that came equipped with the ABS Module Defect.

419.   However, the Hyundai Defendants knew or should have known that the warranties were false and/or misleading. Specifically, the Hyundai Defendants were aware of the ABS Module Defect in the Hyundai Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to Plaintiff Jacob and New Jersey Class members. The Hyundai Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it and ignore their warranty obligations.

420.   Plaintiff Jacob and New Jersey Class members reasonably relied on the Hyundai Defendants' express warranties when purchasing or leasing their Hyundai Class Vehicles.

421.   The Hyundai Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ABS Module Defect or replace the defective ABS modules in the Hyundai Class Vehicles. The Hyundai Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff Jacob and New Jersey Class members. Plaintiff Jacob and New Jersey Class members were therefore induced to purchase or lease the Hyundai Class Vehicles under false and/or fraudulent pretenses.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

422. Furthermore, the limited warranty promising to repair and correct the Hyundai Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Jacob and New Jersey Class members whole and because the Hyundai Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

423. Accordingly, recovery by Plaintiff Jacob and New Jersey Class members are not restricted to the limited warranty promising to repair and correct the Hyundai Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

424. As a direct and proximate result of the Hyundai Defendants' breach of their express warranties, Plaintiff Jacob and New Jersey Class members bought or leased the Hyundai Class Vehicles they otherwise would not have, overpaid for their vehicles, received goods whose defect substantially impairs their value, and did not receive the benefit of their bargain. Plaintiff Jacob and New Jersey Class members also incurred and will continue to incur costs related to the diagnosis and repair of the ABS Module Defect.

425. Any attempt by the Hyundai Defendants to disclaim or limit these express warranty warranties are unconscionable and unenforceable because the Hyundai Defendants knowingly sold a defective product without disclosing to consumers about the ABS Module Defect. In addition, the time limits in the Hyundai Defendants' warranties were also unconscionable and inadequate because Plaintiff Jacob and New Jersey Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor the Hyundai Defendants. Since the Hyundai Defendants knew or should have known that the Hyundai Class Vehicles were equipped with the ABS Module Defect at the time of sale and thus the vehicles could fail well before the end of its life cycle, a gross disparity in bargaining power at contract formation existed between the Hyundai Defendants and Plaintiff Jacob and New Jersey Class members.

426. They Hyundai Defendants were provided notice of the ABS Module Defect by numerous NHTSA complaints filed against them, internal investigations, and warranty

claims before or within a reasonable amount of time after the Hyundai Defendants issued the recalls and after the ABS Module Defect became public. Additionally, Plaintiff Jacob on behalf of herself and the New Jersey Class, sent a written demand to the Hyundai Defendants before filing this complaint.

427.   Plaintiff Jacob and New Jersey Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of the Hyundai Defendants' conduct alleged herein.

**FOURTEENTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(N.J.S. 12A:2-314 and 12A:2A-212)**
**(Plaintiff Lucille Jacob individually and on behalf of the proposed New Jersey Class)**

428.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

429.   Plaintiff Lucille Jacob brings this claim on behalf of herself and the New Jersey Class against the Hyundai Defendants.

430.   The Hyundai Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under N.J.S. 12A:2-104(1) and "seller[s]" of motor vehicles under 2-103(1)(d).

431.   With respect to leases, the Hyundai Defendants are and were at all relevant times "lessor[s]" of motor vehicles under N.J.S. 12A:2A-103(1)(p).

432.   Plaintiff Jacob and New Jersey Class members who purchased the Hyundai Class Vehicles are "buyer[s]" within the meaning of N.J.S. 12A:2-103(1)(a), or who leased the Hyundai Class Vehicles are "lessee[s]" within the meaning of N.J.S. 12A:2A-103(1)(n).

433.   The Hyundai Class Vehicles are and were at all relevant times "goods" within the meaning of N.J.S. 12A:2-105(1) and 2A-103(1)(h).

434.   A warranty that the Hyundai Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.J.S. 12A:2-314 and 2A-212.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

435. The Hyundai Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.

436. The Hyundai Class Vehicles would not pass without objection in the automotive trade due to the ABS Module Defect. Because the Hyundai Class Vehicles contained an inherent defect at the time of sale that causes the Hyundai Class Vehicles to spontaneously combust while the vehicle is in operation and while the vehicle is parked, the Hyundai Class Vehicles were not in merchantable condition and thus not fit for ordinary purposes of providing safe and reliable transportation, including being safely parked in a garage or other structure.

437. The Hyundai Class Vehicles were and are not adequately labeled because the labeling fails to disclose the ABS Module Defect in the Hyundai Class Vehicles.

438. In the various channels of information through which the Hyundai Defendants sold, leased, and marketed the Hyundai Class Vehicles, the Hyundai Defendants failed to disclose material information concerning the ABS Module Defect in the Hyundai Class Vehicles, which it had to duty to disclose. The Hyundai Defendants had a duty to disclose the ABS Module Defect because, as alleged herein: (a) the Hyundai Defendants knew about the ABS Module Defect for years, as early as 2012, and yet chose to conceal it; (b) the Hyundai Defendants had exclusive knowledge of material facts not known to the general public or New Jersey Class members, including Plaintiff Jacob; (c) the Hyundai Defendants actively concealed material facts from the general public and the New Jersey Class members, including Plaintiff Jacob, concerning the ABS Module Defect in the Hyundai Class Vehicles; and (d) the Hyundai Defendants made partial representations about the Hyundai Class Vehicles that were misleading because they did not disclose the full truth. As alleged herein, the Hyundai Defendants knew the information concerning the ABS Module Defect at the time of advertising and selling the Hyundai Class Vehicles, all of which intended to induce consumers to purchase the

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

Hyundai Class Vehicles.

439.   Plaintiff Jacob and New Jersey Class members relied on and/or reviewed and viewed statements or advertisements, such as the Hyundai Defendants' websites, the Hyundai Class Vehicle brochures, and/or the Monroney sticker, made by the Hyundai Defendants in choosing to purchase or lease a Hyundai Class Vehicle.

440.   The Hyundai Defendants breached the implied warranty of merchantability by manufacturing and selling the Hyundai Class Vehicles that are defective. Furthermore, the ABS Module Defect has caused the New Jersey Class members, including Plaintiff Jacob to not receive the benefit of their bargain and have caused the Hyundai Class Vehicles to depreciate in value.

441.   Plaintiff Jacob New Jersey Class members have been damaged as a result of the diminished value of the Hyundai Defendants' products.

442.   As a direct and proximate result of the Hyundai Defendants' breach of the implied warranty of merchantability, Plaintiff Jacob and New Jersey Class members have been damaged in an amount to be proven at trial.

443.   The Hyundai Defendants were provided notice of the ABS Module Defect by numerous NHTSA complaints filed against them, internal investigations, and warranty claims before or within a reasonable amount of time after the Hyundai Defendants issued the recalls and after the ABS Module Defect became public. Additionally, Plaintiff Jacob on behalf of herself and the New Jersey Class, sent a written demand to the Hyundai Defendants before filing this complaint.

## FIFTEENTH CAUSE OF ACTION
### Violation of the Deceptive Trade Practices Act-Consumer Protection Act
### (Tex. Bus. & Com. Code § 17.41 *et seq*.)
### (Plaintiffs Pepper Miller and Cindy Brady individually and on behalf of the proposed Texas Class)

444.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

445.   Plaintiffs Pepper Miller and Cindy Brady (for the purposes of this claim, "Texas Plaintiffs") bring this claim on behalf of themselves and the Texas Class against

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

all the Defendants.

446.   Texas Plaintiffs and the Texas Class are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), see Tex. Bus. & Com. Code § 17.41 and are therefore "consumer[s]" pursuant to Tex. Bus. & Com. Code § 17.45(4).

447.   Defendants are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

448.   Defendants are and were engaged in "trade" or "commerce" within the meaning Tex. Bus. & Com. Code §§ 17.45(6) and 17.46(a).

449.   The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce [,]" Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action [,]" which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

450.   In the course of their business, Defendants actively concealed and suppressed material facts concerning the Class Vehicles. Defendants accomplished this by selling the Class Vehicles to the Texas Plaintiffs and Texas Class members despite the ABS Module Defect in those vehicles and the increased risk of fire and failed to disclose the ABS Module Defect, its attendant risks, and actual fire incidents at the point of sale, advertising materials, or otherwise.

451.   Defendants knowingly concealed and failed to disclose at the point of sale and otherwise that the Class Vehicles have the ABS Module Defect and are at increased risk of a fire spontaneously occurring, endangering the personal safety of drivers and passengers, causing damage to property, and thus requiring immediate repair. Had Defendants disclosed these facts, Texas Plaintiffs, Texas Class members, and reasonable consumers would not have purchased or leased the Class Vehicles or would have paid significantly less for them.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

452.   The Texas Plaintiffs and Texas Class members had no way of discerning that the Defendants' representations were false and misleading and/or otherwise learning the facts that the Defendants had concealed or failed to disclose. The Texas Plaintiffs and Texas Class members did not, and could not, unravel the Defendants' deception on their own.

453.   Defendants thus violated the Texas DTPA by, at minimum: representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; advertising the Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving the Class Vehicles has been supplied in accordance with a previous representation when it has not.

454.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Texas Plaintiffs and Texas Class.

455.   Defendants knew or should have known that their conduct violated the Texas DTPA.

456.   Defendants owed the Texas Plaintiffs and Texas Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

A.     possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

B.     intentionally concealed the ABS Module Defect from the Texas Plaintiffs and Texas Class members; and/or

C.     made incomplete representations about the Class Vehicles' safety, reliability, and durability while purposefully withholding material facts that contradicted these representations.

457.   Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it.

458.   Defendants' concealment of the Class Vehicles' safety, reliability, and

durability of the Class Vehicles and/or the ABS Module Defect were material to the Texas Plaintiffs and Texas Class.

459.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Texas Plaintiffs and Texas Class, about the true safety, reliability, and durability of the Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

460.    Defendants' violations present a continuing risk to the Texas Plaintiffs and the Texas Class as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

461.    The Texas Plaintiffs and the Texas Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information. Defendants had an ongoing duty to the Texas Plaintiffs and Texas Class members to refrain from unfair and deceptive practices under the Texas DTPA in the course of their business.

462.    As a direct and proximate result of Defendants' violations of the Texas DTPA, Texas Plaintiffs and members of the Texas Class have suffered injury-in-fact and/or actual damage.

463.    Pursuant to the provisions of Tex. Bus. & Com. Code Ann. § 17.505, prior to filing this complaint, the Texas Plaintiffs, on behalf of themselves and the Texas Class, notified Defendants in writing of the Texas UDTPA violation alleged herein.

464.    Pursuant to Tex. Bus. & Com. Code § 17.50, the Texas Plaintiffs seek all available injunctive relief, including an order enjoining Defendants from the unlawful practices described above. If Defendants do not exercise its opportunity to provide corrective action pursuant to Section 17.505 within the time provided, Texas Plaintiffs will amend this complaint to seek damages and all other available relief.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

## SIXTEENTH CAUSE OF ACTION
### Breach of Express Warranty
### (Tex. Bus. & Com. Code §§ 2.313 and 2A.210)
### (Plaintiffs Pepper Miller and Cindy Brady individually and on behalf of the proposed Texas Class)

465.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

466.   Plaintiffs Pepper Miller and Cindy Brady (for the purposes of this claim, "Texas Plaintiffs") bring this claim on behalf of themselves and the Texas Class against all the Defendants.

467.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "seller[s]" of motor vehicles under § 2.103(a)(4).

468.   With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

469.   Texas Plaintiffs and Texas Class members who purchased the Class Vehicles are "buyer[s]" within the meaning of Tex. Bus. & Com. Code § 2.104(a)(1), or who leased the Class Vehicles are "lessee[s]" within the meaning of Tex. Bus. & Com. Code § 2A.103(a)(14).

470.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

471.   In connection with the purchase or lease of the Class Vehicles, Defendants provided Texas Plaintiffs and Texas Class members with written express warranties covering the repair or replacement of components that are defective in materials or workmanship.

472.   The Class Vehicles and parts affected by the ABS Module Defect were manufactured and distributed by Defendants and are covered by the warranties Defendants provided to all purchasers and lessors of the Class Vehicles, including Texas Plaintiffs and Texas Class members.

473.   Defendants' warranties formed the basis of the bargain that was reached

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

when the Texas Plaintiffs and Texas Class members unknowingly purchased or leased the Class Vehicles that came equipped with the ABS Module Defect.

474.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the ABS Module Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold and leased to the Texas Plaintiffs and Texas Class members. Defendants knew about the ABS Module Defect for years, as early as 2012, as alleged herein, and yet chose to conceal it and ignore their warranty obligations.

475.   The Texas Plaintiffs and Texas Class members reasonably relied on Defendants' express warranties when purchasing or leasing their Class Vehicles.

476.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the ABS Module Defect or replace the defective ABS modules in the Class Vehicles. Defendants also breached their express warranties by providing a product containing defects that were never disclosed to the Texas Plaintiffs and Texas Class members. The Texas Plaintiffs and Texas Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

477.   Furthermore, the limited warranty promising to repair and correct the Defendants' defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make the Texas Plaintiffs and Texas Class members whole and because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

478.   Accordingly, recovery by the Texas Plaintiffs and Texas Class members are not restricted to the limited warranty promising to repair and correct the Defendants' defect in materials and workmanship, and they seek all remedies as allowed by law.

479.   As a direct and proximate result of Defendants' breach of their express warranties, the Texas Plaintiffs and Texas Class members bought or leased the Class Vehicles they otherwise would not have, overpaid for their vehicles, received goods whose

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

defect substantially impairs their value, and did not receive the benefit of their bargain. The Texas Plaintiffs and Texas Class members also incurred and will continue to incur costs related to the diagnosis and repair of the ABS Module Defect.

480.   Any attempt by Defendants to disclaim or limit these express warranty warranties are unconscionable and unenforceable because Defendants knowingly sold a defective product without disclosing to consumers about the ABS Module Defect. In addition, the time limits in Defendants' warranties were also unconscionable and inadequate because the Texas Plaintiffs and Texas Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendants. Since Defendants knew or should have known that the Class Vehicles were equipped with the ABS Module Defect at the time of sale and thus the vehicles could fail well before the end of its life cycle, a gross disparity in bargaining power at contract formation existed between Defendants and the Texas Plaintiffs and Texas Class members.

481.   Defendants were provided notice of the ABS Module Defect by numerous NHTSA complaints filed against them, internal investigations, and warranty claims before or within a reasonable amount of time after Defendants issued the recalls and after the ABS Module Defect became public. Additionally, the Texas Plaintiffs on behalf of themselves and the Texas Class, sent a written demand to Defendants before filing this complaint.

482.   The Texas Plaintiffs and Texas Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of the Defendants' conduct alleged herein.

### SEVENTEENTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (Tex. Bus. & Com. Code §§ 2.314 and 2A.212)
### (Plaintiffs Pepper Miller and Cindy Brady individually and on behalf of the proposed Texas Class)

483.   Plaintiffs re-allege the paragraphs above as if fully set forth herein.

484.   Plaintiffs Pepper Miller and Cindy Brady (for the purposes of this claim,

"Texas Plaintiffs") bring this claim on behalf of themselves and the Texas Class against all the Defendants.

485.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "seller[s]" of motor vehicles under § 2.103(a)(4).

486.   With respect to leases, Defendants are and were at all relevant times "lessor[s]" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

487.   Texas Plaintiffs and Texas Class members who purchased the Class Vehicles are "buyer[s]" within the meaning of Tex. Bus. & Com. Code § 2.104(a)(1), or who leased the Class Vehicles are "lessee[s]" within the meaning of Tex. Bus. & Com. Code § 2A.103(a)(14).

488.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

489.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212.

490.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used.

491.   The Class Vehicles would not pass without objection in the automotive trade due to the ABS Module Defect. Because the Class Vehicles contained an inherent defect at the time of sale that causes the Class Vehicles to spontaneously combust while the vehicle is in operation and while the vehicle is parked, the Class Vehicles were not in merchantable condition and thus not fit for ordinary purposes of providing safe and reliable transportation, including being safely parked in a garage or other structure.

492.   The Class Vehicles were and are not adequately labeled because the labeling fails to disclose the ABS Module Defect in the Class Vehicles.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

493.   In the various channels of information through which Defendants sold, leased, and marketed the Class Vehicles, Defendants failed to disclose material information concerning the Class Vehicles, which it had to duty to disclose. Defendants had a duty to disclose the ABS Module Defect because, as alleged herein: (a) Defendants knew about the ABS Module Defect for years, as early as 2012, and yet chose to conceal it; (b) Defendants had exclusive knowledge of material facts not known to the general public or Texas Class members, including Texas Plaintiffs; (c) Defendants actively concealed material facts from the general public and the Texas Class members, including Texas Plaintiffs concerning the ABS Module Defect in the Class Vehicles; and (d) Defendants made partial representations about the Class Vehicles that were misleading because they did not disclose the full truth. As alleged herein, Defendants knew the information concerning the ABS Module Defect at the time of advertising and selling the Class Vehicles, all of which intended to induce consumers to purchase the Class Vehicles.

494.   The Texas Plaintiffs and Texas Class members relied on and/or reviewed and viewed statements or advertisements, such as the Defendants' websites, the Class Vehicle brochures, and/or the Monroney sticker, made by the Defendants in choosing to purchase or lease a Class Vehicle.

495.   Defendants breached the implied warranty of merchantability by manufacturing and selling the Class Vehicles that are defective. Furthermore, the ABS Module Defect has caused the Texas Class members, including the Texas Plaintiffs to not receive the benefit of their bargain and have caused the Class Vehicles to depreciate in value.

496.   The Texas Plaintiffs and Texas Class members have been damaged as a result of the diminished value of the Defendants' products.

497.   As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, the Texas Plaintiffs and Texas Class members have been damaged in an amount to be proven at trial.

498.   Defendants were provided notice of the ABS Module Defect by numerous

126

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

NHTSA complaints filed against them, internal investigations, and warranty claims before or within a reasonable amount of time after Defendants issued the recalls and after the ABS Module Defect became public. Additionally, the Texas Plaintiffs on behalf of themselves and the Texas Class, sent a written demand to Defendants before filing this complaint.

**EIGHTEENTH CAUSE OF ACTION**
**Unjust Enrichment**
**(All Plaintiffs individually and on behalf of the proposed Nationwide Class or, alternatively, each statewide class)**

499.  Plaintiffs re-allege the paragraphs above as if fully set forth herein.

500.  As described above, Defendants sold the Class Vehicles to Class members even though they contain the ABS Module Defect and pose a safety hazard and failed to disclose the ABS Module Defect, its attendant risks, and actual fire incidents at the point of sale, advertising materials, or otherwise.

501.  As a result of its fraudulent acts and omissions related to the ABS Module Defect, Defendants obtained monies which rightfully belong to Plaintiffs and the proposed Nationwide Class members to the detriment of Plaintiffs and the proposed Nationwide Class members.

502.  Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Nationwide Class members, who, without knowledge of the defect, paid a higher price to buy or lease their vehicles than those vehicles were worth. Defendants also received monies for vehicles that Plaintiffs and the proposed Nationwide Class members would not have otherwise purchased or leased.

503.  It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

504.  Defendants' retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

505.  Plaintiffs and the proposed Nationwide Class are entitled to restitution of the profits unjustly obtained, plus interest.

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following relief:

    a.      An order certifying the proposed class(es), appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

    b.      An order awarding Plaintiffs and the class members their actual damages, punitive damages, and/or any other form of monetary relief provided by law;

    c.      An order awarding Plaintiffs and the class(es) restitution, disgorgement, or other equitable relief as the Court deems proper;

    d.      An order requiring Defendants to adequately disclose and repair the ABS Module Defect in the Class Vehicles;

    e.      An order awarding Plaintiffs and the class(es) pre-judgment and post-judgment interest as allowed under the law;

    f.      An order awarding Plaintiffs and the class(es) reasonable attorneys' fees and costs of suit, including expert witness fees; and

    g.      An order awarding such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so triable under the law.

DATED: April 15, 2022          Respectfully submitted,

**GIBBS LAW GROUP LLP**

By: */s/ Rosemary M. Rivas*

Rosemary M. Rivas (SBN 209147)
David Stein (SBN 257465)
Rosanne L. Mah (SBN 242628)

128

505 14th Street, Suite 1110
Oakland, California 94612
Telephone:   (510) 350-9700
Facsimile:    (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT
CASE NO. 8:22-cv-00824